UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MF GLOBAL HOLDINGS LTD., AS PLAN ADMINISTRATOR,<br><br>              Plaintiff,<br><br>       -against-<br><br>PRICEWATERHOUSECOOPERS LLP,<br><br>              Defendant. | )<br>)<br>)<br>)<br>) Civil Action No. 14-cv-2197 (VM)<br>)<br>) **ORAL ARGUMENT REQUESTED**<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS ON *IN PARI DELICTO* GROUNDS**

                KASOWITZ, BENSON, TORRES
                 & FRIEDMAN LLP
                Daniel J. Fetterman
                Michael C. Harwood
                David J. Mark
                1633 Broadway
                New York, New York 10019
                Tel:  (212) 506-1700

                *Attorneys for Plaintiff*

Dated: New York, New York
       June 17, 2014

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

BACKGROUND ..................................................................................................................... 1

    A.    *In Pari Delicto* Requires Intentional Misconduct and None is Alleged Here. ............................................................................................................... 1

        1.    New York *In Pari Delicto* Law Requires Intentional Misconduct. ........... 1

        2.    The Complaint Does Not Allege Intentional Misconduct. ........................ 3

    B.    PwC's Invocation of Judicial Notice is Without Merit. ......................................... 5

        1.    The Alleged Admissions Are Not Binding on Plaintiff in This Action. ...................................................................................................... 6

        2.    The Alleged Admissions Do Not Support Dismissal of the Complaint. .................................................................................................. 8

CONCLUSION ....................................................................................................................... 11

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Tissue, Inc. v. Arthur Anderson, L.L.P.*,
   275 F. Supp. 2d 398 (S.D.N.Y. 2003)..................................................................................8

*Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
   351 F. Supp. 2d 79 (S.D.N.Y. 2004)....................................................................................8

*Barker v. Kallash*,
   63 N.Y.2d 19 (1984) .......................................................................................................2, 3

*Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*,
   757 F. 2d 523 (2d Cir. 1985)................................................................................................8

*In re Bennett Funding Grp., Inc.*,
   1999 Bankr. LEXIS 1857 (N.D.N.Y. 1999) ........................................................................6

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002).................................................................................................5

*Chemical Bank v. Stahl*,
   237 A.D.2d 231 (1st Dep't 1997) ........................................................................................3

*Deangelis v. Corzine*,
   11 CIV. 7866 VM, 2014 WL 667481 (S.D.N.Y. Feb. 11, 2014) .........................................9

*Friedl v. New York*,
   210 F.3d 79 (2d Cir. 2000)...................................................................................................5

*Intellivision v. Microsoft Corp.*,
   784 F. Supp. 2d 356 (S.D.N.Y. 2011), *aff'd,* 484 F. App'x 616 (2d Cir. 2012).....................8

*Kirschner v. KPMG LLP*,
   15 N.Y.3d 446 (2010) ................................................................................................. 1-4, 9

*Kirschner v. KPMG LLP*,
   590 F. 3d 186 (2d Cir. 2009)................................................................................................2

*Manning v. Brown*,
   91 N.Y.2d 116 (1997) ..........................................................................................................3

*McConnell v. Commonwealth Pictures Corp.*,
   7 N.Y.2d 465 (1960) ............................................................................................................2

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis*,
   903 F.2d 109 (2d Cir. 1990)......................................................................................6

*Morgenthow & Latham v. Bank of N.Y. Co.*,
   305 A.D.2d 74 (1st Dep't 2003) ...............................................................................8

*Nat'l Sur. Corp. v. Lybrand*,
   256 A.D. 226 (1st Dep't 1939) .......................................................................4, 5, 10

*Official Comm. of Unsec. Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
   322 F.3d 147 (2d Cir. 2003).....................................................................................5

*Perma Life Mufflers, Inc. v. Int'l Parts Corp.*,
   392 U.S. 134 (1968).................................................................................................9

*Peterson v. McGladrey & Pullen, LLP*,
   676 F.3d 594 (7th Cir. 2012) ................................................................................6, 7

*Pinter v. Dahl*,
   436 U.S. 622 (1988).................................................................................................9

*Rosenbach v. Diversified Grp., Inc.*,
   85 A.D.3d 569 (1st Dep't 2011) ...............................................................................3

