USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/9/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    :
MF GLOBAL HOLDINGS LTD., AS PLAN    :
ADMINISTRATOR,                      :
                                    :   14-cv-2197 (VM)
              Plaintiff,            :
                                    :   **DECISION AND ORDER**
         - against -                :
                                    :
PRICEWATERHOUSECOOPERS LLP,         :
                                    :
              Defendant.            :
                                    :
------------------------------------X

**VICTOR MARRERO, United States District Judge.**

By Complaint dated March 28, 2014 (the "Complaint"), plaintiff MF Global Holdings Ltd., as Plan Administrator (the "Plan Administrator"), filed this action against defendant PricewaterhouseCoopers LLP ("PwC"). (Dkt. No. 1.) The Complaint alleges that PwC, in its role as outside auditor and accountant for MF Global Holdings Ltd. ("MF Global"), engaged in "extraordinary and egregious professional malpractice and negligence." (Compl. ¶ 1.) The Plan Administrator, as assignee of MF Global's claims, seeks damages of at least $1 billion. (Id. ¶ 7.)

PwC moved to dismiss the Complaint. (Dkt. No. 12.) It argued, in part, that the doctrine of in pari delicto barred the Plan Administrator's claims. (Mem. of Law Supp. PricewaterhouseCoopers LLP's Mot. to Dismiss, dated May 23, 2014 ("PwC's Mem."), at 7-13, Dkt. No. 13.) During a May

27, 2014 telephone conference, the Court instructed the parties to restrict remaining briefing to the in pari delicto issue, which the Court saw as potentially dispositive.

For the reasons detailed below, the Court now finds that the doctrine of in pari delicto does not bar the Plan Administrator's claims against PwC. The Court thus directs the parties to resume briefing on the remaining arguments in support of PwC's motion to dismiss.

## I. BACKGROUND[1]

This case is one of many that arise out of the catastrophic collapse of MF Global. The Court has described in detail the facts and circumstances surrounding that collapse. See, e.g., In re MF Global Holdings Ltd. Inv. Litig. (MF Global II), --- F. Supp. 2d ---, No. 11 Civ. 7866, 2014 WL 667481, at *4-9 (S.D.N.Y. Feb. 11, 2014) (the "Commodities Customer Action"); In re MF Global Holdings Ltd. Sec. Litig. (MF Global I), 982 F. Supp. 2d

---

[1] Except where otherwise noted explicitly, the factual summary below is derived from the Complaint and the documents cited or relied upon for the facts pled therein, which the Court accepts as true for the purposes of ruling on a motion to dismiss. See Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 180 (2d Cir. 2008) (citing GICC Capital Corp. v. Technology Fin. Grp., Inc., 67 F.3d 463, 465 (2d Cir. 1995)); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). Except where specifically referenced, no further citation will be made to the Complaint or the documents referred to in it.

277, 293-300 (S.D.N.Y. 2013) (the "Securities Action"). The Court assumes familiarity with these prior decisions.

Briefly restated, the relevant facts here are as follows. Under the leadership of CEO Jon S. Corzine ("Corzine"), MF Global undertook a new investment strategy to try to reverse the company's recent history of losses. Corzine's new plan involved proprietary investments in European sovereign debt through repurchase-to-maturity ("RTM") transactions (the "RTM Strategy"). MF Global coordinated these investments with two of its affiliates, MF Global Inc. ("MFGI") and MF Global U.K. Limited ("MFG-UK"). In the Securities Action, the Court described the mechanism and benefits of the RTM Strategy:

> [F]irst, MFG-UK purchased European sovereign debt securities on the London Clearing House ("LCH") exchange. MFG-UK then sold those securities to MFGI. Next, MFGI and MFG-UK entered into an RTM agreement. MFGI thus sold the securities to MFG-UK while the firms simultaneously entered a contract for MFGI to repurchase the securities on the securities' maturity dates, at the same price plus a pre-negotiated interest payment. MFG-UK, which now owned the securities, then engaged in a similar repurchase transaction with a counterparty through the LCH. The repurchase date on that transaction was scheduled for two days before the securities' maturity date. MFG-UK thus bore the risk of default on the security, and MFGI was responsible for maintaining liquidity to cover the possible default. MFGI was also expected to provide MFG-UK with funds to cover margin calls or anticipated margin calls from the LCH.

> The RTM Strategy provided MF Global with several accounting advantages. First, the RTM transactions could be counted as sales, rather than as loans, even though MFGI and MFG-UK were contractually obligated to repay the final counterparty for the securities. The obligation to repay was thus "de-recognized" -- it did not appear as a liability on MF Global's balance sheet. The RTM transactions also allowed MF Global to report the transactions as gains at the time of the sale, notwithstanding the subsequent obligation to repay the sale price. Finally, because no liability appeared on MF Global's balance sheet, the RTM transaction did not factor into MF Global's value-at-risk ("VAR") calculations.

