```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/27/14
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                     :
MF GLOBAL HOLDINGS LTD., AS PLAN     :
ADMINISTRATOR,                       :
                                     :    14-cv-2197 (VM)
                Plaintiff,           :
                                     :    **DECISION AND ORDER**
        - against -                  :
                                     :
PRICEWATERHOUSECOOPERS LLP,          :
                                     :
                Defendant.           :
                                     :
------------------------------------X

**VICTOR MARRERO**, United States District Judge.

By Complaint dated March 28, 2014 (the "Complaint"), plaintiff MF Global Holdings Ltd., as Plan Administrator (the "Plan Administrator"), filed this action against defendant PricewaterhouseCoopers LLP ("PwC"). (Dkt. No. 1.) The Complaint alleges that PwC, in its role as outside auditor and accountant for MF Global Holdings Ltd. ("MF Global"), engaged in "extraordinary and egregious professional malpractice and negligence." (Compl. ¶ 1.) The Plan Administrator, as assignee of MF Global's claims, seeks damages of at least $1 billion. (Id. ¶ 7.)

PwC moved to dismiss the Complaint. (Dkt. No. 12.) By Decision and Order dated July 8, 2014 (the "IPD Decision"), the Court rejected PwC's argument that the doctrine of in pari delicto barred the Plan Administrator's claims and ordered briefing on PwC's remaining arguments in

support of its motion to dismiss. See MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP, --- F. Supp. 2d ---, No. 14-cv-2197, 2014 WL 3402602, at *5 (S.D.N.Y. July 9, 2014). The Plan Administrator filed its opposition to the motion (Dkt. No. 19), and PwC filed a reply in further support of the motion (Dkt. No. 20).

Upon review of the parties' filings and for the reasons detailed below, PwC's motion is GRANTED in part and DENIED in part.

## I. BACKGROUND[1]

This case is one of many that arise out of the catastrophic collapse of MF Global. The Court previously detailed the background of this case in the IPD Decision, see MF Global Holdings Ltd., 2014 WL 3402602, at *1-2, familiarity with which is presumed.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon

---

[1] Except where otherwise noted explicitly, the factual summary below is derived from the Complaint and the documents cited or relied upon for the facts pled therein, which the Court accepts as true for the purposes of ruling on a motion to dismiss. See Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 180 (2d Cir. 2008) (citing GICC Capital Corp. v. Technology Fin. Grp., Inc., 67 F.3d 463, 465 (2d Cir. 1995)); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). Except where specifically referenced, no further citation will be made to the Complaint or the documents referred to in it.

which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. The task of a court in ruling on a motion to dismiss is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (quoting Levitt v. Bear Stearns & Co., Inc., 340 F.3d 94, 101 (2d Cir. 2003)) (internal quotation marks omitted), aff'd sub nom., Tenney v. Credit Suisse First Bos. Corp., Nos. 05-3430-CV, 05-4759-CV, 05-4760-CV, 2006 WL 1423785 (2d Cir. May 19, 2006). A court must accept as true all well-pleaded factual allegations in the complaint and draw

all reasonable inferences in the plaintiff's favor. See Chambers, 282 F.3d at 152.

### III. DISCUSSION

A.  STANDING

PwC first argues that the Plan Administrator lacks standing to pursue this action. PwC notes that MF Global's liquidation plan created the MF Global Litigation Trust (the "Litigation Trust"). The liquidation plan also created a litigation trustee (the "Trustee") and granted him "the exclusive authority to pursue the Litigation Trust Claims." (Second Am. & Restated Joint Plan of Liquidation, dated April 22, 2013 ("Liquidation Plan"), at 37, Dkt. No. 14, Ex. D.) The Litigation Trust Claims are defined as

> the claims set forth in the complaint entitled "Louis J. Freeh, as Chapter 11 Trustee of MF Global Holdings Ltd., et al. v. Jon S. Corzine, et al.", Adversary Proceeding Number 13-01333 (Bankr. S.D.N.Y.), as it may be subsequently modified, amended, or supplemented, and any claims arising out of or related to the facts or circumstances alleged in the complaint or set forth in the Report of Louis J. Freeh, as Chapter 11 Trustee of MF Global Holdings Ltd., et al., dated April 3, 2013 [Docket No. 1279].

(Id. at 11.) According to PwC, this action falls within that definition and therefore cannot be brought by the Plan Administrator.

"When interpreting a confirmed plan, the principles of contract law apply." In re Dynergy Inc., 486 B.R. 585, 590

- 4 -

(Bankr. S.D.N.Y. 2013). The Court thus must "give effect to the intention of the parties as expressed in the unequivocal language they have employed." Id. (quoting Cruden v. Bank of N.Y., 957 F.2d 961, 976 (2d Cir. 1992)). Applying these principles, the Court is not persuaded that the Liquidation Plan restricts the Plan Administrator's ability to bring this action.

