UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------

MF GLOBAL HOLDINGS LTD., AS PLAN
ADMINISTRATOR,

                             Plaintiff,

   - against –

PRICEWATERHOUSECOOPERS LLP,

                         Defendant.

Case No. 14-cv-2197 (VM)(JCF)


**PLAINTIFF'S FIRST MOTION *IN LIMINE* AND MEMORANDUM
OF LAW TO EXCLUDE EVIDENCE AND ARGUMENT CONCERNING
<u>SEGREGATED CUSTOMER FUNDS</u>**


KASOWITZ, BENSON, TORRES
   & FRIEDMAN LLP
1633 Broadway
New York, New York 10019-6799
Tel:      (212) 506-1700
Fax:     (212) 506-1800

*Attorneys For Plaintiff MF Global Holdings Ltd.,
As Plan Administrator*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ......................................................................................... 1

FACTS ............................................................................................................................... 4

ARGUMENT ..................................................................................................................... 6

I.      EVIDENCE CONCERNING THE TRANSFER  OF SEGREGATED CUSTOMER
        FUNDS IS IRRELEVANT ..................................................................................... 6

II.     EVIDENCE CONCERNING THE TRANSFER OF SEGREGATED CUSTOMER
        FUNDS IS UNDULY PREJUDICIAL..................................................................... 8

CONCLUSION ................................................................................................................. 12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Analytics, Inc. v. Citigroup Global Mkts., Inc.*,
　301 F.R.D. 31 (S.D.N.Y. 2014) ......................................................................................7

*Bd. Of Trustees of the Aftra Ret. Fund v. JP Morgan Chase Bank*,
　860 F. Supp. 2d 251 (S.D.N.Y. 2012)...........................................................................10

*FHFA v. Nomura Holding America*,
　No. 11-cv-6201, 2014 WL 7229458 (S.D.N.Y. Dec. 18, 2014) ...................................10

*Fitzpatrick v. Amer. Intern. Group., Inc.*,
　No. Civ. 0142 (MHD), 2013 WL 5912236 (S.D.N.Y. Nov. 2, 2013) ...........................10

*In re General Motors LLC Ignition Switch Litigation*,
　No. 14-cv-8176, 2015 WL 8130449 (S.D.N.Y. Dec. 3, 2015) .....................................10

*Hart v. RCI Hospitality Holdings, Inc.*,
　90 F. Supp. 3d 250 (S.D.N.Y. 2015)...............................................................................9

*Highland Capital Mgmt., L.P. v. Schneider*,
　551 F. Supp. 2d 173 (S.D.N.Y. 2008).............................................................................9

*Kelly v. Lopiccolo*,
　5 Fed. Appx. 57 (2d Cir. 2001).....................................................................................10

*Estate of Mali v. Federal Ins. Co.*,
　No. 06-cv-01475 (EBB), 2011 WL 2516246 (D. Conn. June 17, 2011) .....................10

*In re MF Global Holdings Inv. Litig.*,
　998 F. Supp. 2d 157 (S.D.N.Y. 2014)......................................................................3, 4, 5

*MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP*,
　57 F. Supp. 3d 206 (S.D.N.Y. 2014)......................................................................1, 2, 8

*MF Global Holdings, Ltd. v. PricewaterhouseCoopers LLP*,
　No. 14-cv-2197, 2016 WL 4197062 (S.D.N.Y. Aug. 5, 2016)..................................3, 8

*Park W. Radiology v. CareCore Nat. LLC*,
　675 F. Supp. 2d 314 (S.D.N.Y 2009).....................................................................4, 10, 11

*Perry v. Ethan Allen, Inc.*,
　115 F.3d 143 (2d Cir. 1997)............................................................................................6

*United States v. Gelzer*,
   50 F.3d 1133 (2d. Cir. 1995)...................................................................................9

**Other Authorities**

Federal Rules of Civil Procedure 26(a)(2) ..........................................................................7

Federal Rules of Evidence 104(a)........................................................................................7

Federal Rules of Evidence 402 ...................................................................................1, 2, 6

Federal Rules of Evidence 403 ............................................................................1, 3, 6, 8, 9

MF Global Holdings Ltd. ("MF Global"), as Plan Administrator ("Plaintiff" or the "Plan Administrator"), submits this motion *in limine* for an order under Rules 402 and 403 of the Federal Rules of Evidence precluding defendant PricewaterhouseCoopers LLP ("PwC") from offering evidence at trial concerning MF Global's transfer of segregated customer funds.

