UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------

MF GLOBAL HOLDINGS LTD., AS PLAN
ADMINISTRATOR,                                    Case No. 14-cv-2197 (VM)(JCF)

                               Plaintiff,

      - against -

PRICEWATERHOUSECOOPERS LLP,

                               Defendants.

-------------------------------------------------------

**PLAINTIFF'S NINTH MOTION *IN LIMINE* AND MEMORANDUM
OF LAW TO PRECLUDE CERTAIN EXPERT TESTIMONY**

KASOWITZ, BENSON, TORRES
   & FRIEDMAN LLP
1633 Broadway
New York, New York 10019-6799
Tel:      (212) 506-1700
Fax:      (212) 506-1800

*Attorneys For Plaintiff MF Global Holdings Ltd., As
Plan Administrator*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ...................................................................................................................... 3

I.      THE LEGAL STANDARD .......................................................................................... 3

II.     DR. CULP SHOULD BE PRECLUDED FROM TESTIFYING AT TRIAL
        CONCERNING HIS VOLATILITY OR THE DOWNGRADE OPINIONS ................... 3

   A.   Dr. Culp's Volatility Opinion Is Unreliable ................................................. 3

   B.   Dr. Culp's Downgrade Opinion Is Unreliable ................................................ 7

CONCLUSION .................................................................................................................. 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amorgianos v. National R.R. Passenger Corp.,*
    303 F.3d 256 (2d Cir. 2002)............................................................................3, 7, 8

*Celebrity Cruises, Inc. v. Essef Corp.,*
    434 F. Supp. 2d 169 (S.D.N.Y. 2006).....................................................................1

*Daubert v. Merrell Dow Pharms.,*
    509 U.S. 579 (1993).............................................................................................1, 2

*DeMarco v. Lehman Bros.,*
    222 F.R.D. 243 (S.D.N.Y. 2004) ..........................................................................6, 8

*E.E.O.C. v. Freeman,*
    778 F.3d 463 (4th Cir. 2015) .................................................................................5, 8

*Kumho Tire Co. v. Carmichael,*
    526 U.S. 137 (1999)..............................................................................................3, 4

*Lippe v. Bairnco Corp.,*
    99 F. App'x 274 (2d Cir. 2004) ..............................................................................4

*Nimely v. City of N.Y.,*
    414 F.3d 381 (2d Cir. 2005).....................................................................................7

*Raskin v. Wyatt Co.,*
    125 F.3d 55 (2d Cir. 1997).......................................................................................6

*Reed Constr. Data Inc. v. McGraw-Hill Cos.,*
    49 F. Supp. 3d 385 (S.D.N.Y. 2014).......................................................................5

**Other Authorities**

Federal Rule of Evidence 702..................................................................................1, 2

Federal Rule of Evidence 104(a) ...............................................................................1

MF Global Holdings Ltd. ("MF Global"), as Plan Administrator ("Plaintiff" or the "Plan Administrator"), respectfully submits this motion *in limine* pursuant to Rule 702 of the Federal Rules of Evidence for an order precluding Dr. Christopher Culp, Ph.D., a witness proffered by defendant PricewaterhouseCoopers LLP ("PwC"), from testifying to certain opinions at trial.

## PRELIMINARY STATEMENT

The Plan Administrator's expert witness, Dr. David Mordecai, will testify at trial that MF Global's Euro RTM-driven liquidity crisis was foreseeable to PwC.  In an attempt to undermine Dr. Mordecai's testimony, PwC intends to offer Dr. Culp to testify, among other things, that "the period from March 2011 through October 2011 was a period of unprecedented volatility and instability in European sovereign debt markets."  Montefusco Decl. Ex. 20 ¶ 99 (the "Volatility Opinion").[1]  In addition, PwC intends to offer Dr. Culp to testify that, "[b]ased on historical ratings downgrades, the probability as of March 2011 of a downgrade of MF Global's ratings to below investment grade would have been extremely low."  *Id*. ¶ 105 (the "Downgrade Opinion").  As shown below and in the Milev Declaration,[2] both opinions are premised on fundamentally flawed and unreliable methodologies and should, therefore, be precluded under Federal Rule of Evidence 702.

