UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MF GLOBAL HOLDINGS LTD., AS PLAN ADMINISTRATOR,<br><br>          Plaintiff,<br><br>  -against-<br><br>PRICEWATERHOUSECOOPERS LLP,<br><br>          Defendant. | Case No. 14-cv-2197 (VM) |

# PRICEWATERHOUSECOOPERS LLP'S MEMORANDUM IN SUPPORT OF ITS MOTION *IN LIMINE* #4 TO EXCLUDE, IN PART, THE OPINION OF LYNN TURNER

Dated: January 20, 2017
   New York, New York

KING & SPALDING LLP

James P. Cusick
James J. Capra, Jr.
David M. Fine
Meredith Moss
J. Emmett Murphy
1185 Avenue of the Americas
New York, New York 10036
Tel: (212) 556-2100
Fax: (212) 556-2222

*Attorneys for Defendant*
*PricewaterhouseCoopers LLP*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1
ARGUMENT ....................................................................................................................... 3
    I.  Expert Testimony Must Be Qualified and Reliable ............................................. 3
    II. Turner Is Not Qualified To Provide a Professional Judgment on the Definition of GAAP Principles in the Context of RTM Accounting ........................................ 4
        A.  RTM Accounting Is a Highly Specialized Subfield of GAAP .................................... 4
        B.  Turner Lacks the Necessary Expertise To Opine on RTM Accounting ....................... 7
CONCLUSION .................................................................................................................. 11

**TABLE OF AUTHORITIES**

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002) ................................................................................................. 3

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ...................................................................................................... 3, 4

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) ........................................................................................................... 4

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) .................................................................................................. 3, 4, 5

*Lynch v. Trek Bicycle Corp.*,
   374 F. App'x 204 (2d Cir. 2010) ....................................................................................... 9

*MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP*,
   No. 14-CV-2197, 2016 WL 4197062 (S.D.N.Y. Aug. 5, 2016) ....................................... 6

*Nimely v. City of New York*,
   414 F.3d 381 (2d Cir. 2005) ............................................................................................. 4

*Querub v. Hong Kong*,
   649 F. App'x 55 (2d Cir. 2016) .................................................................................... 6-7

*R.F.M.A.S., Inc. v. So*,
   748 F. Supp. 2d 244 (S.D.N.Y. 2010) ......................................................................... 3-4, 9

*SEC v. Tourre*,
   950 F. Supp. 2d 666 (S.D.N.Y. 2013) .......................................................................... 9, 10

*Thor Power Tool Co. v. Comm'r of Internal Revenue*,
   439 U.S. 522 (1979) ........................................................................................................ 4-5

*United States v. Tin Yat Chin*,
   371 F.3d 31 (2d Cir. 2004) ................................................................................................ 3

*Vale v. United States*,
   No. 15-3265, 2016 WL 7435909 (2d Cir. Dec. 21, 2016) ................................................ 3

**Other Authorities**

Federal Rule of Evidence 702 ...................................................................................... 1, 2, 3

Defendant PricewaterhouseCoopers LLP ("PwC") submits this memorandum in support of its motion to exclude the portion of the opinion of Lynn Turner put forward by Plaintiff MF Global Holdings Ltd., as Plan Administrator, contending that MF Global's financial statements did not comply with Generally Accepted Accounting Principles ("GAAP") in the accounting for repurchase to maturity ("RTM") transactions involving European sovereign bonds. Mr. Turner lacks the education, experience, knowledge, training, and skill necessary to be qualified as an expert under Federal Rule of Evidence 702 to provide an opinion about whether MF Global's accounting for RTM transactions complied with GAAP.

## INTRODUCTION

Plaintiff claims that MF Global wrongly concluded it could account for its Euro RTM trades as sales under GAAP and that PwC violated generally accepted auditing standards ("GAAS") in its auditing of MF Global's accounting conclusion. In support of that claim, Plaintiff has submitted the expert report of Lynn Turner, who likewise opines (a) that MF Global incorrectly concluded that sale accounting should apply to those RTM trades because MF Global was able to resell the securities "before maturity" (his "RTM Accounting Opinion"), Turner Report ¶¶ 177, 182; and (b) that PwC failed to comply with GAAS rules and procedures for auditing and reviewing the RTM transactions (the "RTM Auditing Opinion"), *id.* ¶¶ 260–66, 283–84.[1]

The RTM Accounting Opinion, however, rests entirely on Turner's *ipse dixit* interpretation and application of the phrase "before maturity" in the relevant accounting guidance provided under GAAP. But RTM accounting is a specialized and complex area of accounting.

