UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------

MF GLOBAL HOLDINGS LTD., AS PLAN
ADMINISTRATOR,

                    Plaintiff,

    - against -

PRICEWATERHOUSECOOPERS LLP,

                    Defendant.

-------------------------------------------------------

Case No. 14-cv-2197 (VM)(JCF)


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* #2 TO (1) PRECLUDE PLAINTIFF FROM PLAYING VIDEO TESTIMONY FOR WITNESSES WHO WILL TESTIFY IN PERSON; AND (2) PERMIT PWC TO CONDUCT FULL EXAMINATIONS OF <u>WITNESSES WHO TESTIFY DURING PLAINTIFF'S CASE-IN-CHIEF</u>**


KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP

1633 Broadway
New York, New York 10019-6799
Tel: (212) 506-1700
Fax: (212) 506-1800

*Attorneys For Plaintiff MF Global Holdings Ltd., As Plan Administrator*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ......................................................................................................... 1

ARGUMENT .............................................................................................................. 4

I.      THE PLAN ADMINISTRATOR SHOULD BE ALLOWED TO USE DEPOSITION
        VIDEO FOR PWC'S MANAGING AGENT WITNESSES FOR ANY PURPOSE ........ 4

II.     ALL CROSS EXAMINATIONS SHOULD BE LIMITED TO THE TOPIC OF
        DIRECT TESTIMONY, ESPECIALLY FOR ANY WITNESSES WHO ARE
        WILLING AND ABLE TO APPEAR AGAIN ON ANOTHER TRIAL DATE. ........... 10

CONCLUSION............................................................................................................ 13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Banks v. Yokemick,*
   144 F. Supp. 2d 272 (S.D.N.Y. 2001)....................................................................5

*Beck Chevrolet Co., Inc. v. General Motors LLC,*
   787 F.3d 663 (2d Cir. 2015)..............................................................................10

*Buchwald v. Renco Group, Inc.,* No. 13-cv-7948,
   2014 WL 4207113 (S.D.N.Y. Aug 25, 2014)..............................................11, 12

*Capitol Records v. Mp3tunes, LLC,*
   No. 07 Civ. 9931, 2014 WL 503959 (S.D.N.Y. Jan. 29, 2014)...........................4

*Carpenter v. Forest Meadows Owners Ass'n,* No. 1:09-cv-019818-JLT,
   2011 U.S. Dist. LEXIS 82295 (E.D. Cal. July 26, 2011) ...................................10

*DiRienzo v. Philip Servs. Corp.*
   294 F.3d 21 (2d Cir. 2002).................................................................................6

*Fey v. Walston & Co.,*
   493 F.2d 1036 (7th Cir. 1974) ...........................................................................6

*Gonzalez Prod. Sys. v. Martinrea Int'l Inc.,*
   310 F.R.D. 341 (E.D. Mich. Sep. 15, 2015) .......................................................6

*Hart v. RCI Hospitality Holdings, Inc.,*
   90 F. Supp. 3d 250 (S.D.N.Y. 2015)............................................................11, 12

*King & King Enters. v. Champlin Petroleum Co.,*
   657 F.2d 1147 (10th Cir. 1981) ..........................................................................4

*Lidle v. Cirrus Design Corp.,*
   505 F. App'x 72 (2d Cir. 2012) .........................................................................10

*Napier v. Bossard,*
   102 F.2d 467 (2d Cir. 1939)................................................................................5

*Oracle USA, Inc. v. Rimini Street, Inc.,* No. 2:10-cv-00106,
   2015 WL 5165374 (D. Nev. Sep. 3, 2015) ........................................................12

*Pappas v. Middle Earth Condominium Ass'n,*
   963 F.2d 534 (2d Cir. 1992)................................................................................9

*Redd v. New York State Div. of Parole*,
   923 F. Supp. 2d 393 (E.D.N.Y. 2013) ...................................................................7

*Stanphill v. Health Care Serv. Corp.*, No. Civ-06-9850BA,
   2008 U.S. Dist. LEXIS 64255 (W.D. Okla. Aug. 20, 2008) ..................................10

*Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp.*,
   421 F. Supp. 2d 741 (S.D.N.Y. 2006)...................................................................6

