ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------X
MF GLOBAL HOLDINGS LTD., as Plan    :
Administrator,                      :
                                    :      14-cv-2197
                    Plaintiff,      :
                                    :
      - against -                   :      DECISION AND ORDER
                                    :
PRICEWATERHOUSECOOPERS LLP,         :
                                    :
                    Defendant.      :
-----------------------------------X
```

**VICTOR MARRERO, United States District Judge.**

The Court has received motions _in limine_ pertaining to

the trial in the matter of _MF Global Holdings Ltd., as Plan_

_Administrator v. PricewaterhouseCoopers LLP_. As a preliminary

matter, the Court notes that several of the _in limine_ motions

the parties have brought reflect inappropriate use of such

motions. The purpose of _in limine_ motions is to enable the

Court to rule on disputes over the admissibility of discrete

items of evidence. _See TVT Records v. Island Def Jam Music_

_Grp._, 250 F. Supp. 2d 341, 344 (S.D.N.Y. 2003); _United_

_States v. Chan_, 184 F. Supp. 2d 337, 340 (S.D.N.Y. 2002).

Here, as demonstrated by the discussion below, the parties

seek to employ their _in limine_ motions as preemptive weapons

with which they endeavor to strike, in shotgun fashion, at

whole topics and sources of prospective evidence that each

side anticipates the other may contemplate introducing at

some point during the course of the trial, out of context and

before any specific objection against its proper backdrop is raised.

Ten motions in limine were filed by plaintiff MF Global Holdings, as Plan Administrator (the "Plan Administrator"). A summary of the Plan Administrator's requests and the Court's rulings thereon follow.

The Plan Administrator requests that the Court:

(1) exclude evidence and argument concerning segregated customer funds: **DENIED**

(2) exclude evidence or argument regarding the MF Global post-bankruptcy litigation: **GRANTED**

(3) exclude the trustee reports: **GRANTED**

(4) preclude defendant from inquiring about certain communications with the general counsel: **GRANTED** in part

(5) exclude certain exhibits and to limit references to current or former claim holders: **GRANTED**

(6) preclude defendant from calling Richard Katz live at trial: **GRANTED** in part

(7) exclude evidence and argument concerning the statute of limitations: **GRANTED**

(8) preclude defendant from offering cumulative expert testimony by Sandra Johnigan and Timothy S. Lucas: **GRANTED** in part

2

(9) preclude certain expert testimony by Christopher Culp: **DENIED**

(10) preclude testimony from Christopher Culp pertaining to his supplemental report: **GRANTED**

Defendant PricewaterhouseCoopers LLP ("PwC") filed twelve motions in limine. A summary of PwC's requests and the Court's rulings thereon follow. PwC requests that the Court:

(1) preclude any suggestion that plaintiff is operating on behalf of third parties or the bankruptcy court: **GRANTED**

(2) preclude plaintiff from playing video testimony for witnesses who will testify in person and permit PwC to conduct full examinations of witnesses who testify during plaintiff's case-in-chief: **GRANTED** in part

(3) preclude evidence or argument concerning new theories of malpractice: **GRANTED**

(4) exclude, in part, the opinion of Lynn Turner: **DENIED**

(5) exclude certain testimony of Paul Michaud, David Mordecai, and Christine Pallone: **GRANTED** in part

(6) exclude the testimony and opinion of Plaintiff's damages expert Guy Davis: **DENIED**

(7) preclude evidence or argument regarding MF Global's deferred tax asset: **DENIED**

3

(8)   preclude  evidence  or  argument  that  PwC  violated
      Auditing Standard No. 3: **DENIED**

(9)   preclude  evidence  or  argument  that  PwC's  internal
      guidance sets the standard of care: **GRANTED**

(10)  exclude  evidence  or  argument  concerning  other
      accounting firms, clients, or audits: **GRANTED**

(11)  exclude  evidence  or  argument  concerning  PwC's
      financial information: **GRANTED**

(12)  exclude  evidence  or  argument  concerning  prior
      settlements: **GRANTED**

In  the  following  discussion,  each  of  the  motions  is
addressed in turn, beginning with the Plan Administrator's
motions.

## I. SEGREGATED CUSTOMER FUNDS

The  Plan  Administrator  seeks  to  preclude  any  evidence
regarding the improper transfer of segregated customer funds,
which  resulted  in  a  significant  shortfall  in  those  funds
discovered in October 2011. The Plan Administrator asserts
that  this  information  is  irrelevant  and  therefore
inadmissible under Rule 402 of the Federal Rules of Evidence
("Rule 402"), as MF Global was already planning to file for
bankruptcy  before  the  shortfall  was  discovered.  Plan
Administrator further asserts that this evidence would be
prejudicial and misleading and would serve to confuse the

4

jury, and is therefore inadmissible under Rule 403 of the Federal Rules of Evidence ("Rule 403").

PwC counters that evidence regarding the misuse of customer segregated funds is a central issue to the case and bears upon causation, comparative fault, and damages. Furthermore, PwC argues, the Plan Administrator has not established that evidence of the misuse of customer segregated funds would be unduly prejudicial or confuse the jury.

Rule 402 provides that relevant evidence is generally admissible, and Rule 403 provides that evidence that is relevant may nonetheless be excluded if its probative value is substantially outweighed by, among other considerations, the danger of unfair prejudice, confusion, or the possibility of misleading the jury. Fed. R. Evid. 402, 403. It would be difficult to discuss the collapse of MF Global without touching upon the misuse of customer funds, and tasking PwC with doing so would undoubtedly prejudice them. The Court is persuaded that evidence regarding the shortfall in segregated customer funds, while not a basis for the claims against PwC, is relevant to the central elements of the case - how and why MF Global collapsed - and sufficiently probative to outweigh any prejudice to the Plan Administrator. Accordingly, the

Plan Administrator's motion to exclude evidence regarding the misuse of segregated customer funds is **DENIED**.

## II.    **POST-BANKRUPTCY LITIGATION**

The Plan Administrator also moves to exclude all evidence regarding other post-bankruptcy civil litigation concerning the MF Global bankruptcy, including Free v. Corzine (In re MF Glob. Holdings Ltd.) (Bankr. S.D.N.Y. Apr. 22, 2013) ("Corzine Action"). The Plan Administrator asserts that such evidence is irrelevant, unduly prejudicial, hearsay, and will mislead and confuse the jury. PwC responds that, as MF Global is the real party-in-interest in both this case and the Corzine Action, the Plan Administrator is bound by statements made in that case. Further, PwC argues that the allegations in the Corzine action are highly relevant to this case, and that the Plan Administrator is judicially estopped from taking positions that contradict those taken in the Corzine Action. Finally, PwC argues that the settlement agreement in the Corzine Action is admissible under Rule 408 of the Federal Rules of Evidence ("Rule 408") for the limited purpose of impeaching MF Global's former officers.