*Sacher v. Beacon Assocs. Mgmt. Corp.*,
   114 A.D.3d 655 (2d Dep't 2014) ..............................................................................3

*Shapiro v. Glekel*,
   380 F. Supp. 1053 (S.D.N.Y. 1974)...................................................................... 4-5

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
   547 F.3d 406 (2d Cir. 2008).....................................................................................5

*Stone v. Freeman*,
   298 N.Y. 268 (1948) ................................................................................................2

*Whitney Grp., LLC v. Hunt-Scanlon Corp.*,
   106 A.D.3d 671 (1st Dep't 2013) .............................................................................3

*Zannelli v. Walker*,
   27 A.D.3d 460 (2d Dep't 2006) ................................................................................2

**Other Authorities**

Fed. R. Civ. P. 8.................................................................................................................6

5 *Wright & Miller, Federal Practice & Procedure* § 1366 & n.33 (3d ed. 2004)............................5

# BACKGROUND[1]

PwC committed professional malpractice in its role as auditor of MF Global Holdings Ltd. when it erroneously advised the Company on the accounting treatment for its investments in European sovereign debt through "repurchase-to-maturity" financing transactions, or "Euro RTM" transactions.  When it rendered its advice, PwC was aware that MF Global Holdings' decision to engage in the Euro RTM transactions was dependent on PwC's professional opinion concerning the accounting treatment for the transactions.  PwC was also aware that MF Global Holdings relied on PwC's erroneous accounting advice and it reiterated its approval repeatedly during their professional relationship as the Company continued to invest in these instruments. Plaintiff does not allege, as PwC acknowledges, anything within this Complaint to support its *in pari delicto* defense, which requires serious violations of law or willful misconduct to succeed under New York law.  Instead, PwC asks the Court to take "judicial notice" of three other documents and to rely on PwC's interpretation of those documents to dispute allegations in the Complaint.  Nothing in those documents constitutes judicially binding admissions that the Court may consider when deciding this motion.  Even if the Court were to consider those documents, nothing in them would provide a basis to dismiss this Complaint.

**A.**     ***In Pari Delicto* Requires Intentional Misconduct and None is Alleged Here.**

      1.     New York *In Pari Delicto* Law Requires Intentional Misconduct.

The applicability of the *in pari delicto* defense is a question of New York law.  The starting point for this analysis in an accounting malpractice case is the decision in *Kirschner v. KPMG LLP*, 15 N.Y.3d 446 (2010).  In the two cases before the Court, the plaintiffs stood in the shoes of the companies and conceded that management had engaged in fraud.  Therefore, *in pari*

---

[1] Pursuant to the court's direction, this Memorandum addresses only the *in pari delicto* argument contained in Point II of PwC's Memorandum of Law in Support of its Motion to Dismiss [Docket No. 13] ("PwC Mem.").

*delicto* barred both claims unless the Court found that the adverse interest exception applied.[2]

Before addressing imputation, the Court described the *in pari delicto* defense as follows:

> "[N]o court should be required to serve as paymaster of the **wages of crime**, or referee between **thieves**. Therefore, the law will not extend its aid to either of the parties or listen to their complaints against each other, but will leave them where their own acts have placed them" (*Stone v Freeman*, 298 NY 268, 271 (1948) [internal quotation marks omitted]).

*Id.* at 464 (emphasis added).[3] The Court then gave examples of conduct to which *in pari delicto* applied. The first type was where a "**willful wrongdoer**" sues for negligence: "a **criminal** who is injured committing a crime cannot sue the police officer or security guard who failed to stop him; the **arsonist** who is singed cannot sue the fire department." *Id.* (emphasis added). The Court pointed out that *in pari delicto* also applies "where both parties acted willfully" and emphasized that in such cases courts are reluctant to draw exceptions, citing *McConnell v. Commonwealth Pictures Corp.*, 7 N.Y.2d 465, 470 (1960) (emphasis added)[4]:

> We are not working here with narrow questions of technical law. We are applying **fundamental concepts of morality and fair dealing** not to be weakened by exceptions.