MF Global I, 982 F. Supp. 2d at 296.

The RTM Strategy eventually backfired. When MF Global publicly revealed its exposure to European sovereign debt through the RTM transactions, the Financial Industry Regulatory Authority ("FINRA") and the Securities and Exchange Commission ("SEC") required MF Global to increase its capital reserves. The increased capital reserve requirements placed great stress on MF Global's finances and required the company to use intra-company, intra-day transfers to meet its liquidity demands.

MF Global's financial position further eroded in October of 2011, when it declared a substantial loss of $191.6 million in its SEC filings. Over half of that loss came from taking a valuation allowance against the company's Deferred Tax Assets ("DTA"). MF Global had

- 4 -

previously declined to take a valuation allowance against its DTA because it believed it was more likely than not to realize the DTA based on future gains. The DTA had thus appeared as an asset on MF Global's balance sheet. By October 2011, however, MF Global determined that it could no longer say that it was more likely than not to realize its DTA.

In late October of 2011, the financial pressure from the RTM Strategy and the DTA valuation allowance drove MF Global into bankruptcy. Moreover, as MF Global shuffled funds among its related entities to cover liquidity needs, $1.6 billion in customer funds that were supposed to be segregated and secured went missing.

According to the Complaint, MF Global relied on PwC's advice to count the RTM transactions as sales and to de-recognize them from MF Global's balance sheet. (Compl. ¶¶ 2-3.) The Plan Administrator alleges that PwC's advice was incorrect and subsequently led to damages. (Id. ¶¶ 4-5.) The Plan Administrator also faults advice that PwC gave to MF Global about its capital reserve requirements and its accounting of its DTA. (Id. ¶ 6.) In total, according to the Complaint, PwC's professional malpractice and negligent actions led to losses of at least $1 billion. (Id. ¶ 7.)

## II. <u>LEGAL STANDARD</u>

"The doctrine of in pari delicto mandates that the courts will not intercede to resolve a dispute between two wrongdoers." <u>Kirschner v. KPMG LLP</u>, 938 N.E.2d 941, 950 (N.Y. 2010) (footnote omitted). The doctrine prohibits one party from suing another where the plaintiff was "an active, voluntary participant in the unlawful activity that is the subject of the suit." <u>Pinter v. Dahl</u>, 486 U.S. 622, 636 (1988); see also <u>BrandAid Mktg. Corp. v. Bliss</u>, 462 F.3d 216, 218 (2d Cir. 2006). <u>In pari delicto</u> serves to deter illegality by denying relief to a wrongdoer and to avoid forcing courts to intercede in disputes between two wrongdoers. See <u>Kirschner</u>, 938 N.E.2d at 950. While a claim of <u>in pari delicto</u> sometimes requires factual development and is therefore not amenable to dismissal at the pleading stage, see <u>Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.</u>, 711 F.3d 68, 80 (2d Cir. 2013), the doctrine can apply on a motion to dismiss if its application is "plain on the face of the pleadings." <u>Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC)</u> ("<u>BLMIS</u>"), 721 F.3d 54, 65 (2d Cir. 2013)) (citing <u>Kirschner</u>, 938 N.E.2d at 946 n.3).

The traditional principle that a corporation is liable for the acts of its agents and employees applies with full force to the in pari delicto analysis. See Kirschner, 938 N.E.2d at 950-51. Because a bankruptcy trustee stands in the shoes of the bankrupt corporation, in pari delicto prevents the trustee from recovering in tort if the corporation, acting through authorized employees in their official capacities, participated in the tort. BLMIS, 721 F.3d at 63 (citing Wight v. BankAmerica Corp., 219 F.3d 79, 87 (2d Cir. 2000)). The only exception to this rule arises where the agent has "totally abandoned his principal's interests and [is] acting entirely for his own or another's purposes." Kirschner, 938 N.E.2d at 952 (emphasis in original). That exception is "narrow" and limited to cases "where the insider's misconduct benefits only himself or a third party[.]" Id.

### III. DISCUSSION

In the Commodities Customer Action, the Court dismissed claims against PwC on in pari delicto grounds. MF Global II, 2014 WL 667481, at *23-25.[2] PwC argues that the reasoning in the Commodities Customer Action applies

---

[2] The Court later granted final judgment as to the claims against PwC, and an appeal of the Court's decision has been filed.

with full force to this case. The Plan Administrator offers several reasons why the in pari delicto doctrine should not bar this action. For the reasons explained below, the Court is persuaded that the Plan Administrator's complaint, unlike the complaint in the Commodities Customer Action, is not subject to the in pari delicto defense on the face of the pleadings.