First, the Court is not persuaded that this case involves or relates to the claims brought in the Trustee's previous action (the "Litigation Trustee Action"). (See Freeh et al. v. Corzine et al., Adv. Pro. No. 13-01333-mg (Bankr. S.D.N.Y.) ("Adversary Proceeding"), Dkt. No. 22.)[2] The Litigation Trustee Action involves claims against several of MF Global's directors and officers for alleged breaches of their fiduciary duties of care and loyalty. See In re MF Global Holdings Ltd., 507 B.R. at 809. This case, by contrast, involves allegedly wrongful accounting advice that PwC gave to MF Global. See MF Global Holdings Ltd., 2014 WL 3402602, at *3 ("[T]he Plan Administrator's

---

[2] By Order dated January 14, 2014, the Court withdrew its reference of the Litigation Trustee Action to the Bankruptcy Court and ordered that the action be transferred to this Court. (Adversary Proceeding, Dkt. No. 35.) By Decision and Order dated March 24, 2014, the Court denied a motion to dismiss the Litigation Trustee Action. In re MF Global Holdings Ltd., 507 B.R. 808 (S.D.N.Y. 2014).

allegations arise out of PwC's advice about MF Global's accounting.").

PwC focuses on how both the Litigation Trust Action and this action discuss MF Global's strategy of investing in European sovereign debt through repurchase-to-maturity ("RTM") transactions (the "RTM Strategy"). But both the claims and the principal actors that the two proceedings relate to are still fundamentally different. The Complaint here concerns actions taken by PwC, specifically how it influenced MF Global's accounting of the RTM transactions. Thus, the focus of the harm the Plan Administrator alleges is not the wrongful conduct of the directors and officers, but of PwC. The Litigation Trust Action, on the other hand, concerns whether MF Global's directors and officers violated fiduciary duties in their implementation of the RTM Strategy as a whole.

In brief, the Complaint here does not allege that the defendants in the Litigation Trust Action took any part in PwC's accounting opinion; similarly, the complaint in the Litigation Trust Action does not allege that PwC played any role in the implementation of the RTM Strategy. Because the claims are based on disparate aspects of the RTM transactions by different actors, the Court is not

- 6 -

persuaded that the mere discussion of the RTM Strategy in both actions is enough to consider them as arising out of the same facts and circumstances and asserting the same claims.

The Court also finds that the claims stated here do not arise out of or relate to the facts and circumstances described in the report of MF Global's Chapter 11 Trustee. (See Report of Investigation of Louis J. Freeh, Chapter 11 Trustee of MF Global Holdings Ltd., et al., dated April 3, 2013 ("Freeh Report"), Dkt. No. 14, Ex. E.) The Freeh Report describes the RTM Strategy and its effect on MF Global's eventual collapse. But although the Freeh Report discusses how MF Global accounted for the RTM transactions, it does not address PwC's accounting advice or whether that advice was consistent with any applicable professional standards. Indeed, PwC is not mentioned at all in the 117-page Freeh Report. Thus, the Court concludes that the claims stated in the Plan Administrator's Complaint do not arise out of sufficiently similar facts and circumstances to those discussed in the Freeh Report so as to implicate the Liquidation Plan's delegation of exclusive authority to the Trustee.

Because the Court finds that the Plan Administrator's claims regarding PwC's advice about MF Global's accounting for RTM transactions are separate from claims about MF Global's implementation of the RTM Strategy, the Court concludes that the Liquidation Plan does not bar the Plan Administrator from bringing this action.

B.   PROXIMATE CAUSE

PwC argues that the Complaint fails to allege facts sufficient to show that PwC proximately caused any harm to MF Global. According to PwC, the only reasonable inference to be drawn from the Complaint is that MF Global's business decision to invest heavily in European sovereign debt -- about which PwC offered no advice -- was the proximate cause of MF Global's downfall. The Court, however, finds that sufficient questions of fact remain about the proximate cause (or causes) of the alleged harm, making dismissal of the Complaint inappropriate at this stage of the litigation.

The element of proximate cause limits a defendant's liability to "those with respect to whom his acts were a substantial factor in the sequence of responsible causation, and whose injury was reasonably foreseeable or anticipated as a natural consequence." Lerner v. Fleet

Bank, N.A., 318 F.3d 113, 123 (2d Cir. 2003) (internal quotation marks omitted). A court should thus dismiss an action where "the connection between the [alleged] violation and the injury alleged is too attenuated to satisfy the proximate cause requirement," id., or where the alleged "chain of causation . . . is far too long to constitute proximate cause," Kolbeck v. LIT Am., Inc., 939 F. Supp. 240, 249 (S.D.N.Y. 1996). While the court must accept the complaint's allegations and draw all reasonable inferences from it, "conclusory allegations that do not meet Twombly's plausibility standard with respect to the need for a proximate causal relationship" are insufficient to prevent dismissal. Rothstein v. UBS AG, 708 F.3d 82, 97 (2d Cir. 2013).