## PRELIMINARY STATEMENT

PwC asserts that, in the week before MF Global filed its petition for bankruptcy, "a scramble to satisfy large customer withdrawals and margin calls led to a massive breach of customer fund segregation [] and the notorious $1 billion shortfall that crushed a promising deal to sell the company." PwC's Pretrial Memorandum of Law at 2. PwC then asserts that the Plan Administrator "cannot prove that PwC had anything to do with MF Global's . . . massive segregation breach." *Id*. at 2. That assertion is irrelevant because, as set forth below and as Plaintiff has consistently made clear through all the motion practice in this case, the Plan Administrator's claim does not depend on the segregated funds breach nor does it assert that PwC was responsible for that breach as an element of its damages claim.

As this Court recognized in rejecting PwC's *in pari delicto* motion to dismiss based on its arguments concerning MF Global's alleged misconduct concerning segregated funds:

> the allegations against PwC are not based on the improper transfer of customer funds. Instead, the Plan Administrator's allegations arise out of PwC's advice about MF Global's accounting. As the Complaint explains, it does not directly concern "the disputes surrounding the use of segregated funds in October 2011."

*MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP*, 57 F. Supp. 3d 206, 210 (S.D.N.Y. 2014) (denying PwC's motion to dismiss). Plaintiff's claim is based in part on the massive build-up of the Euro RTM portfolio, which could not have occurred without PwC's negligent accounting and auditing work, and which led to a liquidity crisis in October 2011 that it was unable to survive. That state of affairs existed by the time the misuse of customer funds was

uncovered and MF Global suffered significant financial harm completely independent of the collapse of the possible deal to sell the company.  Nevertheless, PwC intends to try the missing customer funds case in this trial by offering documents into evidence (*see, e.g.*, Montefusco Decl., Exs. 22-24) and calling at least three witnesses (Edith O'Brien, Alexander Ioffe, and Laurie Ferber) to testify concerning "a shortfall in customer segregated funds discovered by the Company in late October 2011."  January 13, 2017 Joint Pre-Trial Order at 25.  PwC's motivation for offering such evidence is transparent and improper.

As an initial matter, evidence concerning a shortfall in customer funds is irrelevant to any material issue in this action and, therefore, is inadmissible under Rule 402.  It is beyond dispute that MF Global had already planned to file for bankruptcy on Monday, October 31, 2011, even before it confirmed that customer funds were missing late the night before.  The proposed sale itself was to be accomplished as part of a bankruptcy plan.  Thus, while the transfer of customer segregated funds may have been a *consequence* of the liquidity crisis that precipitated MF Global's bankruptcy, it was not and could not have been a *cause* of MF Global's bankruptcy. Second, as shown in the accompanying declaration of the Plan Administrator's damages expert, Guy Davis, MF Global's transfer of customer segregated funds in no way impacts his calculation of MF Global's damages.  As he demonstrates in his Expert Reports, the amount that MF Global would have received in the bankruptcy sale to Interactive Brokers, LLC ("Interactive") is actually less than it has collected through the actual bankruptcy and so the damages would have been greater if the bankruptcy sale to Interactive had gone through.  Third, as this Court has already found, the transfer of MF Global's customer segregated funds does not and cannot support PwC's *in pari delicto* defense because it is not "the same voluntary, unlawful conduct at issue in this lawsuit."  *MF Global Holdings Ltd*., 57 F. Supp. 3d at 212.