*First*, Dr. Culp's Volatility Opinion is based on a comparison of volatility in the artificially, and deceptively, selected period from March 2011 through October 2011 against that

---

[1] "Montefusco Declaration" or "Montefusco Decl." refers to the accompanying Declaration of Ryan Montefusco, dated January 20, 2017.

[2] "Milev Declaration" or "Milev Decl." refers to the accompanying declaration of Dr. Jordan Milev, dated January 20, 2011.  The Court may properly consider the Milev Declaration for purposes of ruling on this evidentiary motion. *See* Fed. R. Evid. 104(a) ("In [deciding any preliminary question about whether evidence is admissible," the court is not bound by evidence rules except those on privilege"); *see also Celebrity Cruises, Inc. v. Essef Corp.*, 434 F. Supp. 2d 169, 190 (S.D.N.Y. 2006) (in reviewing an affidavit in support of a *Daubert* motion, the court "need only consider whether [it] is sufficiently reliable to be persuasive in [the court's] evaluation of the expert reports that it criticizes").

of the preceding five years.  As a threshold matter, his opinion lacks methodological reliability because "a financial economist needs to have a reasonable and objective basis to select the particular periods for comparison."  Milev Decl. ¶ 13.  Dr. Culp offers no such reason.  Indeed, Dr. Culp appears to have "cherry-picked" the time-period to support a pre-ordained conclusion. That alone renders the Volatility Opinion "unreliable."  *Id*.  Moreover, Dr. Culp failed to perform, or at least disclose that he performed, "straightforward" statistical tests "required in the scientific community of financial economists to support pronouncements of the type found in the Culp Report."  *Id*.  ¶ 22.  Such straightforward statistical tests confirm that the Volatility Opinion is unreliable.  For example, there are "over 400 time periods . . . with similar volatility found just within the data that [Dr. Culp] uses to reach [his] incorrect conclusion."  *Id*. ¶ 3.  Dr. Culp's opinion thus "falls short of the analysis that a financial economist would conduct" before offering the Volatility Opinion.  *Id*.

*Second*, Dr. Culp's Downgrade Opinion is based on the purported historical frequency of a two-notch downgrade from Baa2 to Ba1.  Dr. Culp does not even offer a theory as to why such a highly specific downgrade is an appropriate barometer of the foreseeability of MF Global's downgrades in October 2011.  Rather, this testimony is based on nothing more than his subjective impression.  In any event, the reliability of such a method of gauging the foreseeability of MF Global's downgrades is flatly refuted by recent, real-world examples of two-notch (or far greater) downgrades, such as that of Lehman Brothers and AIG.

Accordingly, under Rule 702, the Court should preclude Dr. Culp from offering any testimony at trial relating to his Volatility Opinion or Downgrade Opinion.

## ARGUMENT

### I.    THE LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence, as construed by the Supreme Court in

*Daubert* and its progeny, governs the admissibility of expert testimony.  Fed. R. Evid. 702;

*Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993) ("*Daubert*").  Rule 702, provides:

> A witness who is qualified as an expert by knowledge, skill,
> experience, training, or education may testify in the form of an
> opinion or otherwise if: (a) the expert's scientific, technical, or
> other specialized knowledge will help the trier of fact to
> understand the evidence or to determine a fact in issue; (b) the
> testimony is based on sufficient facts or data; *(c) the testimony is
> the product of reliable principles and methods; and (d) the expert
> has reliably applied the principles and methods to the facts of the
> case.*

Fed. R. Evid. 702 (emphasis supplied).  The Court's role is to act as the gatekeeper.  "The

objective . . . is to ensure the *reliability* and *relevancy* of expert testimony."  *Kumho Tire Co. v.*

*Carmichael*, 526 U.S. 137, 152 (1999) (emphasis added).  In assessing the admissibility of expert

testimony, "the district court must focus on the *principles* and *methodology* employed by the

expert, without regard to the conclusions the expert has reached or the district court's belief as to

the correctness of those conclusions."  *Amorgianos v. National R.R. Passenger Corp.*, 303 F.3d

256, 266 (2d Cir. 2002) (emphasis supplied).