---

[1] Turner's report was previously submitted to the Court by Plaintiff under seal as part of its opposition to PwC's summary judgment motion on March 11, 2016. PwC stands ready to file additional copies of the report if doing so would assist the Court. Turner's expert CV was submitted as part of Exhibit E to the joint pretrial order.

1

Turner lacks the education, experience, knowledge, or training that would permit him to offer a definitive interpretation of what that GAAP term means in RTM transactions. To be clear, PwC does not challenge here Turner's overall credentials as an accountant and auditor. Rather, PwC argues simply that he is not qualified to offer the RTM Accounting Opinion on the accounting treatment of these RTM trades because he has no education, practical experience, or training about these types of transactions or their proper accounting under GAAP.

Plaintiff will no doubt respond to this motion with indignation, asserting that PwC cannot possibly argue that a former Chief Accountant at the Securities & Exchange Commission is unqualified to render an opinion about an accounting issue. PwC's response is quite simple and practical: a doctor who has practiced only as an internist is not qualified to conduct brain surgery, even if she was previously the Chief of Medicine at Columbia-Presbyterian. She does not have the specialized requisites necessary for that particular operation. The same is true here: Turner's general qualifications establish no expertise to opine on this particular topic.

Turner's opinion regarding sale accounting for RTMs under GAAP stands in contrast to his opinions regarding whether PwC complied with GAAS in auditing MF Global's financial statements. PwC does *not* dispute that Turner has the requisite qualifications under Rule 702 to offer his RTM *Auditing* Opinion, which is an entirely separate opinion on whether PwC complied with GAAS auditing standards in its audit of MF Global. Similarly, PwC does not challenge Turner's qualifications to opine on the deferred tax asset ("DTA") issue at all. PwC moves narrowly to exclude only the RTM *Accounting* Opinion based on Turner's lack of qualifications and analysis with regard to that specialized inquiry. For the reasons discussed below, this Court should preclude Turner from offering any opinion on the GAAP treatment of the RTM transactions.

**ARGUMENT**

**I.      Expert Testimony Must Be Qualified and Reliable.**

Rule 702 requires that an expert be qualified to testify to his conclusions based on his "superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *Vale v. United States*, No. 15-3265, 2016 WL 7435909, at *1 (2d Cir. Dec. 21, 2016) (quoting *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004)). An expert can be qualified under Rule 702 even if his "knowledge" is specialized, but nonscientific, expertise. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148–49 (1999). That knowledge, however, must be based on more than "subjective belief or unsupported speculation." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993).

District courts are the "gatekeepers" for expert testimony, protecting the jury from prejudicial, unsupported opinions that cannot be effectively policed even through vigorous cross-examination. *See id.* at 596–97. Where the proposed testimony is based on nonscientific judgments—such as the interpretation of a term, "before maturity," that even GAAP expressly refuses to define[2]—and that opinion cannot be probed via data, testing, peer review, error rates, and other mechanisms integral to the scientific method, *see id.* at 593–94, it is the responsibility of the trial judge to "determine whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline" to permit the opinion to be presented to the jury, *Kumho*, 526 U.S. at 149 (internal quotation marks and brackets omitted).

Although Rule 702 is a liberal standard for admitting expert evidence, the court cannot allow an expert to testify to conclusions that he connects to the data based only on his assertion. *See Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266–67 (2d Cir. 2002). The trial

---

[2] "This Subtopic does not specifically define the term *before maturity*." ASC 860-10-55-51.

3

judge must ensure there is "a reliable way 'to draw a conclusion regarding the particular matter to which the expert testimony was directly relevant,'" *R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 248 (S.D.N.Y. 2010) (quoting *Kumho*, 526 U.S. at 154), such that there is a "sufficiently rigorous analytical connection between th[e] methodology and the expert's conclusions," *Nimely v. City of N.Y.*, 414 F.3d 381, 396 (2d Cir. 2005). "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Here, however, Turner's RTM Accounting Opinion is premised on his interpretation of the term "before maturity," which rests on no research, experience, or relevant industry knowledge. Turner opines that MF Global erred under GAAP in using sale accounting for the RTM trades, despite having no expertise in RTM accounting and by doing nothing more than interpreting the relevant GAAP standard based on his say-so. Because Turner does not support the RTM Accounting Opinion with either sufficient professional knowledge or reliable methodology, this Court should exclude that Opinion.