*Surles v. Air France*, No. 00-cv-5004,
   2004 U.S. Dist. LEXIS 3710 (S.D.N.Y. Feb. 23, 2004) .......................................7

*U.S. v. Caracappa*,
   614 F.3d 30 (2d Cir. 2010)..................................................................................12

*U.S. v. Koskerides*,
   877 F.2d 1129 (2d Cir. 1989)..............................................................................11

*Williams v. Jackson*, No. 2:07-cv-00110,
   2011 WL 867528 (E.D. Ark., Mar. 14, 2011) .......................................................6

*Zimmerman v. Safeway Stores, Inc.*,
   410 F.2d 1041 (D.C. Cir. 1969) ...........................................................................6

**Rules**

Federal Rule of Civil Procedure 32(a)(1) ...................................................................3

Federal Rule of Civil Procedure 32(a)(2) ..............................................................9, 10

Federal Rule of Civil Procedure 32(a)(3) ....................................................3, 5, 6, 8 9

Federal Rule of Civil Procedure 611(b)...............................................................10, 13

Federal Rule of Evidence 611(a) ...........................................................................11

Federal Rule of Evidence 801(d)(2) ....................................................................9, 10

MF Global Holdings Ltd. ("MF Global"), as Plan Administrator ("Plaintiff" or the "Plan Administrator"), respectfully submits this memorandum of law in opposition to Defendant's Motion *in limine* #2 to (1) preclude plaintiff from playing video testimony for witnesses who will testify in person; and (2) permit PwC to conduct full examinations of witnesses who testify during plaintiff's case-in-chief.

## PRELIMINARY STATEMENT

PwC's motion contravenes the clearly applicable and consistently enforced default federal rules that a) video of a party deposition can be played for "any purpose" and b) "[c]ross-examination should not go beyond the subject matter of the direct examination."  PwC seeks to prevent the jury from seeing video evidence that will shed light on the demeanor and credibility of PwC's witnesses based on their evasiveness and claimed complete lack of memory of key events at their depositions.  It is not enough to show snippets as impeachment when necessary, where designated portions will show that their often selective memories closer in time to the events were more convenient than real.  PwC also seeks to hijack plaintiff's order of proof and strategic trial presentation by expanding its cross examinations of witnesses to subjects entirely untethered from the topics of direct testimony in the guise of judicial economy.  The Plan Administrator recognizes the Court's discretion to control the trial, but respectfully submits that, on this record, such a ruling *in limine* and without more detailed findings as to each witness, would unfairly and needlessly prejudice the Plaintiff's case and be premature.  The Court's exercise of its discretion, during trial, on a witness-by-witness basis should suffice to ensure efficiency and limit duplication and prejudice.

## BACKGROUND

In connection with the January 13, 2017 Joint Pre-Trial Order (the "JPTO"), the parties exchanged deposition designations and witness lists.  The Plan Administrator indicated in its

witness list that it intended to call eight PwC witnesses (of the 12 who were deposed in this matter) via live testimony and by playing portions of the video from their depositions.  The Plan Administrator is hereby dropping its designation of three of those witnesses whom PwC pointed out were not employed by PwC at the time of their deposition (Jonathan Lee, Elaine O'Keefe and Alan Tabacznik).  This leaves five witnesses (Linda McGowan, George Gallagher, Harry Baird, Frederick Currie, and Darren Lees) whom the Plan Administrator intends to examine through a combination of live and deposition testimony.  All five of these witnesses were partners at PwC at the time of their depositions, and four of them were partners during the MF Global audit engagement.

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████████

        The Plan Administrator seeks to show the jury these witnesses' general demeanor as revealed at their depositions, not to merely duplicate their live testimony.  ████████████████

█████████████████████████████████████████

██████████████████████████████████████████

        ████████████████  All of this will be informative to the jury in assessing witness credibility.

One example illustrates the point. ████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████ *See* Moody Decl. Ex. 2; Ex. 3.[1]  The witnesses' demeanor

during these and other portions of the testimony the Plan Administrator designated will assist the

jury in weighing this testimony and thus be effective in determining the truth.[2]  Fed. R. Civ. P.