Courts routinely exclude "evidence relating to previous litigation involving one or both of the same parties" where the merits of those prior litigations would "become inextricably intertwined with the case at bar." Arlio v.

6

Lively, 474 F.3d 46, 53 (2d Cir. 2007); see also New Am. Mktg. FSI LLC v. MGA Entm't, Inc., 187 F. Supp. 3d 476, 481 (S.D.N.Y. 2016). The jury could easily confuse any evidence regarding the merits of the Corzine Action with the merits of this case, causing undue prejudice to the Plan Administrator. As such, the Court finds that evidence regarding prior litigation, including pleadings and interrogatory responses, is inadmissible under Rule 403.

With regards to the settlement agreement, such agreements carry little evidentiary weight because they "are too tightly bound to the incentive to avoid litigation to cast much light on the underlying merits of the case." Sanders v. Madison Square Garden, L.P., 525 F. Supp. 2d 364, 369 (S.D.N.Y. 2007). The Court is persuaded that evidence regarding the settlement agreement would be irrelevant and unfairly prejudicial to Plan Administrator. To the extent that PwC seeks to use the settlement agreement as evidence of bias for certain witnesses that have cooperation agreements that require their assistance in this litigation, the cooperation agreements themselves can be used for this purpose. The terms of the settlements themselves, however, are irrelevant to that issue.

Accordingly, the Plan Administrator's motion to exclude evidence regarding other post-bankruptcy civil litigation concerning the MF Global bankruptcy is **GRANTED**.

### III.   **TRUSTEE REPORTS**

The Plan Administrator also moves to exclude two trustee reports, the SIPA Trustee Report and the Freeh Report (collectively, the "Reports"). Plan Administrator argues that the Reports are hearsay under Rule 801(c) of the Federal Rules of Evidence ("Rule 801(c)") and that the Reports are irrelevant and unduly prejudicial. PwC contends that the Reports are admissible public records under Rule 803(8) of the Federal Rules of Evidence ("Rule 803(8)"), will not be offered for the truth that they contain, and have significant probative value that outweighs any potential prejudice.

The Court finds that the Reports are hearsay under Rule 801(c). The Reports are based on interviews of more than one hundred different people, none of whom were subject to cross examination. PwC's contention that the reports will not be offered for the truth of the matter asserted but, rather, will be offered to draw a negative inference regarding what is excluded from the Reports is unpersuasive. Any argument regarding what the reports do or do not contain assumes that the Reports' contents are true and complete. Further, the Court is not persuaded that the Reports are public records

under Rule 803(8), which allows admission of reports unless "the source of information [or] other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8). Investigative reports are frequently regarded as untrustworthy where the reports are based on unattributed hearsay statement. See, e.g., NES Fin. Corp. v. JPMorgan Chase Bank, 891 F. Supp. 2d 558, 559 (S.D.N.Y. 2012) (report that contained "out-of-court statements by unidentified individuals" was inadmissible as the court could not "evaluate the veracity or accuracy of such statements."). Here, the Court does not find the Reports, which contain a collection of hearsay statements, to be sufficiently trustworthy to be admitted under Rule 803(8).

As such, the Plan Administrator's motion to exclude the SIPA Trustee Report and the Freeh Report is **GRANTED**.

## IV.    **COMMUNICATIONS WITH GENERAL COUNSEL**

The Plan Administrator further moves to exclude any testimony regarding communications between Laurie Ferber ("Ferber"), General Counsel of MF Global and the Plan Administrator, and former MF Global employees that post-date MF Global's bankruptcy. The Plan Administrator contends that these communications are privileged and, to the extent they are not privileged, are otherwise irrelevant. PwC responds that any communications between former employees and Ferber

9

that were not aimed at uncovering facts learned during their employment are not privileged and that, even if they are privileged, Ferber waived any attorney-client privilege during her deposition.

"It is well established that the privilege applies to communications between corporate counsel and a corporation's employees, made 'at the direction of corporate superiors in order to secure legal advice from counsel.'" In re Gen. Motors LLC Ignition Switch Litig., 80 F. Supp. 3d 521, 527 (S.D.N.Y. 2015), quoting Upjohn Co. v. United States, 449 U.S. 383, 394 (1981). This privilege also "extends to conversations between corporate counsel and former employees of the corporation, so long as the discussion related to the former employee's conduct and knowledge gained during employment." Indergrit v. Rite Aid Corp., Case No. 08-cv-9361, 2016 WL 6441566, at *3 (S.D.N.Y. Oct. 31, 2016)(internal citations omitted).

The Court finds that communications between Ferber and former MF Global employees regarding their conduct during employment at MF Global or any knowledge the former employees have from their time at MF Global is privileged. However, testimony pertaining to communications between Ferber and MF Global employees regarding whether they retained counsel post-bankruptcy is not privileged. To the extent that these communications were privileged, Ferber knowingly waived

10

attorney-client privilege at her deposition. During that deposition, Ferber was represented by counsel and knowingly answered limited questions regarding communications with former employees where she had inquired if they had retained counsel. The Plan Administrator cannot now assert, after Ferber has already answered these questions in a sworn deposition, that this testimony is privileged.

Accordingly, the Plan Administrator's motion to exclude testimony regarding communications between Ferber and former MF Global employees post-bankruptcy is **GRANTED** with respect to any testimony regarding conduct and knowledge gained during the course of the former employees' term of employment at MF Global, and is **DENIED** with respect to limited questioning regarding Ferber's inquiries into whether former employees had retained counsel.

### V. **CURRENT AND FORMER CLAIM HOLDERS**

The Plan Administrator further moves to exclude documents relating to current or former claim holders of the bankrupt entities and the selection of the Plan Administrator, specifically DX 892, DX 893, DX 894, and DX 895 (the "Creditor Exhibits"). The Plan Administrator also moves to preclude PwC from using derogatory terms or inflammatory language to describe any current or former claim holders of the Plan Administrator. The Plan Administrator

11

argues that the Creditor Exhibits are irrelevant to this case and that the use of inflammatory language will cause prejudice to the Plan Administrator. PwC only opposes the motion if this Court denies PwC's first motion in limine.