As this discussion makes clear, only intentional misconduct of a serious nature gives rise to an *in pari delicto* defense under New York law. In this respect, *Kirschner* reinforced, rather than changed, prior New York Court of Appeals cases that applied *in pari delicto* only where the plaintiff's conduct was a serious violation of the law.[5]

In *Barker v. Kallash*, 63 N.Y.2d 19, 24 (1984), the Court emphasized that not every

---

[2] *See Kirschner v. KPMG LLP*, 590 F.3d 186 (2d Cir. 2009) (certifying to the New York Court of Appeals the applicability of the adverse interest exception to the *in pari delicto* doctrine and the "so-called *Wagoner* rule").
[3] In *Stone*, a broker sought a commission after bribing the buyer's agent. The court held this to be criminal conduct.
[4] *McConnell* also concerned commercial bribery, which the Court of Appeals called "gravely immoral and illegal conduct" and "gross corruption." *Id.* at 471.
[5] *Compare Zannelli v. Walker*, 27 A.D.3d 460, 461 (2d Dep't 2006), which held that "plaintiff's **reckless act** of grabbing and turning the steering wheel while the vehicle was being operated by [the defendant], does not constitute the type of serious criminal or illegal conduct warranting invocation of the *Barker/Manning* rule. The parties were **not knowing participants** engaged in criminal activity at the time of the accident.... [A]ny unlawful conduct by the plaintiff in contributing to the accident goes to the issue of comparative negligence." (emphasis added).

2

violation of the law gives rise to an *in pari delicto* defense:

> [I]t is familiar law that a violation of a statute governing the manner in which activities should be conducted, would merely constitute negligence or contributory negligence [citations omitted]. Such cases would today be resolved under the rule of comparative negligence (CPLR 1411). However, when the plaintiff has engaged in activities prohibited, as opposed to merely regulated, by law, the courts will not entertain the suit **if the plaintiff's conduct constituted a serious violation of the law and the injuries for which he seeks recovery were the direct result of that violation**. (emphasis added).[6]

*See Manning v. Brown*, 91 N.Y.2d 116, 121-22 (1997) (*in pari delicto* requires "**knowing participation**" of plaintiff in "**a serious violation of the law**" (emphasis added)).

Subsequent New York appellate decisions applying *Kirschner* reaffirm the requirement of intentional wrongdoing:

- *Sacher v. Beacon Assocs. Mgmt. Corp.*, 114 A.D.3d 655, 657 (2d Dep't 2014). The court denied *in pari delicto* in an accounting malpractice claim by a hedge fund that invested in the Madoff Ponzi scheme: "The defense requires intentional conduct on the part of the plaintiff or its agents. Here, the amended complaint does not allege that [plaintiff] **intentionally provided inaccurate financial statements to [the accountant]** for auditing or engaged in any other intentional conduct." (emphasis added) (citations omitted).

- *Whitney Grp., LLC v. Hunt-Scanlon Corp.*, 106 A.D.3d 671, 672 (1st Dep't 2013). Plaintiff's CFO misappropriated $7 million in corporate funds through loans made without company consent. Outside counsel discovered the loans and advised the CFO to disclose them but counsel neither contacted anyone nor confirmed that the CFO made the disclosure. The company sued counsel for malpractice. The court affirmed denial of *in pari delicto* on summary judgment: "whether plaintiff knew of [the CFO's improper] conduct and allowed him to continue loaning monies for several years remains a question of fact."

- *Rosenbach v. Diversified Grp., Inc.*, 85 A.D.3d 569, 570 (1st Dep't 2011). The court held that "*in pari delicto* bars a party that has been injured as a result of its **own intentional wrongdoing** from recovering for those injuries from another party whose equal or lesser fault contributed to the loss." (emphasis added).[7]

    2.    The Complaint Does Not Allege Intentional Misconduct.

As PwC admits, the Complaint nowhere alleges any misconduct or wrongdoing by Jon

---

[6] *Barker* noted the distinction between barring a woman who has an illegal abortion from suing the physician for negligence, although she would be able to sue someone for causing a car accident on the way to engage in the illegal activity. 63 N.Y.2d at 33-34.

[7] The court also cited *Chemical Bank v. Stahl*, 237 A.D.2d 231 (1st Dep't 1997), holding that *in pari delicto* "requires immoral or unconscionable conduct."