In pari delicto applied in the Commodities Customer Action because the Trustee sought to hold PwC liable for something that MF Global officers indisputably participated in: the unlawful transfer of customer funds. There, the plaintiffs, as assignees of the claims of the Trustee for MFGI (the "Trustee"), alleged that PwC had committed professional negligence by failing to detect and prevent the fraudulent transfer of segregated and secured customer funds. See MF Global II, 2014 WL 667481, at *9. The Court granted the motion to dismiss because, under Kirschner, the in pari delicto doctrine prevents a corporation's trustee from suing the corporation's auditor for negligence where the auditor negligently failed to detect illegal conduct committed by the corporation's employees. See id. at *24-25. In the Commodities Customer Action, the face of the complaint demonstrated that any of PwC's violations

- 8 -

resulted only because MF Global employees violated statutory and common law by transferring customer funds out of secured and segregated accounts. See id. at *14, *17, *18, *19, *20, *21 (describing and denying dismissal of various counts arising out of alleged improper transfer of customer funds).

Here, the allegations against PwC are not based on the improper transfer of customer funds. Instead, the Plan Administrator's allegations arise out of PwC's advice about MF Global's accounting. As the Complaint explains, it does not directly concern "the disputes surrounding the use of segregated funds in October 2011." (Compl. ¶ 2.) The in pari delicto defense applies to this case only if, on the face of the Complaint, MF Global was an active, voluntary participant in the allegedly improper accounting advice that it received and used.

The Complaint states otherwise. According to the Plan Administrator's allegations -- which the Court must accept as true at this stage of the litigation, see Chambers, 282 F.3d at 152 -- MF Global based its accounting practices on the advice it solicited from PwC. First, in January 2010, MF Global asked PwC whether it could treat its RTM transactions as sales. (Compl. ¶ 59.) PwC informed MF

Global that it could do so. (Id. ¶ 64.) The Plan Administrator contends that PwC's opinion was negligent. (Id. ¶ 65.) The Complaint details similar allegedly negligent opinions in November 2010 (id. ¶ 80), December 2010 (id. ¶ 87), January 2011 (id. ¶ 90), and May 2011 (id. ¶ 104). The pleadings also describe the allegedly negligent advice that PwC gave to MF Global about accounting for its DTA as an asset. (Id. ¶¶ 127-28, 130-31.) Nowhere does the Complaint suggest, or offer any facts to infer, that MF Global's officers participated in PwC's formulation of its professional opinions other than to give PwC the information it requested to formulate those opinions. In other words, the Court cannot find, based on the face of the Complaint, that MF Global was a willing participant in any unlawful conduct embodied in PwC's opinions.

To illustrate the difference between this case and the Commodities Customer Action, it is helpful to imagine a counterfactual prospect in which MF Global collapsed but customer funds were not improperly transferred. In that event, the Trustee's claims in the Commodities Customer Action would not exist. Those claims were based only on PwC's failure to detect and prevent the improper transfer

of customer funds. See MF Global II, 2014 WL 667481, at *24 (noting MF Global officers' "active involvement in the unlawful activity" -- the transfer of customer funds -- that was the subject of claims against PwC).

On the other hand, the claims that the Plan Administrator has brought in this action would exist even if MF Global's demise had left customer funds untouched. Had MF Global never unlawfully transferred its customers' funds, it is still plausible that PwC's improper accounting advice about the RTM Strategy and the DTA valuation allowance could have played a proximate role in driving the company into bankruptcy and thus causing damages. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (complaint must state plausible claim to relief to survive motion to dismiss). The upshot is that the claims here, unlike the claims in the Commodities Customer Action, do not arise out of the active, voluntary acts of MF Global employees. Therefore, the doctrine of in pari delicto does not bar the claims, at least at this early stage of the litigation.