Here, PwC provided MF Global with advice about how to account for the RTM transactions. That advice impacted MF Global's implementation of the RTM Strategy, which in turn contributed to the company's alleged losses. This line of causation gives rise to a plausible claim that PwC proximately caused harm to MF Global. It is plausible to conclude that PwC's accounting advice was a substantial factor in how MF Global's investments through RTM transactions harmed MF Global. It is also plausible to

conclude that PwC should reasonably have foreseen how any improper accounting advice it provided in this connection could harm MF Global. The line of causation the Plan Administrator claims in this case is a far cry from the attenuated lines of causation that have caused other courts to dismiss claims on this basis. Here, the causation alleged does not rest on mere conjecture, see Rothstein, 708 F.3d at 97 (finding mere conclusory allegations that transfer of money to Iran could be used to fund terrorist groups insufficient to show proximate cause), and does not depend on the intervention of multiple parties, see Kolbeck, 939 F. Supp. at 249 (finding proximate cause lacking where line of causation involved investigation by defendant and subsequent conduct by investigated third party).

Of course, PwC's conduct is not the only plausible proximate cause of the harm alleged in the Complaint. The RTM Strategy, as implemented by MF Global's employees, might also have been a substantial factor in bringing about reasonably foreseeable damages to MF Global. As the Court has noted before, "[t]he Plan Administrator cannot collect for damages attributable solely to MF Global's business strategy, rather than to PwC's allegedly erroneous

- 10 -

accounting advice." MF Global Holdings Ltd., 2014 WL 3402602, at *5. But sorting among the potential causes and determining which parties are liable is a task for a jury, not a judge deciding a motion to dismiss. See Herbert H. Post & Co. v. Sidney Bitterman, Inc., 639 N.Y.S.2d 329, 336 (App. Div. 1st Dep't 1996) (affirming jury verdict in light of factual issue regarding whether defendant's acts were proximate cause of harm, "notwithstanding . . . other factors" that may have contributed to harm). For now, it is sufficient that the Plan Administrator has "state[d] a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

For these reasons, the Court is not persuaded that the Complaint should be dismissed for a failure to allege a sufficient proximate cause.

C.   STATUTE OF LIMITATIONS

PwC argues that all claims based on advice given before March 29, 2011 are barred by the statute of limitations. The Plan Administrator responds that the continuous representation doctrine permits those claims to be brought as timely. The Court is not persuaded that any of the Plan Administrator's claims are time-barred.

- 11 -

New York law sets a three-year statute of limitations on actions for malpractice. See Williamson v. PricewaterhouseCoopers LLP, 872 N.E.2d 842, 844 (N.Y. 2007) (citing N.Y. C.P.L.R. 214(6)). The action accrues from the date malpractice is committed, not the date on which it is discovered. Id. at 845. However, under the continuous representation doctrine, where a professional representation of a client continues on an ongoing basis as part of the same matter, the statute of limitations begins to run only when the entire course of the representation has ended. See id. at 845-47; Shumsky v. Eisenstein, 750 N.E.2d 67, 70-71 (N.Y. 2001). The continuous representation doctrine thus applies where the agreement between professional and client demonstrates that they "anticipate continued representation" on a particular matter. Shumsky, 750 N.E.2d at 370. An expectation of continuous representation can be inferred from a client's action, such as contacting the professional to inquire about the status of a matter. See id. The continuous representation ends "once the client is informed or otherwise put on notice of the [professional's] withdrawal from representation." Id. at 370-71.

The parties dispute only whether the Plan Administrator's claims based on PwC's 2010 audit report (the "2010 Audit Report") are timely. The 2010 Audit Report was filed on May 27, 2010, as part of MF Global's 2010 Form 10-K (the "2010 10-K"). The Plan Administrator argues that the continuous representation doctrine applies because PwC assisted MF Global in responding to an SEC inquiry concerning the 2010 10-K. The Complaint additionally indicates that "[a]t no time prior to assisting MF Global Holdings in responding to these SEC inquiries did PwC advise the SEC or MF Global Holdings that its engagement period in connection with the 2010 10-K had ended." (Compl. ¶ 59.)