Even assuming for the sake of argument that PwC could articulate some plausible theory as to why evidence relating to MF Global's transfer of customer funds were relevant -- and PwC has never done so[1] -- it is inadmissible under Rule 403 on three independent grounds. *First*, given the complete absence of any legitimate probative value, PwC plainly intends to offer this evidence for an improper and prejudicial purpose -- that is, to confuse and mislead the jury into believing that this case involves misconduct by company employees, and to induce it to resolve the case on some basis other than on the merits of PwC's own negligence. Any evidence of misconduct relating to the transfer of customer funds -- whether by MF Global or PwC -- is likely to mislead the jury into believing that it is somehow relevant to causation, damages or PwC's *in pari delicto* defense. That is not so.

*Second*, the concept of customer segregated funds is a complex issue and is likely to confuse the jury. Permitting PwC to offer evidence concerning the transfer of segregated customer funds will necessitate the submission of substantial related evidence concerning the nature of segregated customer funds in the context of a complex regulatory regime, the facts and circumstances surrounding MF Global's maintenance and transfer of such funds, and PwC's professional negligence in auditing MF Global's controls relating to those funds. *See, e.g., In re MF Global Holdings Inv. Litig.*, 998 F. Supp. 2d 157, 174 (S.D.N.Y. 2014) (summarizing allegations of PwC's professional negligence in connection with MF Global's segregated customer funds). Courts routinely exclude evidence that poses the risk, which exists here as

---

[1] As the Court observed in denying PwC's motion for summary judgment with respect to causation, the "additional causes cited by PwC [were] the buildup of Euro RTMs, European market volatility, credit downgrades, and margin calls . . . ." *MF Global Holdings, Ltd. v. PricewaterhouseCoopers LLP*, No. 14-cv-2197, 2016 WL 4197062 *19 (S.D.N.Y. Aug. 5, 2016).

well, of turning the trial into a series of "mini-trials" on collateral issues.  *Park W. Radiology v. CareCore Nat. LLC*, 675 F. Supp. 2d 314, 325 (S.D.N.Y 2009).

Accordingly, as set forth more fully below, Plaintiff requests that the Court preclude PwC from offering evidence of the transfer of MF Global's segregated customer funds.

## FACTS

The facts and circumstances surrounding the segregated customer funds shortfall are well-known to this Court.  For the purposes of this motion, Plaintiff discusses only some of the key factual points and otherwise respectfully refers the Court to its own recitation of the basic facts concerning the transfer of MF Global's segregated funds in *In re MF Glob. Holdings Ltd. Inv. Litig.*, 998 F Supp. 2d 157, 167, 169 (S.D.N.Y. 2014), *aff'd sub nom.*, *In re MF Glob. Holdings Ltd. Inv. Litig. (DeAngelis v. Corzine)*, 611 Fed Appx. 34 (2d Cir. 2015).

MF Global Holdings Inc. ("MFGI") was, in part, a regulated Futures Commission Merchant ("FCM") and a wholly-owned subsidiary of MF Global.  As an FCM, MFGI facilitated trades in futures contracts through commodity exchanges using the money deposited by its customers.  *Id.* at 169.  MFGI was required by law to keep customer accounts segregated and secured to ensure that it had sufficient funds for its customers.  *Id.* at 169-70.  The applicable regulations "permit an FCM to deposit its own assets in the same bank account as customer assets and then to use its share (but not the customer's share) of the account for normal business purposes." *Id*. at 169.  In the summer of 2011, MF Global began transferring its share of the funds in MFGI's segregated customer accounts to other MF Global operations in order to address its tightening liquidity.  *Id.* at 170-71.[2]  The strain on MF Global's liquidity increased over time.

---

[2] To be clear, the Plan Administrator does not seek to exclude any evidence of MF Global's use *of its share* of segregated funds.  Rather, the Plan Administrator seeks to exclude evidence of MF



*see also* Montefusco Decl. Exs. 2, ¶ 2 and 3.  Interactive was proposing to pay $1 billion in a bankruptcy sale to acquire the assets of MF Global, which would have included its equity in its subsidiaries, but Interactive would not have been responsible for any of MF Global's liabilities to its creditors.