### II.    DR. CULP SHOULD BE PRECLUDED FROM TESTIFYING AT TRIAL CONCERNING HIS VOLATILITY OR DOWNGRADE OPINIONS

#### A.    Dr. Culp's Volatility Opinion Is Unreliable

In Section 5.2 of his report, Dr. Culp opines that "an analysis of historical yields in

European sovereign debt helps put the market conditions of late 2011 in proper context."  Culp

Report ¶ 94.  Further, Dr. Culp opines that "the magnitude (as well as the precise timing) of the

market disruptions in late 2011 would not [sic] have been extremely unlikely in early 2011."

3

Culp Report ¶ 99.  In support of this opinion, Dr. Culp claims that the changes in yields and the volatility of the European sovereign bonds "increased dramatically" in late 2011 in comparison to "the previous five years of historical behavior."  Culp Report ¶ 95.

Dr. Culp chooses two time periods from which he purports to observe changes in yield: one looks at yields from January 3, 2005 through February 28, 2011 ("Control Period" or "Period 1") and the other looks at yields during the eight-month period from March 1, 2011 through October 31, 2011 ("Treatment Period" or "Period 2").  Dr. Culp then compares the two periods and, based on that comparison alone, concludes that "the period from March 2011 through October 2011 was a period of unprecedented volatility and instability in European sovereign debt markets. . . [and] the market disruptions in late 2011 would not [sic] have been extremely unlikely in early 2011."  Culp Report ¶ 99.

Dr. Culp's Volatility Opinion should be precluded for the overarching reason, among other specific reasons, that he failed to apply "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire*, 526 U.S. at 152.  As a threshold matter, "a financial economist needs to have a reasonable and objective basis to select the particular periods for comparison."  Milev Decl. ¶ 12.  Dr. Culp fails to "present any discussion, rationale or explanation for choosing January 3, 2005 as the beginning of Period 1, the control period."  Milev Decl. ¶ 11.  For purposes of financial economics, Dr. Culp's failure to do so undermines any conclusion he could draw from the comparison because "a conclusion that a treatment group is different from a control group could have a proper basis only if the control group itself is appropriately selected."  *Id*.  Here, it was not, and for purposes of Rule 702, Dr. Culp's failure to do so renders his Volatility Opinion inadmissible.  *See Lippe v. Bairnco Corp*., 99 F. App'x 274, 278-279 (2d Cir. 2004) (affirming preclusion of testimony where expert failed

4

to "offer a meaningful explanation" of his methodology).

The reason for requiring an expert such as Dr. Culp to "have a reasonable and objective basis to select the particular periods for comparison" (Milev ¶ 12) is clear -- so that he "may not 'cherry-pick' the time-frame or data points so as to make [his] ultimate conclusion [appear] stronger." *Reed Constr. Data Inc. v. McGraw-Hill Cos*., 49 F. Supp. 3d 385, 400 (S.D.N.Y. 2014). That is precisely what Dr. Culp has done here: he has chosen a "control period" that spans the three years before and the three years after the 2008 financial crisis. Specifically, the Control Period "meshes together a period of increased market volatility from December 2007 to June 2009 stemming from a recession and financial crisis in the US economy with periods of lower volatility." Milev Decl. ¶ 14. Dr. Culp's treatment period thus combines both a period of low volatility that occurred before a "structural change" – the 2008-2009 financial crisis – with a period of higher volatility afterward. Grafting the period of relative stability onto a period of volatility following a structural change in the bond markets effectively "smooths" the data for the period as a whole, misleadingly reducing the appearance of volatility in the Control Period in comparison to the Treatment Period.