## II. Turner Is Not Qualified To Provide a Professional Judgment on the Definition of GAAP Principles in the Context of RTM Accounting.

Turner is not qualified to opine on the GAAP treatment of RTM transactions. RTM accounting requires industry knowledge and experience to interpret and apply GAAP to RTM transactions. § II.A, *infra*. Turner lacks any relevant expertise in RTM accounting that would qualify him to define a GAAP term like "before maturity" or to testify about industry practice as to when and how RTM transactions are treated as sales. § II.B, *infra*.

### A. RTM Accounting Is a Highly Specialized Subfield of GAAP.

Interpreting and applying GAAP requires careful judgment, not mechanical recitation. The Supreme Court has explained: "Accountants long have recognized that [GAAP is] far from

being a canonical set of rules that will ensure identical accounting treatment of identical transactions. [GAAP,] rather, tolerate[s] a range of 'reasonable' treatments, leaving the choice among alternatives to management." *Thor Power Tool Co. v. Comm'r of Internal Revenue*, 439 U.S. 522, 544 (1979) (footnote omitted). Crucial to a reasonable application of GAAP to a particular kind of transaction, then, is the "knowledge and experience," *Kumho*, 526 U.S. at 149, that an accountant uses to determine the tolerable range of reasonable treatments. *See* Turner Report ¶ 107 (an auditor must "understand[] the audited business *and significant transactions* when auditing financial statements" (emphasis added)).

As this Court is well aware, RTM accounting is both nuanced and dynamic. The applicable GAAP standard here is Statement of Financial Accounting Standard No. 140 ("FAS 140"), which was codified as the Financial Accounting Standards Board ("FASB") Accounting Standards Codification Topic 860 ("ASC 860"). FAS 140 covers accounting for transfers and servicing agreements. As relevant here, it includes specific prescriptions for when repurchase agreements should be recorded as sales, *i.e.*, so long as the transferor does not regain "effective control" over the security sold "before [its] maturity." ASC 860-10-40-5; *see also* ASC 860-10-55-51 ("A transferor's agreement to repurchase a transferred financial asset would not be considered a repurchase or redemption before maturity if, because of the timing of the redemption, the transferor would be unable to sell the financial asset again before its maturity (that is, the period until maturity is so short that the typical settlement is a net cash payment).").

But FAS 140 merely sets out the basic framework. It expressly "does not specifically define the term *before maturity*," ASC 860-10-55-51, leaving its application to industry experience. *See* Lucas Report ¶¶ 20–24 (describing industry interpretations of "before maturity"); Johnigan Report ¶¶ 31–38 (describing FASB notice and comment exchange with

5

industry on meaning of "maturity").[3]  In opining separately on MF Global's treatment of the DTA, Turner *concedes* that industry experience is crucial to interpreting and applying undefined GAAP terms.  *See* Turner Report ¶ 299 ("Although GAAP *does not define* the number of years over which to calculate cumulative losses [for DTA purposes], *based on my experience* an accounting industry rule of thumb is to consider three years . . . ." (emphasis added)).

RTM transactions, in which sale accounting is mandated by GAAP, involve the exchange of securities and cash such that the repurchase occurs at or near the same time the securities mature.  Given the actual, real-world complexities of settling trades and maturation of securities in these markets, MF Global's accounting team not only reviewed FAS 140 and the relevant literature, but also consulted with MF Global's repo trader in London, reviewed the operational requirements of the London Clearing House for repurchasing collateral, assessed the "typical" settlement period in European markets, and obtained opinions from outside lawyers.  *See MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP*, No. 14-CV-2197 (VM), 2016 WL 4197062, at *3–6 (S.D.N.Y. Aug. 5, 2016).

In short, RTM accounting is complex and highly specialized, grounded in the real-word execution of RTM trades, and not the mere recitation and conclusory application of undefined terms like "before maturity" in GAAP.  Just as an internist—even one of world-renown—is not qualified to perform brain surgery, qualification as an accountant generally or in other subfields of accounting is not sufficient to qualify one as an expert in RTM accounting.  *See Querub v. Hong Kong*, 649 F. App'x 55, 57 (2d Cir. 2016) (affirming district court's exclusion of

---

[3] Lucas' and Johnigan's reports were previously submitted to the Court by Plaintiff under seal as Exhibits 129 and 128, respectively, to the Declaration of Frank S. DiCarlo, submitted as part of Plainitff's opposition to PwC's summary judgment motion on March 11, 2016.  PwC stands ready to file additional copies of the reports if doing so would assist the Court.