32(a)(1).

   Finally, while the initial testimony designated by the Plan Administrator for the five live

witnesses now in question amounts to approximately 7 hours of testimony, the Plan

Administrator intends to further reduce those designations to a range of 20-50 minutes per

witness, resulting in no more than 3 hours of such testimony out of a total of more than 150

hours of estimated trial time.  This will not be a "trial by deposition" by any stretch.[3]

---

[1] This is the first citation to a Moody Declaration.  It is a declaration of Kalitamara L. Moody
("Moody Decl."), Ex. 2.

[2] ████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████

[3] To be clear, Plaintiff reserves the right to call by video any witness who is deemed unavailable
at trial, and to use deposition video for purposes of impeachment.

## ARGUMENT

I. **THE PLAN ADMINISTRATOR SHOULD BE ALLOWED TO USE DEPOSITION VIDEO FOR PWC'S MANAGING AGENT WITNESSES FOR ANY PURPOSE**

Federal Rule of Civil Procedure 32(a)(3) unambiguously states that "[a]n adverse party may use <u>for any purpose</u> the deposition of a party or anyone who, when deposed, was the party's officer, director [or] managing agent . . . ." Fed. R. Civ. P. 32(a)(3) (emphasis added). "Rule 32(a)(3) is liberally construed, and although the court has discretion to exclude parts of the deposition that are unnecessarily repetitious in relation to the testimony of the party on the stand, it may not refuse to allow the deposition to be used merely because the party is available to testify in person." *Capitol Records v. Mp3tunes*, LLC, No. 07 Civ. 9931, 2014 WL 503959, at *16 (S.D.N.Y. Jan. 29, 2014) (rejecting argument that "Plaintiffs [should be precluded] from introducing [Defendant's] deposition testimony in their case-in-chief at trial . . . because he *will also be testifying live* in Plaintiffs' case-in-chief") (emphasis supplied). As the Court of Appeals for the Tenth Circuit has explained:

> Under Rule 32 a party may introduce as a part of his substantive proof, the deposition of his adversary, and it is quite immaterial that the adversary is available to testify at the trial or has testified there. The Rule is a restatement of the long recognized rule of evidence that statements of a party which are inconsistent with his claim in litigation are substantively admissible against him . . . . [However,] the Rule is not open and shut in practice. The trial court has a perfect right to limit the use of the material if it is repetitious or immaterial, or where the depositions do not add any information to that given in oral testimony by the deponents or the information is irrelevant. A further limitation is the discretion of the court; the handling of depositions is peculiarly vested in the discretion of the trial court.

*King & King Enters. v. Champlin Petroleum Co.*, 657 F.2d 1147, 1164-1165 (10th Cir. 1981) (quotations, *citations*, ellipses omitted); *see also* 8A Charles Alan Wright, Arthur Miller, & Richard Marcus, <u>Federal Practice and Procedure</u>: Civil § 2145 at 170 (2d ed. 1994) (Rule

32(a)(3) "should be liberally construed" and precludes refusal "to allow the deposition to be used merely because the party is available to testify in person").

PwC's reliance on this Court's decision in *Banks v. Yokemick,* 144 F. Supp. 2d 272 (S.D.N.Y. 2001) is unavailing. *Banks* involved a tragic incident in which an NYPD officer threw his police radio at the suspect who fell from a bike, hit his head, was taken to the precinct instead of a hospital, and died shortly thereafter. *Id.* at 274. In a subsequent civil rights case brought by the decedent's estate against the police officer, and during the pendency of a related federal criminal investigation, the Court excluded from trial the deposition testimony of two NYPD witnesses who asserted their 5th Amended right against self-incrimination. *Id.* at 275. The Court already had determined that, if called by the defendant, those witnesses would not be permitted to testify as to any topics on which they asserted the 5th Amendment. The plaintiff sought to introduce their deposition testimony under the "exceptional circumstance" prong of Rule 32(a)(3), as formerly drafted. *Id.* at 288. In denying the request, the Court noted that the witnesses were not "unavailable" and the potential assertion of their 5th Amendment privilege did not constitute an exceptional circumstance. *Id.* Moreover, when the Court ruled that "deposition testimony is only a substitute, not to be resorted to if the witness can appear in person," it was describing *non-party* witnesses, not a corporate party's managing agents, and it was deciding the issue under the previous formulation of the rule (the new rule does not require an "exceptional circumstance"). *Id*.