The Court finds that the Creditor Exhibits are irrelevant to this case and should be excluded. With respect to the inflammatory language, courts often prohibit the use of certain "pejorative terms when such categorizations were inflammatory and unnecessary to prove a claim" and such statements "do not bear on the issues being tried." Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams., No. 04-cv-10014, 2009 WL 3111766, at *7 (S.D.N.Y. Sept. 28, 2009). As the Court also notes with respect to PwC's first motion in limine, the parties are cautioned against using any language that is unrelated to the issues being tried and unnecessary to prove the claims at issue in this case, including referencing the current or former claim holders as "vulture funds" or "treasure hunters." Accordingly, the Plan Administrator's motion to exclude the Creditor Exhibits and preclude derogatory or inflammatory language is **GRANTED**.

## VI. RICHARD KATZ'S TRIAL TESTIMONY

The Plan Administrator also moves to preclude PwC from calling Richard Katz ("Katz"), a member of the Plan Administrator's board, as a witness. The Plan Administrator

12

asserts that Katz has no personal knowledge of any facts relevant to the case and that Katz cannot be called as a live corporate representative. PwC argues that it intends to call Katz only to testify regarding matters about which he has personal knowledge, including the responsibilities of the Plan Administrator.

The Court finds that Katz may have personal knowledge regarding the responsibilities of the Plan Administrator and, to the extent he has such relevant knowledge, he can testify. However, any testimony regarding matters about which Katz does not have personal knowledge is inadmissible. Accordingly, the Plan Administrator's motion to preclude Katz's testimony is **GRANTED** with respect to any matters about which he does not have personal knowledge, but **DENIED** as to any relevant matters of which Katz does have personal knowledge, including the responsibilities of the Plan Administrator.

## VII. **STATUTE OF LIMITATIONS**

The Plan Administrator additionally moves to exclude evidence pertaining to whether claims based on PwC's 2010 audit work are precluded by the statute of limitations. The Plan Administrator argues that this Court has already considered and rejected PwC's statute of limitations defense and any further mention of the defense would be irrelevant

13

and prejudicial. PwC counters that, as this Court only ruled on the motion when denying PwC's motion for summary judgment, the statute of limitations defense has not been conclusively rejected by this Court.

Under the law-of-the-case doctrine, courts "as a general matter will adhere to its own decision at an earlier stage of the litigation." Ndremizara v. Swiss Re America Holding Corp., 93 F. Supp. 3d 301, 316 (S.D.N.Y. 2015)(internal citation and quotation marks omitted). The law-of-the-case doctrine is "subject to limited exceptions made for compelling reasons." United States v. Plugh, 648 F. 3d 118, 123 (2d Cir. 2011). However, a "mere disagreement with the Court's analysis" does not constitute a compelling reason to depart from the law of the case. Ndremizara, 93 F. Supp. at 316. The Court has already ruled on PwC's statute of limitations defense when denying PwC's motion for summary judgment, finding that the "record evidence [was] sufficient to show PwC's 'ongoing representation' of MF Global connected to the Fiscal Year 2010 financial statements" such that Plan Administrator's claims are not time barred. MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP, No. 14-cv-2197, 2016 WL 4197062, at *21 (S.D.N.Y. Aug. 5, 2016). PwC's argument that, as the Plan Administrator did not affirmatively bring a summary judgment motion regarding PwC's

14

statute of limitations defense, this Court did not rule on PwC's defense does not hold water. The law-of-the-case can be established by a denial of summary judgement. See, e.g., Cary Oil Co., Inc. v. MG Refining & Marketing, Inc., 257 F. Supp. 2d 751, 765 (S.D.N.Y. 2003)(rulings made while explaining reasons "for denying Defendants' motion for summary judgment" rendered the language "necessary to the holding" and established the law-of-the-case). This Court has already found that there is sufficient evidence to show that Plan Administrator's claims are not time-barred and PwC has provided no additional evidence to reverse this finding. Accordingly, Plan Administrator's motion to exclude evidence regarding PwC's statute of limitations defense is **GRANTED**.

## VIII.   **EXPERT TESTIMONY OF SANDRA JOHNIGAN AND TIMOTHY S. LUCAS**

The Plan Administrator objects to the testimony of both Sandra Johnigan ("Johnigan") and Timothy S. Lucas ("Lucas"), because their expert reports contain overlapping information regarding overviews of GAAP, repurchase agreements, the genesis of ASC 860, opinions regarding PwC's approval of the Plan Administrators accounting for European repurchase-to-maturity transactions ("Euro RTMs") as sales, and responses to the Plan Administrator's expert, Lynn Turner. The Plan

15

Administrator moved to preclude PwC from offering cumulative testimony by both Johnigan and Lucas pursuant to Rule 403.

PwC acknowledges that there is overlap in the expert reports with respect to the bases and reasons for Johnigan's and Lucas's opinions, but argues that their testimony will differ insofar as Lucas will testify to the discrete issue of how FASB intended for FAS 125 and 140 and ASC 860 to be applied, while Johnigan will testify as to whether the Euro RTMs were sales under GAAP.

To the extent that Johnigan's and Lucas's testimony regarding opinions on PwC's accounting of the Plan Administrator's Euro RTM transactions and the bases of those opinions may be duplicative and cumulative, the Plan Administrator's motion in limine to preclude the cumulative testimony of Johnigan and Lucas is **GRANTED**.

### IX.   EXPERT TESTIMONY OF CHRISTOPHER CULP

The Plan Administrator seeks to exclude certain testimony of PwC's expert, Christopher Culp ("Culp"), regarding the volatility in European sovereign debt markets and the probability of a downgrade of MF Global's ratings during the period from March 2011 and October 2011. The Plan Administrator argues that Culp's testimony is "unreliable" and "premised on fundamentally flawed and unreliable methodologies" and, therefore, seeks to preclude the evidence

16

pursuant to Rule 702 of the Federal Rules of Evidence ("Rule 702").

PwC counters that, as an initial matter, the Plan Administrator's motion would be moot to the extent that PwC's motion to exclude the testimony of Paul Michaud ("Michaud") and David Mordecai ("Mordecai") regarding the foreseeability of certain business risks to an auditor would obviate the need for Culp's testimony, which would be presented only in direct response to Michaud and Mordecai's testimony. PwC further argues that the Plan Administrator's objections would more properly be raised during cross-examination and that differences in opinion among experts regarding methodology "are more properly left for juries to consider." E.E.O.C. v. Morgan Stanley & Co., 324 F. Supp. 2d 451, 458 (S.D.N.Y. 2004).

Because the Court is granting, in part, PwC's motion to exclude the testimony of Michaud and Mordecai, the Plan Administrator's motion may well be moot. Nonetheless, insofar as the Plan Administrator's concerns go to the merits and credibility of Culp's testimony, the Plan Administrator can raise these issues on cross-examination. "Minor flaws in an expert's analysis . . . can be probed through cross-examination and generally go to the weight to be accorded to the expert's testimony rather than admissibility."