3

Corzine or other corporate officers – serious, intentional, illegal, or otherwise – that would support PwC's *in pari delicto* defense under New York law.  PwC Mem. at 7.  The Complaint alleges in comprehensive detail that MF Global Holdings repeatedly asked "PwC [to] review and opine on the proper accounting treatment of its Euro RTM trades" and "advised PwC that it would not account for Euro RTM trades as sales on its books unless PwC advised it that U.S. GAAP permitted such accounting."  *See, e.g.*, Complaint, ¶¶52-53.  The Complaint further alleges that MF Global provided PwC with all the information PwC requested to make its determinations.  *Id.* ¶102.  These allegations are in contrast to cases such as *Kirschner* where a plaintiff engaged in fraud and/or concealed material facts from its auditor and then sued the auditor for failure to discover the facts that the plaintiff actively concealed.  It is immaterial whether the Euro RTM investment strategy was ill-advised.  PwC Mem. at 9.  There are no allegations that the Company's investments or investment strategy were "illegal," "serious violations of the law," "intentional wrongdoing," "immoral," or "unconscionable," in the language of New York's *in pari delicto* jurisprudence.

Ever since *Nat'l Sur. Corp. v. Lybrand*, 256 A.D. 226, 235-36 (1st Dep't 1939), New York courts have repeatedly recognized that auditors are not "immune from the consequences of their negligence because those who employ them have conducted their business negligently."  In *Shapiro v. Glekel*, 380 F. Supp. 1053, 1058 (S.D.N.Y. 1974), the defendant moved to dismiss an accounting malpractice action brought by a bankruptcy trustee on the ground of contributory negligence, relying on allegations that the company's top officers "knew or should have known" of the misstatements.  The court rejected the defense in reliance on *National Surety*:

> The Court is convinced that the correct rule of contributory negligence applicable in accountant's liability cases, such as at bar, is that expressed in *Lybrand*, namely, that the "negligence of the employer is a defense only when it has contributed to the accountant's failure to perform his contract and to report the

4

truth. . ." and that this rule must be followed here.

This principle is fully applicable here. MF Global Holdings provided PwC with all the facts it needed to perform its contract and render its opinion. A company's negligent conduct of its business after receiving faulty accounting advice is not a defense to accounting malpractice. If the Court were to accept PwC's view of *in pari delicto*, it effectively would eliminate ordinary tort liability against accountants, overruling the longstanding precedent of *National Surety*.

### B. PwC's Invocation of Judicial Notice is Without Merit.

On this Rule 12(b)(6) motion, the Court's analysis is limited to: (1) the factual allegations in the Complaint, which it accepts as true; (2) documents attached, incorporated by reference in, or "integral" to the Complaint; and (3) matters of which judicial notice may be taken. *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 424-26 (2d Cir. 2008); 5 *Wright & Miller, Federal Practice & Procedure* § 1366 & n.33 (3d ed. 2004); *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). While a court may take judicial notice of the fact that press coverage, prior lawsuits, or regulatory filings contained certain information, it does so without regard to the truth of their contents in considering the issues in question. *See Staehr*, 547 F.3d at 425. Materials beyond these categories are "matters outside the pleading" for purposes of Rule 12(b). "'When matters outside the pleadings are presented in response to a 12(b)(6) motion,' a district court must either 'exclude the additional material and decide the motion on the complaint alone' or 'convert the motion to one for summary judgment under Fed.R.Civ.P. 56 and afford all parties the opportunity to present supporting material.'" *Friedl v. New York*, 210 F.3d 79, 83 (2d Cir. 2000). This requirement is "strictly enforced" in the Second Circuit. *Id.*[8]

---

[8] An affirmative defense may allow the court to dismiss on a pre-answer motion only if the defense is established on the face of the complaint. *See Official Comm. of Unsec. Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003) ("[A] complaint can be dismissed for failure to state a claim pursuant to a Rule 12(b)(6) motion raising an affirmative defense [of *in pari delicto*] 'if the defense appears on the face of the complaint.'")

5

PwC seeks to circumvent these well-established principles based on its contention that certain statements made in extraneous documents constitute binding "admissions" on Plaintiff and that such "admissions" support its *in pari delicto* defense. Both contentions are wrong.