The rationale behind the in pari delicto defense also illustrates why it is inapplicable to this case. The doctrine "serves to deter illegality by denying relief to a wrongdoer." MF Global II, 2014 WL 667481, at *23 (citing

Kirschner, 938 N.E.2d at 950). When it comes to PwC's accounting opinions, MF Global was not a wrongdoer, at least based on the allegations in the pleadings. Rather, the Plan Administrator claims, MF Global gave PwC accurate information, and PwC in turn relayed to MF Global an inaccurate accounting opinion. These facts, if true, suggest that the fault for these improper opinions lies entirely with PwC. A contrary finding would present an anomaly. It would suggest that MF Global knowingly and actively took part in formulating the erroneous external auditor's advice meant for itself. While in pari delicto could apply in a professional malpractice suit in which the corporation intentionally participated in creating and employing the incorrect opinion, such as by "intentionally provid[ing] inaccurate financial statements to" the auditor, Sacher v. Beacon Assocs. Mgmt. Corp., 980 N.Y.S.2d 121, 124 (App. Div. 2d Dep't 2014), no such allegations have been made here. If discovery reveals a basis for allegations of that kind, the Court can revisit whether in pari delicto applies on a motion for summary judgment. See Gatt Commc'ns, 711 F.3d at 81 (noting that in pari delicto defense is sometimes improper where "the factual record is undeveloped").

PwC suggests that MF Global's "business strategy and decision-making" in implementing the RTM Strategy is sufficient conduct to trigger the in pari delicto defense. (PwC's Mem. at 9.)[3]  The Court is not persuaded that the in pari delicto doctrine sweeps so broadly.  To apply the in pari delicto defense based on MF Global's business strategy, the Court would have to find that the strategy was the same voluntary, unlawful conduct at issue in this lawsuit.  See Pinter, 486 U.S. at 636.  But the alleged unlawful conduct at issue here is the accounting advice that PwC gave to MF Global, and not the strategy that MF Global pursued after receiving that advice.  Nothing from the face of the Complaint or from the Court's prior decisions in related actions suggests that MF Global's conduct had any effect on PwC's accounting advice.

---

[3] The Complaint itself does not discuss how MF Global officers devised and implemented the RTM Strategy.  PwC argues that the Court should take judicial notice of other filings in which the MF Global Litigation Trustee has detailed the alleged malfeasance of MF Global's officers. (Dkt. No. 15; see also PwC's Mem. at 11-12).  The Plan Administrator opposes that request.  (See Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss on In Pari Delicto Grounds, dated June 17, 2014, at 5-8, Dkt. No. 16).

The Court is not inclined to ignore the well-established public record of MF Global's collapse.  See MF Global I, 982 F. Supp. 2d at 289 & n.5 (detailing various public investigations and reports on events surrounding MF Global's bankruptcy).  Nonetheless, because the Complaint survives even after PwC's version of the events is taken into account, the Court deems it unnecessary to rule on the request for judicial notice.

Under PwC's reasoning, the in pari delicto doctrine would insulate an auditor from liability whenever a company pursues a failed investment strategy after receiving wrongful advice from an accountant. Such a broad reading of the doctrine would effectively put an end to all professional malpractice actions against accountants -- an outcome not in line with Kirschner or the New York courts' interpretation of it. See Sacher, 980 N.Y.S.2d at 124 (rejecting in pari delicto defense in derivative suit brought on behalf of corporation against corporation's auditor).

The Court does not suggest that the actions of MF Global and its officers will play no role in the outcome of this litigation. The Plan Administrator will have to prove that MF Global in fact innocently accepted PwC's negligent advice in carrying out the RTM Strategy, and its doing so caused the damages it claims in this action. See Hydro Investors, Inc. v. Trafalgar Power, Inc., 227 F.3d 8, 15 (2d Cir. 2000) (identifying proximate causation of damages as an element in professional malpractice claim under New York law). The Plan Administrator cannot collect for damages attributable solely to MF Global's business strategy, rather than to PwC's allegedly erroneous

accounting advice.[4]  But those arguments are unrelated to the in pari delicto defense.

For these reasons, the Court will not grant the motion to dismiss on in pari delicto grounds.  Because other grounds on which the motion to dismiss relies are still pending, the Court orders full briefing on those issues.

## IV.  ORDER

For the reasons discussed above, it is hereby

**ORDERED** that plaintiff MF Global Holdings Ltd., as Plan Administrator, shall file its opposition to the remainder of the motion to dismiss the complaint (Dkt. No. 12) by August 5, 2014; and it is further

---

[4] In a separate argument in support of its motion to dismiss, PwC argues that the Complaint fails to make out a prima facie case of proximate cause.  (PwC's Mem. at 13-20.)  Because the Court limited the Plan Administrator's opposition brief to the in pari delicto argument, the proximate cause argument has not yet been fully briefed.  The Court will rule on the merits of that argument after full briefing is complete.

**ORDERED** that defendant PricewaterhouseCoopers LLP shall file its reply in support of its motion to dismiss by August 12, 2014.

**SO ORDERED.**

Dated:   New York, New York
         8 July 2014

                                                Victor Marrero
                                                   U.S.D.J.