Accepting the allegations in the complaint as true, the Court concludes that dismissal is inappropriate at this time. This is not a case in which the face of the complaint shows that the parties "did not contemplate that further work would be required." Apple Bank for Sav. v. PricewaterhouseCoopers, LLP, No. 603492/06, 2008 WL 498225, at *3 (N.Y. Sup. Ct. Feb. 5, 2008).[3] Indeed, MF Global's

---

[3] In Apple Bank, the court relied on engagement letters establishing the terms of the representation. See Apple Bank, 2008 WL 498225, at *3; see also Williamson, 872 N.E.2d at 847 (concluding that when auditor enters into engagement letter encompassing services only for a particular year, without contemplating further work as to that year, "the 'mutual understanding' required under the [continuous

- 13 -

decision to seek further advice from PwC regarding the 2010 10-K and PwC's decision to render such advice give rise to a reasonable inference that the parties anticipated continuous representation. See Shumsky, 750 N.E.2d at 370. Therefore, a question of fact remains as to whether the parties anticipated that the representation would continue after the 2010 Audit Report was issued, and dismissal of any claims as time-barred is inappropriate at this time. See Anwar v. Fairfield Greenwich Ltd., 728 F. Supp. 2d 372, 461 (S.D.N.Y. 2010) (denying motion to dismiss because facts averred in complaint, "credited at the pleading stage without the development of a fuller factual record, sufficiently invoke[d] the continuous representation doctrine").

D.   REDUNDANCY OF CONTRACT CLAIM

Count Two of the Complaint alleges breach of contract. PwC argues that Count Two should be dismissed as duplicative of Count One of the Complaint, which alleges professional malpractice. "[A] claim for breach of contract is properly dismissed as 'redundant . . . of a

---

representation] doctrine d[oes] not exist"). Here, although the Court has reviewed engagement letters PwC submitted in connection with this proceeding establishing terms of PwC's representation for audits in 2011 and 2012 (Dkt. No. 14, Exs. A, B), the parties have not supplied the Court with any engagement letter encompassing the 2010 Audit Report.

malpractice claim,' where it is does not 'rest upon a promise of a particular or assured result,' but rather upon defendant's alleged breach of professional standards." Diamond v. Sokol, 468 F. Supp. 2d 626, 640 (S.D.N.Y. 2006) (alteration in original) (quoting Senise v. Mackasek, 642 N.Y.S.2d 241, 242 (App. Div. 1st Dep't 1996)). The Complaint lists a number of contractual obligations that PwC allegedly breached (Compl. ¶ 158), but those obligations are no different from the duties encompassed in the Plan Administrator's malpractice claim. Cf. Common Fund for Non-profit Orgs. v. KPMG Peat Marwick LLP, No. 96 Civ. 0255, 2000 WL 124819, at *1-2 (S.D.N.Y. Feb. 2, 2000) (denying motion to dismiss contract claim based on terms such as "go beyond the financial statements" and "perform detailed tests"). The Complaint contains no non-conclusory allegations that PwC promised a particular result other than to comply with professional standards. See Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Court thus concludes that the contract claim is duplicative of the malpractice claim and grants PwC's motion to dismiss with respect to Count Two.

E.  UNJUST ENRICHMENT

Count Three of the Complaint alleges unjust enrichment. "To state a claim for unjust enrichment in New York, a plaintiff must allege that (1) defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances were such that equity and good conscience require defendants to make restitution." Kidz Cloz, Inc. v. Officially for Kids, Inc., 320 F. Supp. 2d 164, 177 (S.D.N.Y. 2004) (internal quotation marks omitted). "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 516 N.E.2d 190, 193 (N.Y. 1987); accord EBC I, Inc. v. Goldman Sachs & Co., 832 N.E.2d 26, 33-34 (N.Y. 2005). A plaintiff can plead unjust enrichment as an alternative claim to breach of contract, but only if there is "a bona fide dispute concerning existence of a contract or whether the contract covers the dispute in issue." Fantozzi v. Axsys Techs., Inc., No. 07 Civ. 02667, 2008 WL 4866054, at *7 (S.D.N.Y. Nov. 6, 2008) (quoting Courtien Communications, Ltd. v.

- 16 -

Aetna Life Ins. Co., 193 F. Supp. 2d 563, 571 (E.D.N.Y. 2002)) (internal quotation marks omitted).

Here, the parties do not dispute that written agreements cover the claims. Moreover, even though the Court dismissed the parallel breach of contract claim, dismissal of the unjust enrichment claim is still proper because the contracts governing the instant dispute were valid and enforceable. See Diesel Props S.R.L. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 52 (2d Cir. 2011). The Court thus grants PwC's motion to dismiss with respect to Count Three.

## IV. ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the motion (Dkt. No. 12) of defendant PricewaterhouseCoopers LLP to dismiss the complaint is GRANTED as to Count Two and Count Three and DENIED as to Count One.

**SO ORDERED.**
Dated: New York, New York
27 August 2014

Victor Marrero
U.S.D.J.