Also on Friday, October 28, MF Global became aware of a possible shortfall in segregated customer funds (meaning that it had transferred more than *its share* of funds in segregated accounts), but initially concluded that it was an accounting error, rather than an actual shortfall.  *In re MF Glob. Holdings Ltd. Inv. Litig*., 998 F Supp. 2d at 173.

---

Global's alleged wrongful transfer of *its customers' share* of those funds in the days preceding its bankruptcy to prevent a mini-trial on that issue.

███████████████████████

████████████

The next morning, Monday, October 31 – as MF Global had planned to do even if the

Interactive deal had been consummated (*id*.; Montefusco Decl., Exs. 2 and 3) – MF Global filed

a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States

Bankruptcy Court for the Southern District of New York.

<u>**ARGUMENT**</u>

This Court has broad discretion over the admission of evidence and its evaluation of

relevance is entitled to substantial deference.   *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 150 (2d

Cir. 1997).  Evidence concerning the transfer of MF Global's customer segregated funds is

inadmissible under Rule 402 because it is of no consequence to the determination of this action.

In the alternative, the evidence is excluded under Rule 403 because any marginal probative value

is substantially outweighed by the risk that the Plan Administrator will be unfairly prejudiced,

that the presentation of such evidence will confuse and/or mislead the jury, and that the review of

such evidence would cause undue delay and be a waste of time.

**I.      EVIDENCE CONCERNING THE TRANSFER**
         <u>**OF SEGREGATED CUSTOMER FUNDS IS IRRELEVANT**</u>

Evidence of MF Global's transfer of segregated customer funds is excluded under Rule

402 because it is not probative of any material issue in this case.  First, PwC has never articulated

a plausible theory as to how MF Global's transfer of segregated funds caused or contributed to

the damages MF Global seeks in this case.  MF Global's enterprise value was severely impaired

due to the liquidity crises before the segregated funds issue even arose.  The closest PwC has

come to articulating any theory at all is a conclusory assertion in its summary judgment brief that

MF Global's discovery and disclosure that customer funds were missing "killed a potential sale

of the company and forced the Company to declare bankruptcy." PwC's Memorandum In Support Of Its Summary Judgment Motion at 22. That assertion is demonstrably false because the decision to file for bankruptcy had already been made by the time MF Global disclosed that segregated customer funds were missing. As shown above (*see supra* Facts), while MF Global's confirmation that segregated customer funds were missing near midnight on October 30 may have "killed" the Interactive deal, MF Global intended to file for bankruptcy the next morning one way or the other. The damage caused by MF Global's Euro RTM-driven liquidity crisis had already been done. Indeed, that is why MF Global was contemplating selling its assets to Interactive *in a bankruptcy sale.*

More fundamentally, even assuming contrary to the facts that MF Global's missing segregated funds somehow "forced" MF Global into bankruptcy, PwC cannot show – and has proffered no expert who even attempts to show – that MF Global's missing segregated funds, the failure of the Interactive deal to close, or the mere fact that MF Global filed for bankruptcy in any way contributed to MF Global's damages. As the Plan Administrator's damages expert, Guy A. Davis, attests in the accompanying declaration:

> The missing funds were not relevant to my damage computation because by the time the segregated funds deficiency was confirmed and reported, the damages sustained by MF Global, as I have calculated them, had already occurred.

Davis Decl. ¶ 11.[3] Likewise, Mr. Davis attests that Interactive's "offer and withdrawal also did not affect [his] damage analyses" because, among other reasons:

---

[3] "Davis Declaration" or "Davis Decl." refers to the accompanying declaration of Guy A. Davis CPA, CIRA, CDBV, CFE, dated January 19, 2017. The Court may properly consider the Davis Declaration for purposes of ruling on this evidentiary motion. *See* Fed. R. Evid. 104(a) ("In so deciding [as to whether evidence is admissible], the Court is not bound by evidence rules, except those on privilege."); *see also Advanced Analytics, Inc. v. Citigroup Global Mkts., Inc.*, 301 F.R.D. 31, 43 (S.D.N.Y. 2014) ("the requirements of Rule 26(a)(2) do not apply to expert reports or expert testimony or affidavits to the extent such material is used for non-merits purposes").