In striking contrast, if Dr. Culp had elected to make the Control Period and the Treatment Period the "same length (175 days)," there are "over 400 time periods . . . with similar volatility found just within the data that [Dr. Culp] uses to reach [his] incorrect conclusion." *Id*. ¶ 3. The absence of "some passably scientific analysis … undergird[ing] the selection of the frame of reference" renders Dr. Culp's Volatility Opinion unreliable. *Reed Constr. Data Inc*., 49 F. Supp. 3d at 400; *see also E.E.O.C. v. Freeman*, 778 F.3d 463, 469-70 (4th Cir. 2015) ("courts have consistently excluded expert testimony that 'cherry-picks' relevant data") (collecting cases).

Furthermore, when Dr. Culp's methodology is subjected to the kind of sensitivity

analysis that is standard practice among econometricians, the results further demonstrate that the conclusions Dr. Culp reaches are not supported by a systematic approach for selecting alternative control periods.  Milev Decl. ¶¶ 19-32.  Specifically, although the Culp Report bases its conclusion on the mean yield changes and the volatility of yield changes between the Control Period and the Treatment Period, Dr. Culp offers no indication that he has performed any of the commonly accepted statistical tests – and makes no mention of having performed required statistical analyses – to determine whether his conclusion is supported by the data.  Milev Decl. ¶¶ 21-24.[3]  For example, a sensitivity analysis of the control period demonstrates that Dr. Culp's Volatility Opinion is "unsupported by the vast majority of alternative control periods that could have been selected."  Milev Decl. ¶ 30.[4]  This failure "falls short of the analysis that a financial economist would conduct to make these statements."  Milev Decl. ¶ 21.  *See Raskin v. Wyatt Co*., 125 F.3d 55, 67 (2d Cir. 1997) (affirming exclusion of expert opinion for lack of probative value where one of its "central conclusions . . . [was] premised on an elementary statistical error").

Even assuming for the sake of argument that Dr. Culp had an objective reason for selecting his comparison periods, Dr. Culp "provides no statistical basis"[5] that can be analyzed or that supports his unstated assumption that a comparison between average yields and volatilities from two periods is a scientifically sound method for measuring foreseeability.  Milev Decl. ¶ 33.  He merely "presents the average change in yields and volatilities from two periods and

---

[3] Even if Dr. Culp had performed a statistical test on the yield change data, he would have needed to make adjustments for changes in volatility within the control period.  Milev Decl. ¶ 25.

[4] Dr. Culp compared his Period 1 – a period of 1,606 days – to his Period 2 – a 175 day period in order to arrive at the Historical Yields Opinion.  However, when Period 2 is compared to various alternative 175-day periods from within the Period 2 time frame (Milev Decl. ¶¶ 26-30), the results show that "the vast majority of 175-day control periods. . . exhibit similar one-day change in yields and volatility, as observed during the treatment Period 2."  Milev Decl. ¶ 31.

[5] The Culp Report does not specify any "statistical analysis, calculation or test" performed that supports his conclusion.  Milev Decl. ¶ 34.

claims that they are different."  Milev Decl. ¶ 34.  *Compare DeMarco v. Lehman Bros.*, 222

F.R.D. 243, 249 (S.D.N.Y. 2004) (precluding expert testimony where the "choice of a midpoint

between his two flawed measures . . . appears to be based on no methodology whatsoever").

A proper analysis of foreseeability "inherently involves a dynamic analysis of

foreseeability of yield changes as events unfold" and "would need to contain a framework for

how current yield changes alter expectations of future yield changes."  Milev Decl. ¶ 39-40.

That is because the static control period used by Dr. Culp "does not allow for the forecast of the

yield changes to update after March 1, 2011 as further information becomes available."  Milev

Decl. ¶ 41.  Such information is necessary to any reliable methodology that seeks to observe

whether future yield changes "that are observed fall within the foreseeable spectrum of

likelihood."  Milev Decl. ¶ 40.  Without it, Dr. Culp's methodology is not "a proper basis for an

opinion on foreseeability."  Milev Decl. ¶ 41.

At bottom, when purporting to reach conclusions based on a technical, statistical analysis,

there must be "a sufficiently rigorous analytical connection between [an expert's] methodology

and the expert's conclusions."  *Nimely v. City of N.Y.*, 414 F.3d 381, 396 (2d Cir. 2005).  Here, Dr.