6

accounting expert who "lack[ed] experience and expertise in conducting or reviewing audits done according to PCAOB standards").

    B.  <u>Turner Lacks the Necessary Expertise to Opine on RTM Accounting.</u>

  Despite expressly acknowledging the necessity of industry experience in opining on GAAP compliance for MF Global's treatment of DTA, when it comes to his RTM Accounting Opinion, Turner never once mentions any industry experience that he could bring to bear on interpreting and applying the undefined term "before maturity."  *See* Turner Report ¶ 172. Turner does not identify any familiarity with or expertise in RTM accounting other than his work in this case for MF Global.  Rather, he cannot recall any prior RTM accounting experience. Declaration of J. Emmett Murphy ("Dec") Ex. 1 (Turner Dep.) at 14:7–18, 17:3–9, 17:21–25, 18:7–12.  He lists no RTM accounting experience on his resume.  Turner Report Ex. 1.  And he nowhere mentions anything about RTMs in his qualifications or experience.  *Id.* ¶¶ 5–12; *see also* Dec. Ex. 1 (Turner Dep.) at 7:23–8:2.

  As far as Turner can recall, nothing in his employment history reflects experience with RTM accounting—not his time in private practice, at the SEC, or in academia.  Dec. Ex. 1 (Turner Dep.) at 14:7–18, 15:2–7, 18:7–12, 20:4–20, 22:3–8, 24:12–18, 25:17–26:16, 29:8–13. He cannot recall receiving any formal or informal education or training on RTM accounting while he was in school or during any employment position.  *Id.* at 9:9–14, 9:21–10:2, 15:8–13, 17:10–15.  Nor can he recall writing any articles on the accounting for RTMs—indeed, Exhibit 2 of his report confirms that none of his publications are about RTM trades.  *Id.* at 48:16–23; Turner Report Ex. 2.

  While Turner emphasizes his three years as the SEC Chief Accountant, that position does not qualify him to interpret GAAP standards related to RTM accounting, including the meaning of "before maturity."  That test first appeared in Statement of Financial Accounting Standard No.

7

125 ("FAS 125"), which was issued before Turner became Chief Accountant. Turner acknowledges he had no role in drafting, and has no recollection of commenting on, any of the relevant language in ASC 860-10-55-51 (including any of the relevant prior language in FAS 125, FAS 140, and their Q&As). *See* Dec. Ex. 1 (Turner Dep.) at 31:13–32:6, 33:9–11, 35:22–24, 36:12–14, 41:15–18, 42:17–19, 46:8–12. While Turner's time at the SEC gives him no basis to testify about the GAAP treatment of RTMs or the meaning of "before maturity," his position in the government will no doubt be emphasized to the jury by Plaintiff as evidence of sparkling qualification and substantial credibility. That reason alone makes it vital for this Court to discharge its role as gatekeeper to keep improper expert opinion away from the jury.

Finally, Turner has no relevant work experience to compensate for his lack of RTM accounting education and expertise. He never signed an audit opinion on the financial statements of any broker dealer, futures commission merchant, or investment bank. *Id.* at 13:8–22. He never applied ASC 860, FAS 140, or FAS 125 while he was an auditor. *Id.* at 29:25–30:6; 36:18–25; 47:19–25. All Turner can point to is his minimal experience with traditional repurchase agreements ("repos"), but even that experience, sparse as it is, is irrelevant to this case. Turner concedes that the accounting treatment for traditional repos is completely different from RTM transactions. *See* Turner Report ¶¶ 53, 80. While traditional repos are accounted for as secured financings, RTMs are far more complex, requiring an analysis of the accounting literature in determining whether they qualify as secured financings or sales. *See id.* ¶¶ 53–54, 80.

Not counting his paid work for Plaintiff on this case, Turner cannot identify one single accounting analysis he has ever performed on RTMs. *See* Dec. Ex. 1 (Turner Dep.) at 15:2–7, 16:18–17:2, 22:3–8, 24:12–18, 25:25–27:3, 29:8–13, 48:9–15. As Turner concedes, this is the

first time he has provided any opinion on the accounting for RTM transactions. *Id.* at 48:9–15. Given the unique treatment accorded to RTMs, Turner's general accounting knowledge does not qualify him as an expert on RTM accounting.