The Plan Administrator does not dispute the premise that live testimony is important so that jurors can judge a witness's demeanor.[4] Indeed, that is the very reason the Plan

---

[4] In any event, the cases cited by PwC for the broad proposition that live testimony is preferable are distinguishable and fall into two categories: a) those that do not concern a *video* supplement to live testimony of a *percipient* witness (*see Napier v. Bossard*, 102 F.2d 467 (2d Cir. 1939)

Administrator intends to supplement these witnesses' live testimony with video from their depositions: to present the jury with evidence of those witnesses' demeanor as shown on the videos. Several cases PwC cites support Plaintiff's position, either because the court emphasized the importance of witness demeanor (*see DiRienzo*, 294 F.3d 21, 30 (2d Cir. 2002) ("videotaped depositions . . . could afford the jury an opportunity to assess the credibility of these Canadian witnesses.")), or because they reinforce the default rule that a party may use an adverse *party's* deposition for "any purpose." *Fey v. Walston & Co.*, 493 F.2d 1036, 1046 (7th Cir. 1974) ("[t]he pre-trial deposition of a party is in a position different from that of an ordinary witness, and may be introduced as part of the adversary's substantive proof irrespective of the fact that the party is available to testify or has testified at the trial . . . . [w]e do not mean to indicate that adverse parties by deposition admissions are not permitted to cumulate evidence against an opposing party. They may do so as a general rule for the same reason that they may do so through live witnesses . . . ."); *Zimmerman v. Safeway Stores, Inc.*, 410 F.2d 1041, 1045, n.5 (D.C. Cir. 1969) ("Professor Moore states unequivocally . . . that this means that the deposition of an adverse party may be introduced as original evidence, and we agree with this reading.")).

Unable to dispute that the Plan Administrator is entitled to play its witnesses' depositions for "any purpose," PwC argues instead that the five witnesses do not qualify as "managing agents" under Rule 32(a)(3). PwC would have the Court believe that, at most, 20 individuals

---

(predating the invention of camcorders); *Fey v. Walston & Co.*, 493 F.2d 1036 (7th Cir. 1974) (predating the invention of camcorders); *Gonzalez Prod. Sys. V. Martinrea Int'l Inc.*, 310 F.R.D. 341 (E.D. Mich. Sep. 15, 2015) (considering the use of video deposition of a 30(b)(6) witness, not percipient witnesses); *Williams v. Jackson*, No. 2:07-cv-00110, 2011 WL 867528 (E.D. Ark., Mar. 14, 2011) (concerning a 30(b)(6) witness, not percipient witnesses)), and b) cases on a motion to dismiss on the basis of *forum non conveniens* where the court was stating a preference for live testimony over a foreign witness outside the court's subpoena power. *See DiRienzo v. Philip Servs. Corp.* 294 F.3d 21 (2d Cir. 2002); *Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp.*, 421 F. Supp. 2d 741 (S.D.N.Y. 2006) (citing *DiRienzo*).

listed on PwC's website as part of its Leadership Team may qualify as "Managing Agents" of PwC. Def. Br. at 3, n.1. The definition of "managing agents" is not nearly so restrictive. PwC fails to mention that "[c]ourts in this Circuit have considered five factors in determining whether an employee is a "managing agent' of a party." *See Redd v. New York State Div. of Parole*, 923 F. Supp. 2d 393, 409 (E.D.N.Y. 2013) (citing *Schindler Elevator Corp. v. Otis Elevator Co.*, No. 06-cv-5377, 2007 WL 1771509, at *2 (S.D.N.Y. June 18, 2007)).

Those five factors are (1) whether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; (2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demands of the examining party; (3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which the information is sought by the examination; (4) the general responsibilities of the individual respecting the matters involved in the litigation; and (5) whether the individual can be expected to identify with the interests of the corporation. *Redd*, 923 F. Supp. 2d at 409.