17

R.F.M.A.S., Inc. v. So, 748 F. Supp. 2d 244, 252 (S.D.N.Y. 2010). The Plan Administrator's motion in limine to preclude certain expert testimony is therefore **DENIED.**

## X. **THE PLAN ADMINISTRATOR'S MOTION IN LIMINE NUMBER TEN TO PRECLUDE TESTIMONY FROM CHRISTOPHER L. CULP PERTAINING TO HIS SUPPLEMENTAL REPORT**

The Plan Administrator also seeks to exclude the supplemental report submitted by Culp, because it was served on January 24, 2017 – over fifteen months after September 21, 2015, the date his original expert report was due and served. In addition, the Plan Administrator notes that the supplemental report contains a new analysis of statistics that were available to Culp at the time of his initial report.

PwC does not dispute that paragraph 7 of the supplemental report includes an additional analysis that Culp performed subsequent to submitting his initial report, but maintains that this analysis does not add anything new to his original opinions. PwC further argues that other paragraphs in the supplemental report contain only minor corrections.

While an expert report may be supplemented "if the expert subsequently learns of information that was previously unknown or unavailable, that renders information previously provided in an initial report inaccurate or misleading because it was incomplete," Lidle v. Cirrus Design Corp., No. 08 Civ. 1253, 2009 WL 4907201, at *6 (S.D.N.Y. Dec. 18, 2009)

18

(citation omitted), Dr. Culp's expert report includes additional analysis of trading data of European sovereign debt instruments that was available to him prior to submitting his initial expert report. In addition, to the extent this new analysis "does not add anything new," PwC has admitted that its expert has no basis to provide a supplemental report. Since no "duty to supplement" the expert report in light of new evidence is presented here, PwC and Culp must abide by the discovery deadlines set by the Court.

Accordingly, the Plan Administrator's motion in limine to preclude testimony from Culp regarding his supplemental report is **GRANTED**.

## XI.    PLAINTIFF OPERATING ON BEHALF OF THIRD PARTIES OR THE BANKRUPTCY COURT

PwC seeks to exclude testimony suggesting that the Plan Administrator represents, asserts the claims of, or seeks to recover for any person or entity other than the Plan Administrator itself; that third parties would benefit from any recovery by the Plan Administrator in the case; or that the Plan Administrator was "appointed by" or is otherwise operating on behalf of the Bankruptcy court.

The Plan Administrator acknowledges and admits that it was not "appointed by" nor is it a representative of the Bankruptcy Court, and further acknowledges that any

19

insinuation to that effect would be inappropriate. However, the Plan Administrator opposes the remainder of PwC's motion, arguing that the inability to address the context for the Plan Administrator's existence will confuse and mislead the jury.

As both PwC and the Plan Administrator acknowledge, the Plan Administrator was not "appointed by" nor is operating on behalf of the Bankruptcy Court. Any suggestion to the contrary would be unfairly prejudicial.

While the Plan Administrator indirectly represents the interests of various entities, the Plan Administrator has standing to assert its claims against PwC only on behalf of the bankrupt entity, MF Global Holdings Ltd., itself. The Plan Administrator can assert only those claims belonging to the bankrupt entity and it must stand "in its shoes" when asserting those claims. In re Mediators, Inc., 105 F.3d 822, 824-826 (2d Cir. 1997)(citing 11 U.S.C. Sections 541, 542). Because the Plan Administrator may not bring a claim on behalf of any person or entity other than MF Global, any suggestion that it is acting on behalf of third parties would be unduly prejudicial.

PwC's motion in limine to preclude any suggestion that the Plan Administrator is operating on behalf of third parties or the Bankruptcy Court is therefore **GRANTED.**

20

## XII.   VIDEO TESTIMONY FOR WITNESSES WHO WILL TESTIFY IN PERSON AND FULL EXAMINATIONS OF WITNESSES WHO TESTIFY DURING PLAINTIFF'S CASE-IN-CHIEF

PwC moves to preclude the Plan Administrator from playing video testimony, other than for impeachment purposes, for witnesses who will testify in person.

In response to PwC's motion, the Plan Administrator has dropped its designation of deposition testimony by three witnesses. The Court therefore considers PwC's motion only as it concerns the remaining five witnesses: Linda McGowan ("McGowan"), George Gallagher ("Gallagher"), Harry Baird ("Baird"), Frederick Currie ("Currie"), and Darren Lees ("Lees"). As to those five witnesses, the Plan Administrator argues that the video testimony it seeks to play is admissible because the deponents are "managing agents" within the meaning of Rule 32(a)(3) of the Federal Rules of Civil Procedure ("Rule 32(a)(3)"), which provides that "[a]n adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)." Fed. R. Evid. 32(a)(3). PwC disputes that each partner of a partnership, which in PwC's case number in the thousands, qualifies as a "managing agent" for purposes of Rule 32(a)(3).

The Court is not persuaded that Rule 32(a)(2) is so expansive as to permit the admission of the depositions at issue. The purpose of Rule 32(a)(3) is to "provide[] for use of a deposition of a person designated by a corporation or other organization, which is a party, to testify on its behalf." Fed. R. Civ. P. 32 advisory committee's note (discussing the predecessor to Rule 32(a)(3)). Consistent with this purpose, Rule 32(a)(3) echoes that of Rule 30(b)(6), which requires an organization subject to a subpoena to "designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf . . . ." Fed. R. Civ. P. 30(b)(6). Under the Plan Administrator's reading of the rule, however, it is difficult to imagine which of PwC's employees would not be considered a managing agent.

Because Lees, Baird, and Currie were not in positions where they exercised the required judgment or discretion in PwC's corporate matters and reported to more senior members of PwC's team for MF Global's audit, they fail the test for identifying a managing agent cited by the Plan Administrator. See Redd v. N.Y. State Div. of Parole, 923 F. Supp. 2d 393, 409 (E.D.N.Y. 2013) (citing Schindler Elevator Corp. v. Otis Elevator Co., No. 06-CV-5377, 2007 WL 1771509, at *2 (S.D.N.Y. June 18, 2007)). None of those three individuals was the

22

equivalent of a designee under Rule 30(b)(6), and their depositions therefore should not be admitted under Rule 32(a)(3).