  1. <u>The Alleged Admissions Are Not Binding on Plaintiff in This Action.</u>

PwC incorrectly contends that the allegations made by the plaintiff in *Tavakoli v. Corzine*, and by the Chapter 11 Trustee in the Freeh Report, are binding admissions here.[9] This is contrary to settled law, embodied in Rules 8(d)(2) and (3) of the Federal Rules of Civil Procedure, which permits even the same party to take inconsistent positions in pleadings in two separate legal proceedings.[10] *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis*, 903 F.2d 109, 114 (2d Cir. 1990). The one exception is that a party who prevails in one action cannot continue to assert the inconsistent position in the other action. In *In re Bennett Funding Group, Inc.*, 1999 Bankr. LEXIS 1857 (N.D.N.Y. 1999), the court rejected the same argument PwC makes here. Defendants moved to dismiss on *in pari delicto* grounds, asserting that the bankruptcy trustee had taken inconsistent positions regarding the culpable conduct of the debtor's principals in other actions. The court disagreed, citing *Merrill Lynch* (*id*. at *44):

> [Defendants] have not cited to any decision … in which a judgment was entered based on the Trustee's allegations that the Bennett parents knew of the Ponzi scheme. Until or unless such a judgment is obtained, the Trustee is free to advance inconsistent factual allegations in separate adversary proceedings. See also Fed.R.Civ.P. 8(e)(2) (providing that a litigant in federal court may "state as many separate claims and defenses as the party has regardless of consistency").

The Seventh Circuit reached the identical conclusion on similar facts to those alleged here. In *Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594 (7th Cir. 2012), the bankruptcy

---

[9] No. 14 cv. 0566 (VM) (SDNY). A copy of the Corzine Complaint is Exhibit F to the Declaration of David M. Fine ("Fine Dec.") dated May 23, 2014 [Docket No. 14]; a copy of the opposition to the motion to dismiss the Corzine Complaint is Fine Dec. Exhibit G. A copy of the Freeh report is Fine Dec. Exhibit E.

[10] PwC treats the Corzine action as if it were filed by the same party as here even though it also moved to dismiss this Complaint asserting that Plaintiff lacks standing because the claim should have been filed by the different entity that filed the Corzine action. In light of its contention that Plaintiff and the Litigation Trustee are separate entities for standing purposes, PwC cannot argue that they are the same for this purpose.

6

trustee sued the auditor of a hedge fund that invested in a Ponzi scheme.  The complaint alleged that the fund's principal became aware of the Ponzi scheme in early 2008 but prior to that time had acted "honestly (though carelessly and perhaps even recklessly)." *Id.* at 597.[11]  The district court dismissed, reasoning that "if Bell was criminally culpable in 2008, then surely he knew about the Ponzi scheme earlier." *Id.*  The Seventh Circuit reversed holding that "this is not something a court can assume at the complaint stage of litigation. The court must accept the complaint's allegations – and the Trustee expressly alleges that, until February 2008, Bell did *not* know that Petters had built a house of cards." *Id.*  Here, too, the Complaint alleges no illegal conduct by the Company and is unrelated to the later illegal invasion of customer funds.

The Seventh Circuit also rejected the contention that the trustee "is trying to have things both ways" inasmuch as the trustee separately sued the fund's principal and pleaded there that he had knowledge of the fraud as early as 2006 (*id*. (emphasis added)):

> **But there's no rule against inconsistent pleadings in different suits, or for that matter a single suit.**  "A party may state as many separate claims or defenses as it has, regardless of consistency." Fed.R.Civ.P. 8(d)(3). What's more, "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed.R.Civ.P. 8(d)(2).  So if we understand the Trustee to be alleging that Bell both did, and did not, know of Petters's fraud in 2006 and 2007, the pleading is sufficient if either allegation is sufficient. **An allegation that Bell was negligent but not criminally culpable in 2006 and 2007 makes the claim against McGladrey sufficient; the complaint therefore cannot be dismissed on the ground the district court gave.** (If the Trustee had prevailed against Bell on a theory that his fraud began in 2006, then the doctrine of judicial estoppel would block the Trustee from arguing an inconsistent position against McGladrey. [citations omitted].  But the suit against Bell is pending; the requirements of judicial estoppel are unmet.)