> Even if the transaction had closed, the ***net consideration*** that would have been paid by [Interactive] at closing of the bankruptcy sale is ***less than the distributions already made*** to MF Global's creditors through December 31, 2016.

*Id.* ¶ 12 (emphasis supplied).  Thus, as set forth in greater detail in the Davis Declaration (*id.* ¶¶ 13-16), the proposed Interactive deal "would not have generated a more favorable outcome for the MFG estate."  *Id.* ¶ 17.  If anything, the consummation of the Interactive bankruptcy sale would have *increased* MF Global's damages.

Finally, the segregated customer funds issue cannot, as a matter of law in this case, be offered in support of PwC's *in pari delicto* defense.  This Court has held and reiterated that, to establish *in pari delicto*, PwC would have to prove that MF Global intentionally participated in "the *same* voluntary, unlawful conduct at issue in this lawsuit."  *MF Global*, 57 F. Supp. 3d at 212 (emphasis supplied); *see also MF Global Holdings, Ltd.*, 2016 WL 4197062 *17 (PwC "must establish intentional wrongdoing by the plaintiff that is *the subject of the litigation.*") (emphasis supplied).  Thus, "[t]he central question here is whether MF Global's participation in drafting the sale accounting decision by itself constitutes the type of intentional financial wrongdoing that would preclude relief under *in pari delicto*."  *Id.* at *12.  The misuse of segregated customer funds has zero probative value in answering that "central question."

## II.    EVIDENCE CONCERNING THE TRANSFER OF SEGREGATED CUSTOMER FUNDS IS UNDULY PREJUDICIAL

Even if MF Global's segregated customer funds shortfall had some limited relevance, it would be barred under Rule 403 because of the high risk that the Plan Administrator will be unfairly prejudiced, that the presentation of such evidence will confuse and/or mislead the jury, and that the review of such evidence would cause undue delay and be a waste of time.

First, any probative value of evidence concerning MF Global's transfer of segregated customer funds is substantially outweighed by the risk that the Plan Administrator will be

unfairly prejudiced.  Evidence is prejudicial under Rule 403 if it "involves some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d. Cir. 1995).  "The Court will exclude such evidence if it has 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d. Cir. 1995) (quoting Advisory Committee's Notes to Fed. R. Evid. 403).  Here, PwC intends to defend its own accounting malpractice regarding the RTMs and the DTA by submitting evidence that MF Global was responsible for the "notorious $1 billion shortfall" in segregated customer funds. PwC Pre-Trial Memo. at 2.  Because any evidence supporting that contention has no bearing on whether PwC's professional negligence caused MF Global harm or how much, PwC's transparent purpose in offering such evidence is to encourage the jury to resolve the case "not on the merits." *Hart v. RCI Hospitality Holdings, Inc*., 90 F. Supp. 3d 250, 260 (S.D.N.Y. 2015) (precluding evidence with "potential to induce, the jury to render rulings against the plaintiffs, potentially on all the issues to be tried, not on the merits, but out of anger, resentment, or indignation"); *see also Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 192 (S.D.N.Y. 2008) (excluding evidence where the "only apparent reason [for admission] would be to show the jury 'that defendants are bad people'").  It is PwC's improper goal to turn this case into a trial of allegations concerning the misuse of segregated customer funds so that the jury will conclude that PwC's professional errors were excusable in contrast to such alleged serious misconduct.