Culp has proffered no such analytical connection and none is apparent.  Where, as here, the

expert's data or methodology "are simply inadequate to support the conclusions reached, [then]

*Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony."  *Amorgianos*,

303 F.3d at 267.  Accordingly, the Court should preclude Dr. Culp from testifying at trial

concerning his improperly crafted and unreliable Volatility Opinion.

### B.      Dr. Culp's Downgrade Opinion Is Unreliable

In Section 5.3 of his report, Dr. Culp opines that "[b]ased on historical ratings

downgrades, the probability as of March 2011 of a downgrade of MF Global's ratings to below

investment-grade would have been extremely low."  Culp Report ¶ 105.  The purported basis for

this opinion is that, "between 1920 and 2010, Moody's Investors Service *never once* downgraded a financial or non-financial corporate issuer from Baa2 . . .to Ba1 . . . over the course of a year." *Id*. (emphasis in original) (citing Moody's Investor Service, "Corporate Default and Recovery Rates 1920-2010," *Special Comment* (February 28, 2011) ("Moody's Document") at 25).[6]

As Dr. Mordecai explained in his rebuttal report, Dr. Culp's Downgrade Opinion is patently unreliable.  Montefusco Decl. Ex. 19 ¶ 36-38 (Rebuttal Report of David K.A. Mordecai, Ph.D., dated November 20, 2015 ["Mordecai Rebuttal Report"]).  "[E]ven a cursory review of generally recognized, real world examples from recent history . . . reveals the fallacy of Dr. Culp's comparison." *Id*. ¶ 36 (Rebuttal Report of David K.A. Mordecai, Ph.D., ["Mordecai Rebuttal Report"]).  For example, in September 2008, Moody's downgraded Lehman Brothers ten notches in five days. *Id*. ¶ 36(a).  "AIG was downgraded four notches over a period of less than six months." *Id*. ¶ 36(b).  And El Paso was downgraded "eight notches in approximately five months." *Id*. ¶ 36(c).  Dr. Culp's assertion is thus "refuted by historically recent examples of [] two-notch (or far greater) downgrades." *Id*. ¶ 36.  Assuming that Dr. Culp intends to suggest that the supposed historical frequency of a "highly specific two-notch downgrade" *(id*. ¶ 36) from Baa2 to Ba1 is somehow an appropriate barometer of the foreseeability of MF Global's downgrades in October 2011, Dr. Culp makes no attempt to explain why.  It is a "theory in search of facts to support it." *Freeman*, 778 F.3d at 468.  Where, as here, an expert opinion "appears to be based on no methodology whatsoever" (*DeMarco*, 222 F.R.D. at 249), the Court should preclude it.

---

[6] Although Dr. Culp cites to "25" of the Moody's Document, neither page 25 nor Exhibit 25 (it is not clear to which he refers) contains the information Dr. Culp claims it contains.  Mordecai Rebuttal Report ¶ 37.  Nor does he provide a correction in his so-called "corrected" report.  *See* Montefusco Decl., Ex. 20.

## **CONCLUSION**

For all the foregoing reasons, MF Global respectfully requests that its motion be granted.


Dated:  New York, New York
       January 20, 2017

                                      Respectfully submitted,

                                      KASOWITZ, BENSON, TORRES
                                        & FRIEDMAN LLP

                                    By: /s/   Daniel J. Fetterman
                                    Daniel J. Fetterman (dfetterman@kasowitz.com)
                                    Michael C. Harwood (mharwood@kasowitz.com)
                                    Trevor J. Welch (twelch@kasowitz.com)
                                    David J. Mark (dmark@kasowitz.com)
                                    Olga Lucia Fuentes Skinner (ofuentes@kasowitz.com)
                                    Christian T. Becker (cbecker@kasowitz.com)

                                    1633 Broadway
                                    New York, New York 10019
                                    Tel:       (212) 506-1700
                                    Fax:      (212) 506-1800

                                    *Attorneys for Plaintiff*