Precedent makes clear that, under these circumstances, Turner is not qualified to offer his RTM Accounting Opinion. *See, e.g.*, *Lynch v. Trek Bicycle Corp.*, 374 F. App'x 204, 206–07 (2d Cir. 2010) (aircraft carbon composite materials expert not qualified to testify about bicycle carbon composite engineering); *R.F.M.A.S.*, 748 F. Supp. 2d at 269 (general jewelry industry expert not qualified to opine on Neiman Marcus's specific jewelry buying practices). To take just one example in detail, in *SEC v. Tourre*, Judge Forrest excluded expert testimony on the specific topic of synthetic collateralized debt obligations (CDOs) on the ground that that the expert, Dr. Mukesh Bajaj, was not sufficiently versed in CDO practice to offer an expert opinion on the marketing and structuring of the CDO at issue in that case. 950 F. Supp. 2d 666, 677–78 (S.D.N.Y. 2013). Dr. Bajaj's qualifications included a Ph.D. in Business Administration from the University of California at Berkeley, time as a professor of business at the University of Southern California, and lecturing at Berkeley's Haas School of Business, "where he teaches graduate level courses in corporate finance, investments[,] and financial engineering." *Id.* at 676. But the court noted that although Bajaj was an expert in "the general field of 'financial economics,'" he lacked relevant expertise in the specific "area of CDOs generally, synthetic CDOs, or residential mortgage-backed securities." *Id.* Accordingly, the court excluded Bajaj's CDO opinion, noting that he "ha[d] no experience in the CDO industry apart from acting as an expert witness," "ha[d] no education, expertise, or experience in this area upon which to make such a statement," and "lack[ed] experience with the structuring or marketing of CDOs." *Id.* at 677–78. The court also emphasized that Bajaj's "expertise in the general area of structured

9

finance" was insufficient, as his expertise covered "so broad a category as to become meaningless when particularized here to synthetic CDOs, a very specific type of security." *Id.* at 678.

The same reasoning applies to Turner and his RTM Accounting Opinion. Although Turner has expertise in accounting, general expertise does not qualify him to opine on the specific RTM trades at issue here. That said, PwC wants to be clear that it is not seeking to exclude Turner *in toto* from this case. By this motion, PwC does not challenge Turner's qualifications to give his RTM Auditing Opinion. *See* Turner Report ¶ 14.3. Similarly, PwC does not challenge Turner's qualifications to opine on the accounting and auditing treatment of MF Global's DTA. *See id.* ¶ 14.4–6.

Indeed, Turner's qualifications to offer his RTM Auditing Opinion demonstrate by comparison his lack of qualifications to offer his RTM Accounting Opinion. Turner's report sets forth his relevant experience in auditing. *Id.* ¶¶ 5–12, Exs. 1–3. His report describes the specific evidence that supports his opinions. *Id.* ¶¶ 227–59. He analyzes that evidence using specific auditing standards to reach conclusions about where he believes PwC did not meet GAAS standards. *Id.* ¶¶ 260–66; *see also id.* ¶¶ 267–87. The RTM Auditing Opinion, however, stands in sharp contrast to the RTM Accounting Opinion. If Turner had the same experience with the application of "before maturity" under GAAP that he has with GAAS auditing standards, PwC would not have filed this motion. Because Turner is not qualified to opine on whether the repurchase agreements terminated "before maturity" of the related sovereign bond, this Court must act as gatekeeper and keep this unqualified, *ipse dixit* opinion from the jury.

10

**CONCLUSION**

PwC seeks an order excluding the portion of the opinion of Lynn Turner contending that MF Global's financial statements did not comply with GAAP in the accounting for RTM transactions involving European sovereign bonds.

Dated: January 20, 2017
New York, New York

Respectfully submitted,

KING & SPALDING LLP

By: /s/ James P. Cusick
James P. Cusick
James J. Capra, Jr.
David M. Fine
Meredith Moss
J. Emmett Murphy
1185 Avenue of the Americas
New York, New York 10036
Tel: (212) 556-2100

*Attorneys for Defendant PricewaterhouseCoopers LLP*