Moreover, the deponent only needs to qualify as a "managing agent" in relation to the subject matter of his or her testimony. *Surles v. Air France*, No. 00-cv-5004, 2004 U.S. Dist. LEXIS 3710, at *11-12 (S.D.N.Y. Feb. 23, 2004) ("senior legal official in the United States charged with complying with Air France's discovery obligations . . . [qualified as a managing agent] concerning [plaintiff's] discovery requests and Air France's responses thereto") (collecting cases). Whether the five witnesses in question (Ms. McGowan, Mr. Gallagher, Mr. Baird, Mr. Currie and Mr. Lees) were managing agents should be determined in the light of the facts of this case and the roles they played and upon which they were questioned. *Redd*, 923 F. Supp. 2d at 409 ("[t]he test for a managing agent is not formulaic" but "is answered

pragmatically on a fact-specific basis.") (internal citations omitted).  The five PwC witnesses easily meet these criteria.

All five witnesses the Plan Administrator seeks to call live and by deposition were partners of the PwC partnership at the time they were deposed.  *Supra* at 2.  Each one, therefore, can be expected to identify with the interests of the partnership (factor no. 5).  They all also had significant general and specific responsibilities in the matters of the litigation (factor no. 4), and were, in fact, relied upon to give testimony in response to the Plan Administrator's discovery demands (factor no. 2).  *Id.*  With respect to factor no. 3, Ms. McGowan, Mr. Gallagher, and Mr. Baird were the most senior audit team members "in the area regarding which the information [was] sought by the examination," and Mr. Currie was the most senior partner in the national office and ███████████████████████████████████████████.  *Id.*

Finally, regarding factor no. 1, "whether the individual is invested with general powers allowing him to <u>exercise judgment and discretion in corporate matters</u>," (emphasis added) the very theory of PwC's malpractice defense is that the application of sales accounting was a matter of "judgment."  *See* Johnigan Report at ¶¶ 36-57, 121; Lucas Report at ¶¶ 26-35.[5]  If ████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████ were not invested by PwC with the general powers allowing them to "exercise judgment," then PwC will have to concede that no one at PwC exercised any judgment in auditing MF Global.  Surely, the 20 members of the PwC Leadership Team who never worked on MF Global did not.  While the Plan Administrator disagrees with PwC's assertion that the RTM rule at issue in this

---

[5] The expert reports of Timothy Lucas and Sandra Johnigan were submitted as Exhibits 16 and 17 to the January 20, 2017 Declaration of Ryan Montefusco in support of the Plan Administrators motions *in limine*.

case permitted such broad judgment or that the DTA rules permitted PwC to exercise judgment in such a demonstrably result oriented manner, PwC cannot argue for this purpose that the five witnesses do not qualify as "managing agents" under Rule 32(a)(3) because they lack judgment authority.  Under that Rule, the Plan Administrator is entitled to play their depositions for any purpose.[6]

Even if that were not the case, these five witnesses would still qualify as PwC "agents" and their video depositions would be admissible under Rule 32(a)(2) which provides that "[a]ny deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness, *or for any other purpose permitted by the Federal Rules of Evidence.*"  *Id.* (emphasis supplied).  Federal Rule of Evidence 801(d)(2)(D) provides that "a statement by *the party's agent or servant* concerning a matter within the scope of the agency of employment, made during the existence of the relationship" is admissible when "offered against a party."  *Pappas v. Middle Earth Condominium Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992).  The Second Circuit applies a particularly "liberal" standard.  *Id.* at 537 ("because admissions against a party's interest are received into evidence without many of the technical prerequisites of other evidentiary rules — such as, for example, trustworthiness and personal knowledge — admissibility under this rule should be granted freely.").