The Court does not, however, read Rule 32(a)(3) to be so narrow as to apply only to the equivalent of an officer or director of a corporation, as PwC urges. "The test for a managing agent is not formulaic." Boss Mfg. Co. v. Hugo Boss AG, No. 97 Civ. 8495, 1999 WL 20828, at *3 (S.D.N.Y. Jan. 13, 1999). McGowan was the lead audit partner for fiscal years 2006-2010 and Gallagher was the lead audit partner for fiscal years 2011 and 2012. As such, it is unlikely that there are any other PwC employees who are invested with more judgment or who can more appropriately be considered PwC's representatives for the topics of the audit of MF Global for those fiscal years. The Plan Administrator may therefore play the designated deposition testimony of those individuals.

The Plan Administrator also argues that the video testimony is admissible under Rule 801(d)(2)(D) of the Federal Rules of Evidence ("Rule 801(d)(2)(D)"), which provides that statements by a party's agent or servant are not hearsay. See Fed. R. Civ. 801(d)(2)(D). Rule 801(d)(2)(D) provides an independent basis – separate from Rule 32(a)(3) – for admitting deposition testimony. See In re Reserve Fund Sec. & Derivative Litig., No. 09 CIV. 4346, 2012 WL 12354233,

at *4 n.5 (S.D.N.Y. Oct. 3, 2012). Because Rule 801(d)(2) requires an individualized inquiry into the admissibility of the evidence and because any evidence would have to be established as relevant in the context of the facts presented at trial, the Court finds that it is premature to exclude all of the deposition testimony at this time. The parties may raise the admissibility of deposition testimony under Rule 801(d)(2)(D) during the course of trial, as it becomes pertinent.

PwC also seeks permission to conduct full examination of witnesses called during the Plan Administrator's case in chief. To avoid wasting time by calling witnesses twice, it is this Court's practice, as is permitted under Rule 611(b) of the Federal Rules of Civil Procedure, to allow full examination the first time a witness is called to testify. See Fed. R. Civ. P. 611(b) ("The court may allow inquiry into additional matters as if on direct examination.")

PwC's motion in limine to (1) preclude plaintiff from playing video testimony for witnesses who will testify in person and (2) permit PwC to conduct full examinations of witnesses who testify during plaintiff's case-in-chief is therefore **DENIED** as to admissibility of video testimony and **GRANTED** as to full examination of witnesses.

24

## XIII.   **NEW THEORIES OF MALPRACTICE**

PwC moves to exclude any evidence or argument concerning new theories of malpractice other than with respect to (1) MF Global's accounting treatment of its Euro RTMs, and (2) MF Global's failure to take an earlier valuation allowance against its U.S. deferred tax asset ("DTA"). PwC argues that any new theories would be new claims raised after the close of discovery, which are prohibited by the Federal Rules of Civil Procedure, and that Plan Administrator disclaimed any additional theories of malpractice earlier in the case. Additionally, any new theories would require Plan Administrator's experts to offer new opinions not disclosed in their reports. The Plan Administrator contends that it does not intend to introduce any new theories of liability but that it should be able to present evidence regarding the misstatement of capital caused by PwC's allegedly negligent sales accounting, as Plan Administrator has included these allegations against PwC since the beginning of the case.

Allowing a new claim at such a late stage of litigation would "substantially prejudice[]" a defendant. Zurich Am. Ins. Co. v. ABM Indus., Inc., 397 F.3d 158, 172-173 (2d Cir. 2005). The Court is persuaded that any new claim at this stage, just weeks before trial, would unduly prejudice PwC. However, to the extent that Plan Administrator contends that

the misstatement of capital brought unwanted attention to the MF Global's Euro RTM portfolio and has advanced that argument through expert reports, Plan Administrator is entitled to make that argument to the jury. Accordingly, PwC's motion to exclude new theories of malpractice liability is **GRANTED**, but is **DENIED** with respect to arguments regarding the effect of sales accounting on MF Global's capital.

## XIV.    LYNN TURNER

PwC seeks to exclude, in part, the opinion of the Plan Administrator's expert, Lynn Turner ("Turner"), pursuant to Rule 702 of the Federal Rules of Evidence ("Rule 702"). PwC argues that, despite his "overall credentials as an accountant and auditor" and qualifications to testify as to his opinions regarding the deferred tax asset issue and RTM auditing, Turner is unqualified to opine on RTM accounting. (Dkt. No. 99 at 2.) In particular, PwC maintains that Turner is unqualified to opine on RTM accounting and the phrase "to maturity" because (1) the phrase "to maturity" is undefined in the GAAP; (2) RTM accounting is a highly-specialized sub-field of GAAP grounded in "the real-world execution of RTM trades"; and (3) Turner has not reported any experience outside of this case in RTM accounting in his resume, experience, or deposition testimony. Id. at 4-7.  PwC argues that Turner is thus is unqualified with respect to this narrow

area of expertise and this particular testimony must be excluded as unreliable. Fed. R. Evid. 702.

The Plan Administrator counters that Turner's extensive discussion of GAAP in his expert report is solidly grounded in the relevant accounting guidance and that other rules and FAS 140 (codified as ASC 860) inform the meaning of the phrase, and it is not as "esoteric or unusual" as PwC claims. PA Opp. to PwC MIL No. 4, at 2. The Plan Administrator further argues that Turner is qualified to interpret the GAAP guidance generally and FAS 140 in particular, "which contains the GAAP rules relating to the accounting for repurchase transactions, including RTMs," because Turner has extensive experience in the GAAP rules and had a role in the development of the FASB standards, including FAS 140. Id. at 5-6. Thus, the Plan Administrator argues there is ample basis to conclude Turner's testimony would be reliable enough to be admissible, and any concerns PwC raises "go to the weight, not the admissibility" of Turner's expert testimony, which can be addressed on cross. Amorgianos v. National R.R. Passenger Corp., 303 F.3d 256, 267 (2d Cir. 2002).

The Court agrees that PwC's objections go to the weight of Turner's opinions, not their admissibility, and would therefore be more appropriately addressed through cross-examination. See R.F.M.A.S., Inc., 748 F. Supp. 2d at 252.

PwC's motion in limine to preclude certain expert testimony is therefore **DENIED**.

### XV.   **PAUL MICHAUD, DAVID MORDECAI, AND CHRISTINE PALLONE**

PwC moves to exclude certain opinions of Paul Michaud and David Mordecai because those opinions rely on areas outside their expertise and are speculative and duplicative.