PwC's argument that Plaintiff is bound by the allegedly contrary pleadings in the Corzine Complaint rests on a footnote in a decision that cites no applicable authority and was rejected by

---

[11] This case was decided under Illinois law but the decision is completely consistent with New York law.

the one decision to consider the footnote.[12]  In *American Tissue, Inc. v. Arthur Anderson, L.L.P.*, 275 F. Supp. 2d 398, 405 n.8 (S.D.N.Y. 2003), Judge Scheindlin dismissed a claim against an auditor who failed to discover a fraud by the plaintiff's former principals, relying on "binding admissions" in a separate complaint, citing *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F. 2d 523 (2d Cir. 1985).  But *Bellefonte* is inapposite here because the Second Circuit held only that it was within the District Court's discretion to disregard affidavits that contradict a party's pleadings in the **same** action, rather than alternative pleadings in different actions.  *Id*. at 528-29.  In a subsequent decision in the same bankruptcy, Judge Lynch declined to follow Judge Scheindlin:  "the general rule seems to be that a judicial admission only binds the party that makes it in the action in which it is made, not 'in separate and subsequent cases.'"  *Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 351 F. Supp. 2d 79, 96 (S.D.N.Y. 2004).[13]

        2.      The Alleged Admissions Do Not Support Dismissal of the Complaint.

Even if the Court were to consider the allegations of the Corzine Complaint, which it should not, those allegations do not support the *in pari delicto* defense.  The Corzine Complaint does not allege illegal or intentional misconduct regarding the Euro RTM investments.  It asserts claims for breach of the common law duties of care (Count I) and loyalty (Count II) owed by officers to the corporation.  Count I alleges that the defendants were "grossly negligent" and "reckless" in performing their duties.  Corzine Complaint, ¶178.  Count II alleges the defendants breached their duty of loyalty by "consciously ignoring known risks to the Company's liquidity" and by taking "excessive risks … that were not in the best interests of the Company."  *Id*., ¶¶185-

---

[12] PwC cites no authority for treating the Freeh Report as a binding admission, and we are aware of none.  In any event, the contents of the Freeh report are classic hearsay at this stage of this litigation.

[13] PwC's reliance on *Intellivision v. Microsoft Corp.*, 784 F. Supp. 2d 356 (S.D.N.Y. 2011), *aff'd*, 484 F. App'x 616 (2d Cir. 2012), for the proposition that a decision denying a motion to dismiss can be a basis for judicial estoppel is similarly misplaced.  The court held that judicial estoppel applied to its own specific factual findings that the party sought to contradict later in the **same** action.  PwC's citation to *Morgenthow & Latham v. Bank of N.Y. Co.*, 305 A.D.2d 74 (1st Dep't 2003), is misplaced since that case interpreted New York state pleading rules.

86. These are not allegations of serious legal violations; PwC does not assert otherwise. Nor does that complaint allege that the defendants committed fraud or violated "fundamental concepts of morality and fair dealing," as *Kirschner* described the *in pari delicto* standard.[14]

This case is also distinguishable from this Court's recent decision dismissing MFGI's claims against PwC. That complaint alleged that MFGI's management intentionally violated customer segregation laws, and the illegal conduct was the sole basis to claim damages from PwC. *Deangelis v. Corzine*, 11 CIV. 7866 VM, 2014 WL 667481 (S.D.N.Y. Feb. 11, 2014). This Court applied *in pari delicto* because "MF Global was an 'active, voluntary participant in the **unlawful activity** that is the subject of the suit….'" *Id*. at 23 (citing *Pinter v. Dahl*, 436 U.S. 622, 636 (1988) (emphasis added).[15] This language recognized that it was the plaintiff's illegal conduct that led to the *in pari delicto* defense. There are no allegations here concerning unlawful invasion of customer accounts. Those facts have nothing to do with PwC's negligent Euro RTM accounting and the analysis underlying the Court's decision in *Deangelis* is inapplicable.

A review of each allegation that PwC stresses in its brief does not alter that conclusion. PwC Mem. at 10. Those allegations state in substance that the Corzine defendants developed a scheme[16] to enhance MF Global Holdings' profits by investing in European sovereign debt through RTM transactions that "allowed the Company to inflate its earnings by immediately booking income by selling financed debt instruments while incurring significant future liabilities

---

[14] This Court denied a motion to dismiss the Corzine Complaint, describing the allegations as based on "gross negligence" and "bad faith." Neither the Court nor the plaintiff suggested that those claims were based on any unlawful activity. *See* PwC Mem. at 11-12.