Second, any probative value of MF Global's transfer of segregated customer funds is substantially outweighed by the risk that the presentation of such evidence will confuse and/or mislead the jury.  Explaining to the jury the complex regulatory regime governing the use and

maintenance of segregated customer funds and MF Global's day-to-day accounting for such

funds is a complex undertaking.  The trial would be "diverted from central issues in the case to a

complicated inquiry into the nature, statutory and regulatory requirements" of the segregated

customer funds.  *Estate of Mali v. Federal Ins. Co.*, No. 06-cv-01475 (EBB), 2011 WL 2516246,

*2 (D. Conn. June 17, 2011); *see also FHFA v. Nomura Holding America*, No. 11-cv-6201, 2014

WL 7229458, *5 (S.D.N.Y. Dec. 18, 2014) (precluding evidence concerning automated

underwriting systems because they are "complicated, and evidence concerning their purpose,

their structure, and the reason behind [plaintiff's] decisions to include or not include certain

features would take substantial time").  Permitting PwC to offer evidence of MF Global's

transfer of segregated customer funds also is likely to mislead the jury to believe that such

evidence is relevant.  As shown above, it is not.

Third, any probative value of evidence of MF Global's transfer of segregated customer

funds is substantially outweighed by the likelihood that it would require a "mini-trial within the

larger trial, and a sideshow" on issues "hardly central to the issues in this case*." In re General

Motors LLC Ignition Switch Litigation*, No. 14-cv-8176, 2015 WL 8130449,*5 (S.D.N.Y. Dec. 3,

2015).[4]  This Court's decision in *Park W. Radiology* is directly on point.  In that case, the Court

precluded defendants from introducing evidence concerning allegedly unlawful or unethical

conduct unrelated to the merits of that case because the evidence "pose[d] the risk of turning the

---

[4] *See also Kelly v. Lopiccolo*, 5 Fed. Appx. 57, 60 (2d Cir. 2001) (affirming preclusion of evidence where "any small probative value was far outweighed by the danger of unfair prejudice, as well as the risk that such testimony would lead to 'mini-trials' peripheral to the issues at hand); *Fitzpatrick v. Amer. Intern. Group., Inc.*, No. Civ. 0142 (MHD), 2013 WL 5912236, *3 (S.D.N.Y. Nov. 2, 2013) (precluding evidence with "the potential to unduly expand the trial record on a variety of collateral issues"); *Bd. Of Trustees of the Aftra Ret. Fund v. JP Morgan Chase Bank*, 860 F. Supp. 2d 251, 258 (S.D.N.Y. 2012) (precluding evidence where "the confusion and wasted time resulting from requiring a mini-trial . . . would substantially outweigh any probative value").

trial into a 'multi-ringed sideshow of mini-trials on collateral issues pertaining to the conduct and relationships of third parties that may have only tangential bearing, if at all, to the issues and claims disputed in this case.'" *Park W. Radiology v. CareCore Nat. LLC*, 675 F. Supp. 2d 314, 325 (S.D.N.Y. 2009).  So too here, if PwC is permitted to offer evidence concerning MF Global's "notorious" shortfall in segregated customer funds, the Plan Administrator will have to offer rebuttal evidence concerning the nature of segregated customer funds in the context of a complex regulatory regime, the facts and circumstances surrounding MF Global's maintenance and transfer of such funds, and PwC's professional negligence in auditing MF Global's controls relating to those funds.  The result would be the "multi-ringed sideshow" that this Court sought to avoid in *Park W. Radiology* and can be avoided here by precluding evidence concerning segregated customer funds.

## **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that this Court enter an

order precluding PwC from presenting evidence or testimony concerning MF Global's transfer of

segregated customer funds.

Dated:  New York, New York
            January 20, 2017

Respectfully submitted,

KASOWITZ, BENSON, TORRES
   & FRIEDMAN LLP

By:  /s/     *Daniel J. Fetterman*
Daniel J. Fetterman (dfetterman@kasowitz.com)
Michael C. Harwood (mharwood@kasowitz.com)
Trevor J. Welch (twelch@kasowitz.com)
David J. Mark (dmark@kasowitz.com)
Olga Lucia Fuentes Skinner (ofuentes@kasowitz.com)
Christian T. Becker (cbecker@kasowitz.com)

1633 Broadway
New York, New York 10019
Tel:        (212) 506-1700
Fax:        (212) 506-1800

*Attorneys for Plaintiff*