As with managing agents under Rule 32(a)(3), courts frequently allow the use of depositions in addition to live testimony when the testimony in question constitutes an admission of an adverse party, and therefore is not hearsay.  *See e.g. Eastman Kodak Co. v. Agfa-Gevaert N.V.*, 560 F. Supp. 2d 227, 310 (W.D.N.Y. 2007) (Fed. R. Civ. P. 32(a)(1) "permits a party's use of a deposition 'for any … purpose permitted by the Federal Rules of Evidence.')."  This

---

[6] This includes playing short clips of their depositions during the Plaintiff's opening.

provision permits the substantive admission of depositions which fall within the ambit of Fed. R. Evid. 801(d)(2) irrespective of whether the deponent is available to testify at trial."); *Stanphill v. Health Care Serv. Corp.*, No. Civ-06-9850BA, 2008 U.S. Dist. LEXIS 64255, at *8-9 (W.D. Okla. Aug. 20, 2008) ("under Fed. R. Civ. P. 32(a)(2), the deposition testimony would be admissible regardless of whether the deponents were available.").

As PwC agrees (Def. Br. at 4), "Rule 801(d)(2) requires an individualized inquiry as to the admissibility of each statement." *Carpenter v. Forest Meadows Owners Ass'n*, No. 1:09-cv-019818-JLT, 2011 U.S. Dist. LEXIS 82295, at *14-15 (E.D. Cal. July 26, 2011). Therefore, a blanket ruling that none of the video deposition of these five witnesses should be played except for impeachment purposes would be immature and improper. If necessary, the Court can exercise its discretion at or closer to the time of these witnesses' appearance at trial.[7]

## II.   ALL CROSS EXAMINATIONS SHOULD BE LIMITED TO THE TOPIC OF DIRECT TESTIMONY, ESPECIALLY FOR ANY WITNESSES WHO ARE WILLING AND ABLE TO APPEAR AGAIN ON ANOTHER TRIAL DATE.

Under Fed. R. Civ. P. 611(b), "[c]ross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility. The court may allow inquiry into additional matters as if on direct examination." (Emphasis added). Courts in this District routinely enforce Rule 611(b) and are given great deference by the Second Circuit in doing so. *Beck Chevrolet Co., Inc. v. General Motors LLC*, 787 F.3d 663, 681 (2d Cir. 2015) (district court did not abuse its discretion in excluding a document offered on cross-examination of defendant's expert on a topic beyond the scope of his direct, nor in curtailing cross-

---

[7] The parties have already discussed the probability that they will exchange shorter, final deposition designations some time before the witness is called, allowing opposing counsel an opportunity to adjust their fairness and counter designations and present objections to particular passages prior to the witness being called. The Plan Administrator will, of course, endeavor to avoid any unnecessary, confusing or unhelpful duplication of testimony during its case in chief.

examination on topic not addressed by expert in direct testimony); *Lidle v. Cirrus Design Corp.*, 505 F. App'x 72, 77 (2d Cir. 2012) (finding no fault with district court's decision to limit the scope of plaintiff's cross examination, as "plaintiffs had ample opportunity to cross-examine [defendant] and to present their case in chief" and plaintiff "failed to demonstrate any prejudice resulting from such a limitation."); *U.S. v. Koskerides*, 877 F.2d 1129, 1136 (2d Cir. 1989) ("We will not overturn an exercise of the district court's discretion absent a clear showing of abuse.").

PwC's request is a departure from the default rule and it has failed to demonstrate that unrestricted cross examination is necessary to (1) be "effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from *harassment or undue embarrassment*."  Fed. R. Evid. 611(a) (emphasis added).  Rather, PwC incorrectly asserts that "[i]t is a 'standard trial practice' in this District for courts" to allow unrestricted cross-examination of witnesses.  Def. Br. at 5.  This argument distorts the applicable and overwhelming case law, cited above, and arises from PwC's misleading interpretation of two readily distinguishable cases, *Buchwald v. Renco Group, Inc.*, No. 13-cv-7948, 2014 WL 4207113 (S.D.N.Y. Aug 25, 2014), and *Hart v. RCI Hospitality Holdings, Inc.*, 90 F. Supp. 3d 250 (S.D.N.Y. 2015), which quotes *Buchwald*.