A witness who is "qualified as an expert by knowledge, skill, experience, training, or education" may testify in the form of an opinion. Fed. R. Evid. 702. Michaud and Mordecai are not auditors and have no experience with the Public Company Accounting Oversight Board ("PCAOB") standards. Although their backgrounds may qualify them as expert witnesses in financial markets and credit rating, just because "a witness qualifies as an expert with respect to certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to other fields." Nimely v. City of N.Y., 414 F.3d 381, 399 n.13 (2d Cir. 2005). The Plan Administrator does not dispute that Michaud and Mordecai are unqualified to give opinions on auditing. Because Michaud and Mordecai have no expertise in auditing, this Court concludes that they are not qualified to interpret the requirements of PCAOB standards. See Querub v. Hong Kong, 649 F. App'x 55, 57 (2d Cir. 2016) (expert witness

who was an accountant in Hong Kong but had no experience or expertise in PCAOB audits was "not qualified to opine on PCAOB auditing standards"). Similarly, Michaud and Mordecai are not qualified to opine on what PwC should have known or foreseen to the extent those opinions are premised on their interpretation of PCAOB auditing standards.

PwC also contends that Michaud's and Mordecai's opinions about what credit rating agencies, regulators, market participants, and MF Global would have done in a hypothetical scenario are inadmissible speculation. The Plan Administrator counters that those opinions are admissible because of Michaud's and Mordecai's experience in the industry and because the opinions are supported by the analogous actions taken by Moody's and FINRA. In order to opine on a hypothetical scenario, an expert must have "acted reasonably in making assumptions of fact upon which he would base his testimony." Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996) (citing Shatkin v. McDonnell Douglas Corp., 727 F.2d 202, 208 (2d Cir. 1984)). An "analysis of the past behavior" of a board may provide "a tested or testable methodology" to allow an expert to opine on how a board would have acted in a hypothetical scenario. Buckley v. Deloitte & Touche USA LLP, 888 F. Supp. 2d 404, 413 (S.D.N.Y. 2012). This court finds that Michaud's and Mordecai's experience together

with the evidence of past behavior of the credit rating agencies and regulators qualifies them to testify about what credit rating agencies and regulators would have done in a hypothetical scenario.

Michaud and Mordecai have no basis to testify as to what market participants did or did not "understand." That would be impermissible speculation into those market participants' state of mind. "[O]pinions concerning state of mind are an inappropriate topic for expert opinion." Bd. of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A., No. 09 CIV 3020, 2011 WL 6288415, at *8 (S.D.N.Y. Dec. 15, 2011); see Bd. of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A., No. 09 CIV 3020 , 2011 WL 6288415, at *8-*9 (S.D.N.Y. Dec. 15, 2011).

PwC also contends that Mordecai and Michaud offer three opinions that are duplicative of each other. The Plan Administrator concedes that one of those opinions is duplicative, but contends that the other two are distinct because they employ distinct methodologies to come to their conclusions. A court may exclude evidence that is needlessly cumulative. Fed. R. Evid. 403. This court finds that the opinions identified by PwC are substantially similar enough to be needlessly cumulative.

Last, PwC contends that Christine Pallone should not be permitted to give certain opinions, both because she has no expertise as an auditor and because she rests her conclusion on a false premise. This court agrees that she may not testify about what auditing standards require because she lacks expertise as an auditor. However, the strength of the factual premises of her conclusions go to the weight, not the admissibility, of her testimony, and can be addressed by PwC on cross examination. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 596 (1993) (cross examination is an "appropriate means of attacking shaky but admissible evidence").

Accordingly, PwC's motion to exclude the testimony of Michaud and Mordecai is **GRANTED** to the extent they are testifying about auditing standards, what auditors should have foreseen, or matters that are otherwise within the expertise of an auditor; **GRANTED** to the extent Michaud and Mordecai are testifying about third parties' states of mind, such as what they were able to understand; **DENIED** to the extent Michaud and Mordecai have the expertise and a reasonable basis for their opinions, about which the Plan Administrator may lay foundation at trial; and **GRANTED** to the extent testimony is duplicative.

PwC's motion to exclude the testimony of Pallone is **GRANTED** only to the extent Pallone is testifying about what auditing standards require; and otherwise **DENIED**.

## XVI.   GUY DAVIS

PwC seeks to exclude the testimony of Guy Davis because they disagree with how he applied his methodology to calculate damages. The Plan administrator counters that Davis's calculations are correct.

"[A]lleged weaknesses in the experts' methodologies will go to the weight to be given the expert testimony, not its admissibility." U.S. v. Morgan, 53 F.Supp.3d 732, 742 (S.D.N.Y. 2014) (quoting Guild v. General Motors Corp., 53 F.Supp.2d 363, 369 (W.D.N.Y. 1999)). The Court is persuaded that any flaws in Mr. Davis's methodology go to the weight, not the admissibility of his testimony.

Accordingly, the motion to exclude the testimony of Guy Davis is **DENIED**.

## XVII.   MF GLOBAL'S DEFERRED TAX ASSET

The Plan Administrator claims that PwC was negligent in approving MF Global's accounting with respect to its DTA. PwC now moves to preclude evidence regarding MF Global's DTA on the basis that the Plan Administrator's causation and damages experts are not opining that the DTA accounting caused MF Global's bankruptcy. Because there is no evidence of

causation, PwC contends, any evidence of MF Global's allegedly incorrect DTA accounting, and PwC's approval thereof, is irrelevant, prejudicial, and confusing to the jury.

In the alternative, PwC requests that the Plan Administrator's experts be precluded from testifying that its damages are attributable to the DTA accounting and that a valuation allowance against the DTA should have been taken in its March 31, 2010 financial statements because those opinions are not adequately supported or expressed with the required degree of certainty.

The Plan Administrator argues that (1) PwC's request is procedurally defective because it is, in effect, a second motion for summary judgment on the Plan Administrator's DTA claim; (2) expert testimony will show that the Plan Administrator's damages are attributable to the DTA; and (3) expert testimony regarding the DTA is admissible even though it is not expressed with absolute uncertainty.

The Court notes that an in limine motion is generally not the appropriate vehicle for effecting dismissal of entire claims. See Weiss v. La Suisse, Societe D'Assurances Sur La Vie, 293 F. Supp. 2d 397, 403 (S.D.N.Y. 2003); TVT Records, 250 F. Supp. 2d at 344; Rondout Elec., Inc. v. Dover Union Free Sch. Dist., 758 N.Y.S.2d 394, 397 (2d Dept.

33

2003)(agreeing that "a motion in limine is an inappropriate substitute for a motion for summary judgment"). Granting PwC's motion would, in effect, preclude the Plan Administrator from presenting to the jury any evidence in support of one of its two claims. This Court already held that "[a]lthough the record on th[e] subject [of the DTA] is somewhat thinner than on the sale accounting . . . a jury could find that PwC's advice as to the timing of the valuation allowance was one of the factors, along with the sale accounting decision, that caused MF Global's collapse." Id. at *20. If, as PwC contends, the Plan Administrator fails to present "any basis on which the jury could determine that the DTA accounting was a but-for cause of any damages MF Global suffered" then PwC will prevail on that claim. But whether the Plan Administrator should be permitted to present any evidence pertaining to its DTA-related claim is appropriately decided on a motion for summary judgment, not on a motion in limine.