[15] Unlike this case, in which New York law under *Kirschner* applies, in *Pinter* the Court applied *in pari delicto* to the federal securities laws. The Supreme Court noted that even in a strict liability statute such as section 12(1), where *scienter* is not required, *in pari delicto* will apply if, "as a result of the plaintiff's own actions, the plaintiff bears at least substantially equal responsibility for the underlying **illegality**." *Id.* at 635-36 (emphasis added). The Court quoted from *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 153 (1968) (Harlan, J. concurring), that "[p]laintiffs who are truly *in pari delicto* are those who have themselves **violated the law** in cooperation with the defendant [emphasis added]." Even if this federal securities standard applied, no illegal activity is alleged here.

[16] Although the word "scheme" may be combined with an adjective such as "fraudulent" or "Ponzi," standing alone, "scheme" does not have a pejorative implication. *See, e.g.*, Webster's II New College Dictionary (2001) (scheme means "1. A systematic plan of action. 2. An orderly combination of related or successive parts or elements.").

9

relating to those instruments." *Id*. The defendants "were able to create an impression that Corzine would return the Company to profitability while obscuring that the Company was holding very large positions in European sovereign debt." *Id*. There is no allegation there – or here – that management intentionally violated GAAP or any law through this investment scheme. Rather, PwC approved the accounting for the Euro RTMs after the Company provided it with disclosure of the underlying facts, and management relied on that advice. The allegations in paragraph 4 of the Complaint here are consistent with the Corzine Complaint:

> When it rendered its erroneous advice, PwC was aware that the accounting treatment for the Euro RTMs was critically important to MF Global Holdings and that MF Global Holdings' decision to invest heavily in European sovereign debt through Euro RTM transactions was dependent on PwC's approval of accounting for the Euro RTM transactions as sales. PwC knew when it gave its faulty advice that the Company was in a weak financial condition and that huge positions in European sovereign debt posed significant additional risks to MF Global Holdings.[17]

At this procedural stage, the Court has to accept as true the allegation that PwC gave an incorrect opinion and that PwC's professional error allowed the Company to invest heavily *and legally* in Euro RTMs. PwC's core theory amounts to nothing more than the contention that an auditor may insulate itself from liability for its own negligence by relying on the existence of the very accounting errors it was hired to detect. The central function of auditors is to act as a check on whether management's accounting decisions accorded with GAAP. It cannot be a defense that the Company committed accounting errors in reliance on PwC's advice to engage in that accounting. *See Nat'l Sur. Corp.*, 256 A.D. at 235-36.

---

[17] Similarly, paragraph 49 of the Complaint alleges that the RTM sale accounting was crucial:
  First, if MF Global Holdings could account for the RTM trades as sales, it would book the revenues on its investments in European sovereign debt up front, instead of waiting until the bonds mature and MF Global Holdings received the face amount of the bond. As PwC was aware at all relevant times, the immediate booking of the RTM trade revenue was important for MF Global Holdings because it generated needed immediate revenue. Second, by recording these transactions as sales rather than as secured financings, the European sovereign bonds would not be carried on the Company's consolidated balance sheet and the commitment to repurchase the bonds would not be booked as a debt.
Whether the accounting was proper was the specific advice that MF Global sought and relied on from PwC.

## **CONCLUSION**

  For the foregoing reasons, PwC's motion to dismiss the Complaint based on *in pari delicto* grounds should be denied.

Dated: New York, New York
    June 17, 2014

              Respectfully submitted,

              KASOWITZ, BENSON, TORRES
                & FRIEDMAN LLP

              By: /s/ Daniel J. Fetterman
                 Daniel J. Fetterman
                 (DFetterman@kasowitz.com)
                 Michael C. Harwood
                 (MHarwood@kasowitz.com)
                 David J. Mark
                 (DMark@kasowitz.com)
              1633 Broadway
              New York, New York 10019
              Tel:  (212) 506-1700

              *Attorneys for Plaintiff*