In *Buchwald*, defendants were engaged in a "strategy" that other courts had "properly denounced [] as 'gamesmanship'" in which they intended to examine five key witnesses who lived outside the subpoena power of the Court by live testimony, but sought to prevent plaintiff from calling those same witnesses during plaintiff's case in chief, citing Fed. Civ. P. 45(c)(1). The effect of this tactic would be to restrict plaintiff to use only deposition testimony and cross examination for these key witnesses.  *Id.* at *1.  In denying defendants' request, the court forced defendants to decide whether *both* parties would have access to live testimony of those five witnesses, or neither would.  *Id.* at *2.  In the last line of the opinion, and citing no other cases or

examples, Judge Nathan wrote that "the Court—implementing <u>its</u> standard trial practice—will structure trial so that, if feasible and fair, witnesses need only take the stand once." *Id.* at *3 (emphasis added).  The court was not purporting to state that the standard trial practice in the Southern District of New York is always to structure trial that way, as PwC would have this Court believe.  In any event, *Buchwald* is readily distinguishable because the Plan Administrator is not attempting to engage in the kind of manipulative gamesmanship at issue there.

In *Hart*, the court ruled that nine former employees of the defendants would each be allowed to appear only one time, consolidating their testimony into a single appearance, rather than be made to appear on separate days of trial during the plaintiff's and then the defendant's cases in chief.  *Hart,* 90 F. Supp. 3d at 274-75.  The court found that defendants were attempting to obtain a "non-substantive strategic advantage" by insisting that these witnesses appear twice and then seeking an adverse inference if a witness failed to appear both times.  *Id.* at 275.  Here, plaintiff is seeking no such non-substantive strategic advantage.[8]

For many witnesses on the Plan Administrator's witness list in the JPTO, the order and scope of their anticipated testimony is very different from PwC's witness list (*compare* JPTO at 16 *with* 18-19, e.g., Corzine and Steenkamp,).  The Plan Administrator anticipates that it will call fact witnesses early in its case in chief who will testify as to narrow, introductory subject matters

---

[8] PwC's remaining cases also are distinguishable.  In *Oracle USA, Inc. v. Rimini Street, Inc.*, No. 2:10-cv-00106, 2015 WL 5165374, at *5 (D. Nev. Sep. 3, 2015), the court ruled that defendant could fully examine its witnesses during plaintiff's case in chief *after* the parties had agreed to use video depositions only for impeachment during the examination of live witnesses, which is not the case here.  In *U.S. v. Caracappa*, 614 F.3d 30, 42-43 (2d Cir. 2010), the Second Circuit affirmed the district court's allowance of cross-examination of a witness that was "somewhat more far-ranging than the direct examination."  In so ruling, the court held that cross examination still must be "reasonably related" to direct examination and that "[m]ost of the questioning on cross-examination was reasonably related to the questions put to [the witness] on direct."  *Id*.

for approximately less than half a day.  Allowing PwC to turn its cross examination of any such witness into a 1-2 day case-in-chief witness for PwC will not only confuse the jury, but it will also prejudice the plaintiff by preventing the Plan Administrator from clearly and consistently proffering the evidence for it case in chief.  As a practical matter, the Plan Administrator would not object to exceptions being made to Rule 611(b) on a witness-by-witness basis to accommodate those who, for instance, have limited availability, are not controlled by a party, or are traveling from out of town to appear at trial.

## CONCLUSION

For all the foregoing reasons, the Plan Administrator respectfully requests that the Court deny PwC's motion and i) allow Plaintiff to play video depositions in addition to live testimony for the following witnesses: Linda McGowan, George Gallagher, Harry Baird, Frederick Currie, and Darren Lees, pursuant to Fed. R. Evid. 32(a)(3); and ii) enforce Fed. R. Evid. 611(b) during PwC's cross-examination of witnesses who testify during Plaintiff's case-in-chief.

Dated:  New York, New York
January 27, 2017

Respectfully submitted,

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP

By: /s/    Daniel J. Fetterman
Daniel J. Fetterman (dfetterman@kasowitz.com)
Michael C. Harwood (mharwood@kasowitz.com)
Trevor J. Welch (twelch@kasowitz.com)
David J. Mark (dmark@kasowitz.com)
Olga Lucia Fuentes Skinner (ofuentes@kasowitz.com)
Christian T. Becker (cbecker@kasowitz.com)

1633 Broadway
New York, New York 10019
Tel:   (212) 506-1700
Fax:   (212) 506-1800

*Attorneys for Plaintiff*

13