As to PwC's argument that the Plan Administrator's damages experts should not be permitted to testify as to the damages caused by PwC's approval of MF Global's DTA accounting, PwC is free to elicit testimony from those experts that their damages models did not factor in the DTA write-down. But the experts' failure to put a dollar value on the

34

DTA-related damages does not preclude the Plan Administrator from arguing that the DTA write-down contributed to MF Global's collapse.

PwC's argument for precluding evidence that the DTA was misstated in MF Global's March 31, 2010 financial statements is equally unavailing. The fact that Turner expressed doubt as to when the earliest time would be that MF Global should have recorded a valuation allowance does not preclude Turner from offering the opinion that it was "possibly" as early as in the March 31, 2010 financial statements. "[T]here is no Federal Rule of Evidence barring the admission of expert testimony that acknowledges a quantum of doubt. Instead, federal courts allow experts to offer testimony that is less than entirely certain, trusting in opposing counsel's ability to highlight any weaknesses in the proffered testimony and the jury's ability to determine its ultimate worth." Shepler v. Metro-N. Commuter R.R., No. 13 CIV. 7192, 2015 WL 5671856, at *4 (S.D.N.Y. Sept. 25, 2015). PwC itself argues in this case that "[f]inancial accounting is not a science. It addresses many questions as to which answers are uncertain and is a process that involves continuous judgments and estimates." Dkt. No. 69, at 5 (quoting Harris v. AmTrust Fin Servs., Inc., 135 F. Supp. 3d 155, 162 n.9 (S.D.N.Y. 2015). Turner's opinion is that MF Global should have recorded a

valuation allowance earlier than it did. That Turner expresses doubt as to the earliest possible time that MF Global should have done so does not mandate preclusion of such an estimate.

PwC's motion in limine to preclude evidence or argument regarding MF Global's deferred tax asset is therefore **DENIED**.

### XVIII.  **AUDITING STANDARD NO. 3**

PwC seeks to preclude the Plan Administrator from presenting to the jury any evidence or argument that PwC violated Auditing Standard ("AS") No. 3 issued by the PCAOB as irrelevant and unduly prejudicial pursuant to Rules 402 and 403. First, PwC argues that evidence that PwC failed to comply with AS No. 3 is not relevant because (1) AS No. 3 establishes requirements for documentation – not usually shared with the client – of an auditor's work, but is not evidence that the auditor did not perform that work; and (2) the Plan Administrator has alleged that it was damaged by PwC's advice, not by PwC's alleged failure to comply with AS No. 3. Second, PwC argues that evidence of an alleged violation of AS No. 3 is unduly prejudicial because the jury could believe that it can find liability and damages even though MF Global was never harmed by any alleged failure to maintain such documentation and because the parties would waste time and resources on an irrelevant side issue.

The Plan Administrator argues that PwC's non-compliance with AS No. 3 is (1) relevant to proving that PwC did not perform the work or did it incorrectly; (2) relevant to the credibility of PwC's lead audit partner, who claims to have consulted with PwC's national office, of which there is no record; and (3) not prejudicial because it is evidence of lack of due care in complying with the PCAOB regulations PwC agreed to follow during its engagement.

Evidence that PwC failed to comply with AS No. 3 is probative of the Plan Administrator's claim that PwC did not adequately perform the work for which documentation is missing or insufficient. Such evidence is somewhat prejudicial to PwC, in that it shows PwC failed to comply with its obligations under its retention agreement with MF Global and with industry standards. That prejudicial effect does not, however, outweigh its probative value in showing what work PwC did or did not do performing its audit of MF Global. The Plan Administrator may also use evidence that PwC, in violation of AS No. 3, failed to document communications with its national office to rebut PwC's evidence of such communications. The Court does not read the Plan Administrator's opposition to suggest that it intends to use evidence of PwC's non-compliance with AS No. 3 to show that PwC was likely to have failed to comply with other

37

auditing standards in advising MF Global. Such evidence of other wrongs is not admissible to prove that a defendant acted similarly on a particular occasion. See Fed. R. Evid. 404. For the more limited purposes described above, however, PwC's alleged failure to comply with AS No. 3 is admissible. Because any evidence of a proposed internal audit would have to be established as relevant in the context of the facts presented at trial, the Court finds that it is premature to exclude such evidence. See Wechsler v. Hunt Health Sys., Ltd., 381 F. Supp. 2d 135, 140 (S.D.N.Y. 2003).

PwC's motion in limine to preclude evidence or argument that PwC violated auditing standard No. 3 is therefore **DENIED**.

### XIX.   PwC'S INTERNAL GUIDANCE

PwC moves to preclude the Plan Administrator from arguing to the jury that PwC's internal audit guidance (the "Guides") set the standard of care for auditors against which PwC's conduct should be judged. The Plan Administrator agrees that the standard of care is not set by the Guides but argues that the Guides are nonetheless relevant to its negligence claim because they (1) show how PwC conducted its audits of MF Global, (2) provide important context because they are referenced in PwC's work papers for the MF Global audit, and (3) are relied upon by regulatory bodies to evaluate PwC's work.

38

The Court agrees with the parties that the Guides may not be used to establish the standard of care relevant to the Plan Administrator's negligence claim but that the Guides are admissible for other purposes.

PwC's motion in limine to preclude evidence or argument that PwC's internal guidance sets the standard of care is therefore **GRANTED**.

### XX.    OTHER ACCOUNTING FIRMS, CLIENTS, OR AUDITS

PwC seeks, pursuant to Rules 402, 403 and 404, to preclude any evidence or argument referring to other accounting firms or clients or to past accounting scandals on the grounds that such evidence is not relevant and would be unduly prejudicial.

The Plan Administrator argues that PwC's requested relief is too broad at this stage of the proceedings because the expected testimony from both sides' experts may refer to past accounting scandals.

The Court is persuaded that references to well-known historical accounting scandals, while marginally relevant to explain the historical context of MF Global's ratings downgrades or certain regulations promulgated in their wake, would be unduly prejudicial to PwC. If PwC's experts base their opinions on historical comparisons, the Plan Administrator is free to raise this issue in advance of cross

examination that would explore such bases. Until that time comes, however, PwC's motion in limine to exclude evidence or argument concerning other accounting firms, clients or audits is **GRANTED**.

## XXI.   PwC'S FINANCIAL INFORMATION

PwC seeks to exclude evidence and argument concerning PwC's size, net worth, revenue, profitability or other aspects of its financial condition on the basis that such evidence is not relevant and unduly prejudicial under Rules 402 and 403 of the Federal Rules of Civil Procedure. The Plan Administrator does not oppose PwC's motion on the condition that PwC is also precluded from introducing evidence regarding the financial information of the Plan Administrator or its stakeholders, as requested by the Plan Adminstrator's motion in limine number 5. PwC, meanwhile, does not oppose such a request if its motion in limine number 1, to preclude the Plan Administrator from suggesting it is operating on behalf of third parties, is granted.

PwC argues that "[t]he solution to this puzzle of interlocking motions is obvious: all three motions should be granted . . . ." (PwC Reply at 2.) What is not obvious to the Court is why this outcome could not simply have been stipulated by the parties. Instead, the parties filed three motions in limine accompanied by nine separate memoranda of

law in support and opposition. As discussed above, the Court is granting the Plan Administrator's motion in limine number 5 and PwC's motion in limine number 1. PwC's motion in limine to exclude evidence or argument concerning PwC's financial information is therefore **GRANTED**.

## XXII.   PRIOR SETTLEMENTS

PwC seeks to preclude evidence concerning a settlement between PwC and a class of MF Global's customers. The Plan Administrator does not oppose PwC's motion. Instead, the parties disagree about whether PwC can use settlement agreements in other cases related to MF Global as evidence of witness bias. While both parties agree that witnesses' cooperation agreements may be used during cross-examination, PwC contends that it should be able to cross-examine the former MG Global officers with the full terms of the settlement of which the cooperation agreements are part. The Plan Administrator argues that the full settlement agreements are inadmissible and that any references to settlement must be redacted from the cooperation agreements if they are admitted.

As discussed above, the Court is persuaded that witnesses' cooperation agreements are sufficient to show their potential bias and that introduction of the underlying

settlements would add little additional probative value while carrying the risk of prejudicing the Plan Administrator.

Accordingly, subject to the restrictions discussed above, PwC's motion in limine to exclude evidence or argument concerning prior settlements is **GRANTED.**

## XXIII.  ORDER

For the reasons stated above, it is hereby

ORDERED that the motion in limine number 1 of plaintiff MF Global Holdings Ltd., as Plan Administrator (the "Plan Adminsitrator") to exclude evidence and argument concerning segregated customer funds (Dkt. No. 73) is **DENIED**; and it is further

ORDERED that the Plan Administrator's motion in limine number 2 to exclude evidence or argument regarding the MF Global post-bankruptcy litigation (Dkt. No. 73) is **GRANTED**; and it is further

ORDERED that Plan Administrator's motion in limine number 3 to exclude the trustee reports (Dkt. No. 73) is **GRANTED**; and it is further

ORDERED that the Plan Adminstrator's in limine number 4 of plaintiff NAM to preclude defendant from inquiring about certain communications with the general counsel (Dkt. No. 73) is **GRANTED** in part; and it is further

ORDERED that the Plan Administrator motion in limine number 5 to exclude certain exhibits and to limit references to current or former claim holders (Dkt. No. 73) is **GRANTED**; and it is further

ORDERED that the Plan Administrator's motion in limine number 6 to preclude defendant from calling Richard Katz live at trial (Dkt. No. 73) is **GRANTED**; and it is further

ORDERED that the Plan Administrator's motion in limine number 7 to exclude evidence and argument concerning the statute of limitations (Dkt. No. 73) is **GRANTED**; and it is further

ORDERED that the Plan Administrator's motion in limine number 8 to preclude defendant from offering cumulative expert testimony by Sandra Johnigan and Timothy S. Lucas (Dkt. No. 73) is **GRANTED** in part; and it is further

ORDERED that the Plan Administrator's motion in limine number 9 to preclude certain expert testimony (Dkt. No. 73) is **DENIED**; and it is further

ORDERED that the Plan Administrator's motion in limine number 10 to preclude testimony from Christopher L. Culp, Ph.D. pertaining to his supplemental report (Dkt. No. 73) is **GRANTED**; and it is further

ORDERED that defendant PricewaterhouseCoopers LLP's ("PwC") motion in limine number 1 to preclude any suggestion

that plaintiff is operating on behalf of third parties or the bankruptcy court (Dkt. No. 92) is **GRANTED**; and it is further

ORDERED that PwC's motion in limine number 2 to (1) preclude plaintiff from playing video testimony for witnesses who will testify in person; and (2) permit PwC to conduct full examinations of witnesses who testify during plaintiff's case-in-chief (Dkt. No. 94) is **GRANTED** in part; and it is further

ORDERED that PwC's motion in limine number 3 to preclude evidence or argument concerning new theories of malpractice (Dkt. No. 97) is **GRANTED**; and it is further

ORDERED that PwC's motion in limine number 4 to exclude, in part, the opinion of Lynn Turner (Dkt. No. 99) is **DENIED**; and it is further

ORDERED that PwC's motion in limine number 5 to exclude certain testimony of Paul Michaud, David Mordecai, and Christine Pallone (Dkt. No. 102) is **GRANTED** in part; and it is further

ORDERED that PwC's motion in limine number 6 to exclude the testimony and opinion of Plaintiff's damages expert Guy Davis (Dkt. No. 104) is **DENIED**; and it is further

ORDERED that PwC's motion in limine number 7 to preclude evidence or argument regarding MF Global's deferred tax asset (Dkt. No. 106) is **DENIED**; and it is further

ORDERED that PwC's motion in limine number 8 to preclude evidence or argument that PwC violated Auditing Standard No. 3 (Dkt. No. 108) is **DENIED** in part; and it is further

ORDERED that PwC's motion in limine number 9 to preclude evidence or argument that PwC's internal guidance sets the standard of care (Dkt. No. 110) is **GRANTED**; and it is further

ORDERED that PwC's motion in limine number 10 to exclude evidence or argument concerning other accounting firms, clients, or audits (Dkt. No. 112) is **GRANTED**; and it is further

ORDERED that PwC's motion in limine number 11 to exclude evidence or argument concerning PwC's financial information (Dkt. No. 114) is **GRANTED**; and it is further

ORDERED that PwC's motion in limine number 12 to exclude evidence or argument concerning prior settlements (Dkt. No. 116) is **GRANTED**.

**SO ORDERED.**

Dated:     New York, New York
           3 February 2017

                                    VICTOR MARRERO
                                       U.S.D.J.